Geoffrey Neri (SBN 258802)
Geoff@bnsklaw.com
BROWN NERI SMITH & KHAN LLP
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

Attorneys for Plaintiff
WOODSIDE CREDIT, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

WOODSIDE CREDIT, LLC, a California limited liability company,

Plaintiff,

vs.

ALEXANDER G. RAMOS, an individual; FADI ELIAS, an individual; JENNIFER POPE, an individual; CLASSIC MOTORS, INC., an Arizona business entity of unknown organization; and DOES 1 through 20, inclusive,

Defendants.

Case No. 8:25-cv-02146-FWS-JDE

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF WOODSIDE CREDIT, LLC'S MOTION TO MODIFY THE SCHEDULING ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 16(b)(4)**

*[Filed concurrently with Notice of Motion and Motion; Declaration of Geoffrey A. Neri and exhibits thereto; and [Proposed] Order]*

Date: September 24, 2026
Time: 10:00 a.m.
Crtrm. : 10A

Complaint Filed: Sept. 22, 2025
Trial Date: February 2, 2027

# TABLE OF CONTENTS


I. INTRODUCTION....6

II. RELEVANT BACKGROUND....8

A. This Fraud and RICO Action Turns on Documents in the Elias Defendants' Possession....8

B. Woodside Diligently Pursued Discovery, Helped Set the Schedule, and Extended the Elias Defendants a Courtesy Extension....9

C. The May 15 Responses: Thirty-Two Written Promises to Produce Upon a Protective Order, Plus Unverified Answers and a Numerosity Objection....9

D. Woodside Cleared the Protective-Order Condition Within One Week....10

E. The Elias Defendants Produced Nothing, and Woodside Promptly Escalated....10

F. The Elias Defendants Announce They Will Move for Summary Judgment on All Claims — on the Record Their Non-Production Created....11

III. LEGAL STANDARD....11

IV. ARGUMENT....12

A. Good Cause Exists Because Woodside Was Diligent and the Need to Modify Arises From the Elias Defendants' Non-Compliance....12

1. Woodside Diligently Pursued Discovery and Reasonably Relied on the Elias Defendants' Written Commitments and the Court's Order ..... 12
2. The Elias Defendants Created the Need for Modification, and They May Not Run Out the Clock on a Promise to Produce and Then Invoke the Cut-Off ..... 13
3. Woodside Acted Promptly Once Modification Became Necessary ..... 14
4. The Elias Defendants' Announced Summary Judgment Motion Independently Establishes Good Cause and Makes Modification Urgent ..... 15

B. The Prejudice Runs Entirely One Way: The Narrow Modification Requested Costs the Elias Defendants Nothing, While Denying It Would Reward Their Stonewall With Summary Judgment ..... 17

C. In the Alternative, the Court Should Order the Elias Defendants to Honor Their Written Production Commitments and Serve Verifications ..... 18

V. THE LIMITED MODIFICATION REQUESTED ..... 18

VI. CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................15
*Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767 (9th Cir. 2003)....................15
*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060 (9th Cir. 2017)....................12, 14, 17
*FeedMe Trading LLC v. My Fish Stop LLC*, No. CV 23-08857-MWF (JCx), 2024 WL 5257016 (C.D. Cal. Oct. 10, 2024)....................7, 13, 14
*InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020)....................16
*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992)....................11, 12, 14, 15
*Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004)....................16
*M2 Software, Inc. v. M2 Communications, L.L.C.*, 217 F.R.D. 499 (C.D. Cal. 2003). 7, 13, 14
*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001)....................15, 17
*Stevens v. CoreLogic, Inc.*, 899 F.3d 666 (9th Cir. 2018)....................16
*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472 (9th Cir. 1986)....................15
*Wild Fish Conservancy v. Cooke Aquaculture Pac., LLC*, No. 2:17-cv-01708, 2019 WL 1755306 (W.D. Wash. Apr. 19, 2019)....................13
*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002)....................12, 14

**Rules**

Fed. R. Civ. P. 16....................14, 18
Fed. R. Civ. P. 16(b)(4)....................6, 7, 11, 13, 19
Fed. R. Civ. P. 30(b)(6)....................18
Fed. R. Civ. P. 33(a)(1), (b)....................9, 18
Fed. R. Civ. P. 34(b)(2)(B)....................12

Fed. R. Civ. P. 56(d) .......... 15, 16, 17
C.D. Cal. L.R. 37-1 .......... 10, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a motion whose necessity was manufactured entirely by the opposing parties. In their May 15, 2026 written discovery responses, the Elias Defendants told Woodside — in thirty-two separate responses to Woodside's document requests — that they "will produce documents responsive to this Request in Responding Party's possession, custody, or control upon entry of a protective order." Woodside took them at their word and promptly cleared the stated condition: within one week the parties stipulated to a protective order, and the Court entered it on May 18, 2026. (Dkt. 35.) The Elias Defendants then produced nothing — not a single page — and allowed the July 9, 2026 non-expert discovery cut-off to pass. Now, having run out the clock on their own written promise, they take the position that the cut-off bars Woodside from ever obtaining the documents, because the deadline to complete discovery and to hear discovery motions has passed. In the course of the meet-and-confer discussions counsel for the Elias Defendants did not deny that the Elias Defendants had represented that they would be producing documents but instead claimed the scheduling order was a bar.

Rule 16(b)(4) exists for precisely this situation. A scheduling order may be modified for good cause, and good cause turns on the diligence of the party seeking the modification. Woodside was diligent at every step: it served its written discovery in March 2026, months ahead of the cut-off; it granted the Elias Defendants the 21-day extension of their response deadline that they requested; it satisfied their protective-order condition within a week; and it reasonably relied both on the Elias Defendants' express written commitments and on this Court's order directing that "responses to previously served written discovery requests must be provided" by the cut-off. The single reason the promised documents were not produced before the cut-off is the Elias Defendants' own

non-compliance. A party may not induce reliance with a written promise to produce upon a protective order, sit silent while the deadline runs, and then invoke the very cut-off its breach created.

This District Court resolved this exact situation less than two years ago. In *FeedMe Trading LLC v. My Fish Stop LLC*, No. CV 23-08857-MWF (JCx), 2024 WL 5257016 (C.D. Cal. Oct. 10, 2024), the responding party served responses that led its opponent reasonably to believe documents would be produced, went silent, and announced its refusal "for the first time" only after the non-expert discovery cut-off had passed. The court found the movant's description of that conduct — "in essence, a bait-and-switch maneuver" — persuasive, held that the movant "could not have reasonably foreseen that [the responding party] would refuse only after the deadline had passed," and granted the Rule 16(b)(4) motion to modify the cut-off, because doing so "best serves the interests of fairness and equity." *Id.* at *2–4 (citing *M2 Software, Inc. v. M2 Communications, L.L.C.*, 217 F.R.D. 499, 500 (C.D. Cal. 2003) (discovery cut-off modified where "counsel reasonably relied to its detriment upon the representations of M2 Software and its counsel that M2 Software would produce the documents at issue")).

The Elias Defendants' conduct presents the *FeedMe* pattern in considerably starker form: not objections implying production, but thirty-two express written promises to produce; not a condition left hanging, but a protective order Defendants themselves drafted and had entered on May 18; not weeks of silence, but three months. And as in *FeedMe*, Woodside moved within two weeks of Defendants' first refusal. Section IV.A develops the point.

On August 21, 2026, the Elias Defendants removed any doubt about the purpose of their stonewalling. Their counsel advised by email that all three "intend to move for summary judgment on all claims alleged against them." (Neri Decl. ¶ 17 & Ex. H.) The

sequence speaks for itself: withhold every promised document, refuse to verify a single interrogatory answer, sit for no depositions, let the discovery cut-off expire — and then ask for judgment on the record that stonewall hollowed out. The law does not permit summary judgment on those terms. The Supreme Court and the Ninth Circuit require that the non-moving party have the opportunity to discover information essential to its opposition before summary judgment may be considered, and they disfavor summary judgment where relevant evidence — here, evidence the movants themselves promised in writing to produce — remains undisclosed in the movants' hands. Woodside asks the Court to modify the schedule in a narrow, targeted way: reopen non-expert discovery solely to obtain the promised documents, verified interrogatory answers, and three party depositions reasonably sequenced behind that production; provide that any dispositive motion is heard only after that limited discovery is complete; and preserve the trial date and every other deadline.

## II. RELEVANT BACKGROUND

### A. This Fraud and RICO Action Turns on Documents in the Elias Defendants' Possession.

Woodside's claims arise from a scheme in which its former Assistant Vice President, Alexander Ramos, steered at least twenty-one repossessed vehicles to the Elias Defendants for $1,801,000 while causing a Montana title agent to send them forty-eight checks and wires totaling $1,419,803 — most bearing "Refund" memo lines. (Compl. ¶¶ 35–43 & Exs. A–B.) The documentary proof of that scheme — the Elias Defendants' bank records, the deposits of the "Refund" payments, the vehicle purchase and resale records, and their communications with Ramos and the Montana agent — lies in the Elias Defendants' own files. Woodside's written discovery was directed at obtaining exactly those records. (Neri Decl. ¶¶ 2, 4.)

**B. Woodside Diligently Pursued Discovery, Helped Set the Schedule, and Extended the Elias Defendants a Courtesy Extension.**

Woodside served its First Sets of Interrogatories, Requests for Production, and Requests for Admission on each of the three Elias Defendants on March 25, 2026 — eleven weeks after the Scheduling Order issued and more than three months before the July 9, 2026 non-expert discovery cut-off, a schedule Woodside's counsel helped prepare in the parties' Joint Rule 26(f) Report. (Neri Decl. ¶¶ 3–4 & Ex. A.) Responses were due April 24, 2026. On April 21, 2026, the Elias Defendants' counsel requested "a 21-day extension to respond to these discovery requests"; Woodside granted the courtesy the same day — within nineteen minutes — asking only for a brief case-status call, which made the responses due May 15, 2026. (Neri Decl. ¶ 5 & Ex. B.) Woodside thus built a schedule with ample time to complete production, meet and confer, and if necessary litigate any dispute before the cut-off, and accommodated the Elias Defendants when they asked for more time within it.

**C. The May 15 Responses: Thirty-Two Written Promises to Produce Upon a Protective Order, Plus Unverified Answers and a Numerosity Objection.**

On May 15, 2026 — the last day of the extended deadline Woodside had granted them — the Elias Defendants served nine sets of responses. (Neri Decl. ¶ 6 & Ex. C.) In thirty-two of their seventy-five responses to Woodside's document requests, the Elias Defendants stated that they "will produce documents responsive to this Request in Responding Party's possession, custody, or control upon entry of a protective order." They produced no documents with the responses. Their interrogatory answers were signed only by counsel and were not verified under oath by any party. And they refused to answer eighteen to twenty of the twenty-five interrogatories propounded to each defendant on the theory that the sets exceeded Rule 33(a)(1)'s numerical limit. Woodside

disputes the adequacy of these responses on the merits, and reserves all rights to seek relief as to them; but the immediate point for this Motion is simpler — the Elias Defendants committed in writing to produce documents upon entry of a protective order. (Neri Decl. ¶¶ 7–8.)

**D. Woodside Cleared the Protective-Order Condition Within One Week.**

Woodside moved immediately to satisfy the condition the Elias Defendants had placed on their production. The Elias Defendants circulated a draft stipulated protective order on May 11, 2026; Woodside approved it on May 13, 2026; the parties filed it; and the Court entered the Stipulated Protective Order on May 18, 2026. (Dkt. 35; Neri Decl. ¶ 9 & Ex. D.) The sole stated precondition to the Elias Defendants' document production was thus satisfied just three days after their responses were served, and nearly two months before the discovery cut-off.

**E. The Elias Defendants Produced Nothing, and Woodside Promptly Escalated.**

Despite the entered protective order, the Elias Defendants produced no documents — before the cut-off or since. (Neri Decl. ¶ 11.) Woodside, meanwhile, served its own written responses and produced documents on June 15, 2026. (Neri Decl. ¶ 11.) When production did not arrive, Woodside promptly pressed the issue: it sent detailed meet-and-confer letters under Local Rule 37-1 on August 3 and August 4, 2026, demanding the promised production and verifications and specifying the relief it would seek (Neri Decl. ¶ 13 & Exs. E–F); the parties exchanged correspondence on August 11, 2026; and counsel conferred by telephone on August 13, 2026. (Neri Decl. ¶¶ 14–15 & Ex. G.) No production or verification has been provided, and the Elias Defendants have indicated they will oppose any modification of the schedule.

**F. The Elias Defendants Announce They Will Move for Summary Judgment on All Claims — on the Record Their Non-Production Created.**

The promised clarification of the Elias Defendants' position on this Motion never came. Instead, on August 21, 2026, their counsel emailed the undersigned: "Defendants Fadi Elias, Jennifer Pope, and Classic Motor, Inc. intend to move for summary judgment on all claims alleged against them." (Neri Decl. ¶ 17 & Ex. H.) Under the current Scheduling Order, the last date to hear motions is October 15, 2026, and a motion for summary judgment must be filed at least six weeks before the hearing — i.e., by approximately September 3, 2026 — with Woodside's opposition due two weeks after filing. (Dkt. 26.) The Elias Defendants thus propose to brief and win summary judgment on Woodside's fraud, conspiracy, and RICO claims while Woodside holds none of their bank records, none of their vehicle purchase and resale documents, none of their communications with Ramos or the Montana agent, no verified interrogatory answers, and no deposition testimony — every category of which the Elias Defendants either promised in writing to produce or were obligated by rule to supply. Woodside brings this Motion promptly upon that development.

## III. LEGAL STANDARD

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The focus is on the moving party's reasons for seeking modification: "[i]f th[e] party was not diligent, the inquiry should end." *Id.* Where the moving party has diligently pursued discovery yet the schedule "cannot reasonably be met despite the diligence of the party seeking the extension," good cause is satisfied. *Id.* The court may also consider "the existence or degree of prejudice to

the party opposing the modification." *Id.* The Ninth Circuit applies the same standard, affording the district court "broad discretion" to modify its schedule where the movant was diligent. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). Conversely, a party that "fail[s] to act diligently" cannot show good cause. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087–88 (9th Cir. 2002).

## IV. ARGUMENT

### A. Good Cause Exists Because Woodside Was Diligent and the Need to Modify Arises From the Elias Defendants' Non-Compliance.

#### 1. Woodside Diligently Pursued Discovery and Reasonably Relied on the Elias Defendants' Written Commitments and the Court's Order.

Diligence is measured by what the moving party did to meet the deadline. *Johnson*, 975 F.2d at 609. Woodside did everything the Rules and the schedule asked of it. It served its written discovery on March 25, 2026, with months to spare; when the Elias Defendants asked for a 21-day extension of their response deadline, Woodside granted it the same day as a professional courtesy — and what that extension produced, on its final day, were the thirty-two written promises to produce "upon entry of a protective order." Woodside then obtained the protective order — the Elias Defendants' own stated precondition — within a week, and it was entitled to rely on two independent assurances that the documents would follow. First, the Elias Defendants promised in writing, thirty-two times over, to produce upon entry of a protective order; Rule 34(b)(2)(B) required that production to occur within a reasonable time, and a responding party is bound by its written representation to produce. Second, this Court's order provided that the discovery cut-off is "the last day by which . . . responses to previously served written discovery requests must be provided" (Dkt. 21 at 6) — placing the obligation to produce squarely on the Elias Defendants before July 9, 2026. Having secured both a written promise and a court-ordered deadline

running against the Elias Defendants, Woodside reasonably sequenced the depositions of Elias, Pope, and Classic Motors to follow the document production, so that those witnesses could be examined on the very records the Elias Defendants had agreed to produce. Sequencing depositions behind promised document production is a hallmark of diligence, not a lack of it. (Neri Decl. ¶ 10.) *See FeedMe Trading LLC v. My Fish Stop LLC*, No. CV 23-08857-MWF (JCx), 2024 WL 5257016, at *2–4 (C.D. Cal. Oct. 10, 2024) (granting Rule 16(b)(4) relief where the responding party's discovery responses led the movant reasonably to believe documents would be produced and the refusal came "for the first time" only after the non-expert discovery cut-off had passed); *M2 Software, Inc. v. M2 Communications, L.L.C.*, 217 F.R.D. 499, 500 (C.D. Cal. 2003) (declining to "rigidly enforce the discovery cutoff" against a party that "reasonably relied to its detriment upon the representations of [the responding party] and its counsel that [it] would produce the documents at issue"); *Wild Fish Conservancy v. Cooke Aquaculture Pac., LLC*, No. 2:17-cv-01708, 2019 WL 1755306 (W.D. Wash. Apr. 19, 2019) (movant "cannot meet the current case deadlines notwithstanding its diligence" where the opposing party's "delay in producing discovery" prevented preparation for depositions; schedule modified).

**<u>2. The Elias Defendants Created the Need for Modification, and They May Not Run Out the Clock on a Promise to Produce and Then Invoke the Cut-Off.</u>**

Where the need to amend the schedule is created by the opposing party's conduct rather than the movant's neglect, good cause is established. The undisputed sequence here makes that plain: the Elias Defendants asked for and received a 21-day courtesy extension; on the last day of it, they conditioned production on a protective order; Woodside satisfied the condition within days; and the Elias Defendants then produced

nothing, letting the cut-off pass. To the extent the Elias Defendants intend to argue "lack of diligence," the only conduct that compressed the discovery period was their own — the extension they requested and the written promise they did not keep. The only reason the promised documents are not in Woodside's hands is the Elias Defendants' default on their own written commitment and on this Court's order. It would stand Rule 16 on its head to let a party promise production upon a protective order, remain silent while the deadline it was bound to meet expires, and then wield that same deadline as a shield against producing anything. A litigant cannot manufacture a timeliness bar through its own non-compliance and then invoke it; this district has held that enforcement of a discovery cut-off "should yield to the court's overriding interest in fairness and equity" as against a party that induced its opponent's reasonable reliance on a promise to produce. *M2 Software*, 217 F.R.D. at 500; *accord FeedMe Trading*, 2024 WL 5257016, at *3–4. This is the opposite of the cases denying relief for lack of diligence: Woodside did not sleep on its rights or ignore a known deadline, *cf. Zivkovic*, 302 F.3d at 1087, or *Johnson*, 975 F.2d at 609; it pursued the discovery, cleared the defendants' condition, and was met with silence.

**<u>3. Woodside Acted Promptly Once Modification Became Necessary.</u>**

Diligence also asks how quickly the moving party acted once it recognized that modification was needed. *Pomona*, 866 F.3d at 1066. Woodside acted at once. When the promised production did not materialize, it served detailed Local Rule 37-1 letters on August 3 and 4, 2026; it exchanged correspondence with opposing counsel on August 11; it conferred by telephone on August 13; and it filed this Motion immediately thereafter — well within the schedule's outer limits and with the trial date many months away. (Neri Decl. ¶¶ 13–15.) A moving party that escalates within weeks and files without delay has more than satisfied the diligence the Rule requires.

**4. The Elias Defendants' Announced Summary Judgment Motion Independently Establishes Good Cause and Makes Modification Urgent.**

The August 21 announcement that the Elias Defendants "intend to move for summary judgment on all claims alleged against them" supplies an independent — and urgent — basis for modification. (Neri Decl. ¶¶ 17–18 & Ex. H.) Good cause exists where, despite diligence, the schedule "cannot reasonably be met." *Johnson*, 975 F.2d at 609. The announced motion makes the current schedule unworkable in a new and concrete way: to be heard by the October 15, 2026 motions cut-off, the Elias Defendants' motion must be filed by approximately September 3, 2026, with Woodside's opposition due two weeks later — and Woodside would be required to oppose summary judgment on fraud, conspiracy, and RICO claims with zero documents, zero verified interrogatory answers, and zero deposition testimony from the moving parties, because the moving parties withheld all of it.

That is not a posture the law tolerates. Rule 56(d) "ensures that adequate discovery will occur before summary judgment is considered," and the Supreme Court has "restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). District courts should grant Rule 56(d) relief "fairly freely" where the non-movant has not had a realistic opportunity to pursue discovery on its theory of the case, and denial of such relief is "especially inappropriate where the material sought is also the subject of outstanding discovery requests." *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773–74 (9th Cir. 2003); *accord VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) (denial "generally

disfavored" where the application is timely, identifies relevant information, and there is some basis to believe the information exists); *see also Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (district court should address outstanding, relevant discovery requests before resolving summary judgment). And "summary judgment is disfavored where relevant evidence remains to be discovered." *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004). Each element of the Rule 56(d) showing, *see InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 661–62 (9th Cir. 2020), is present here to a degree those cases never approached: the facts Woodside seeks are specified in twenty-five document requests per defendant; there is no doubt the materials exist, because **the Elias Defendants admitted possession of them and committed in writing to produce them**; and the materials — the moving defendants' bank records, the deposit records for the forty-eight "Refund" payments, the vehicle purchase and resale files, and their communications with Ramos and the Montana agent — are the core evidence of knowledge, agreement, and pattern on the very claims their motion would target.

The announcement also lays bare the strategy. Having withheld every promised document, the Elias Defendants now seek a merits judgment before the information asymmetry they engineered can be corrected. A party that manufactures an evidentiary vacuum through its own non-compliance, and then moves for summary judgment into that vacuum, has forfeited any claim that correcting the schedule would prejudice it. Granting this Motion is also the efficient course: if the schedule stands, Woodside will be compelled to oppose the announced motion under Rule 56(d) — relief made necessary solely by the Elias Defendants' non-production — and the Court will confront the identical discovery deficit in a more wasteful posture, after full summary judgment briefing. *See Stevens*, 899 F.3d at 678. Modifying the schedule now ensures that any dispositive motion is briefed once, on a complete record, within the existing trial timeline.

**B. The Prejudice Runs Entirely One Way: The Narrow Modification Requested Costs the Elias Defendants Nothing, While Denying It Would Reward Their Stonewall With Summary Judgment.**

The modification Woodside seeks is deliberately limited. It reopens non-expert discovery only to obtain the documents the Elias Defendants already agreed to produce, verified interrogatory answers, and three party depositions sequenced behind that production. It adds no claims, no parties, and no new subjects of discovery. The Elias Defendants cannot claim unfair surprise or burden from being required to do what they promised in writing to do months ago; any burden is entirely of their own making, and self-inflicted difficulty is not cognizable prejudice. *See Pomona*, 866 F.3d at 1066. Nor does sequencing their announced summary judgment motion behind the limited reopened discovery deprive them of anything to which they are entitled: they remain free to move for summary judgment — on a complete record. The only "prejudice" a modification threatens is the loss of the tactical advantage of moving against an adversary they have deprived of the evidence, and that is not prejudice the law recognizes.

The prejudice on the other side of the ledger, by contrast, is severe and concrete. Absent modification, Woodside must oppose a dispositive motion on all claims without the moving parties' documents, verified answers, or testimony — an opposition the Ninth Circuit's Rule 56(d) jurisprudence recognizes as no opposition at all. *Metabolife*, 264 F.3d at 846. Critically, the requested relief preserves the February 2, 2027 trial date and the January 7, 2027 Final Pretrial Conference; the limited discovery, and any dispositive motion following it, can be completed within the existing pretrial timeline. Because Woodside was diligent, the schedule cannot reasonably be met as events now stand, and the Elias Defendants face no legitimate prejudice, good cause is established and the Motion should be granted.

**C. In the Alternative, the Court Should Order the Elias Defendants to Honor Their Written Production Commitments and Serve Verifications.**

The Court need not treat the threshold relief as a contested discovery dispute referred to the Magistrate Judge. The thirty-two document categories at issue are not the subject of any live dispute over scope or privilege — the Elias Defendants have already agreed, in writing, to produce them; only their performance is outstanding. So too the interrogatory verifications, which Rule 33(b) requires as a matter of form. The Court that entered the Scheduling Order and directed that written-discovery responses "must be provided" by the cut-off possesses the authority under Rule 16 to enforce that directive and the parties' own representations as a matter of case management. Woodside therefore requests, in the alternative, that the Court order the Elias Defendants to produce the thirty-two promised categories and to serve verifications for their interrogatory answers within fourteen (14) days, and to reopen the schedule as necessary to permit the sequenced depositions and any motion addressed to the sufficiency of the responses to be heard by the Magistrate Judge.

## V. THE LIMITED MODIFICATION REQUESTED

Woodside respectfully requests that the Court modify the Scheduling Order as follows, leaving all other dates — including the trial and Final Pretrial Conference dates — unchanged:

- Production of the thirty-two promised document categories and service of interrogatory verifications: within fourteen (14) days of this Order;
- Non-expert discovery reopened, for the limited purposes stated above, through December 18, 2026;
- Depositions of Fadi Elias, Jennifer Pope, and Classic Motors, Inc. (Rule 30(b)(6)) completed within forty-five (45) days after the Elias Defendants

certify substantial completion of the document production, and in no event later than December 18, 2026;

- Last date to file, hear, and resolve any motion concerning the sufficiency of the Elias Defendants' discovery responses before the assigned Magistrate Judge: December 3, 2026;
- Any motion for summary judgment or partial summary judgment by the Elias Defendants to be heard no earlier than the completion of the limited discovery described above — with any such motion filed before that completion held in abeyance — and the last date to hear dispositive motions continued to December 17, 2026, or such other date as the Court deems appropriate; and
- All other dates, including the February 2, 2027 trial date and the January 7, 2027 Final Pretrial Conference, unchanged.

## VI. CONCLUSION

For the foregoing reasons, Woodside respectfully requests that the Court find good cause under Rule 16(b)(4), grant the Motion, and enter the limited modification of the Scheduling Order set forth above and in the concurrently lodged [Proposed] Order, together with such other and further relief as the Court deems just.

Respectfully submitted,

**DATED:** August 24, 2026

**BROWN NERI SMITH & KHAN LLP**

By: /s/ Geoffrey A. Neri

Geoffrey A. Neri
Attorneys for Plaintiff
WOODSIDE CREDIT, LLC

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Woodside Credit, LLC, certifies that this brief contains 4,226 words, which complies with the word limit of L.R. 11-6.1.

**DATED:** August 24, 2026 **BROWN NERI SMITH & KHAN LLP**

By: /s/ Geoffrey A. Neri
Geoffrey A. Neri
Attorneys for Plaintiff
WOODSIDE CREDIT, LLC