**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118
*Attorney for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WOODSIDE CREDIT, LLC, a California limited liability company,

Plaintiff,

v.

ALEXANDER G. RAMOS, an individual; FADI ELIAS, an individual; JENNIFER POPE, an individual; CLASSIC MOTORS, INC., an Arizona business entity; and DOES 1 through 20, inclusive,

Defendants.

Case No. 8:25-cv-02146-FWS-JDE

*Honorable Fred W. Slaughter*

**DEFENDANTS FADI ELIAS, JENNIFER POPE, AND CLASSIC MOTORS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT**

*[Filed concurrently with Declaration of Benjamin Levine and exhibits thereto]*

Date: September 24, 2026
Time: 10:00 a.m.
Courtroom: 10A

# TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. PROCEDURAL BACKGROUND .......... 2

A. Discovery Between Plaintiff and Elias Defendants .......... 2

1. Discovery Opens and Plaintiff Secures Preferred Deadlines .......... 2

2. After Three Months, Plaintiff Serves Discovery Requests, and Elias Defendants Follow Suit .......... 3

3. Neither Side Produces Documents, Follows Up, or Takes Other Action, Until a Month After Non-Expert Discovery Closes .......... 3

4. Neither Side Notices Depositions .......... 5

B. Plaintiff's Litigation Against Defendant Ramos .......... 6

III. LEGAL STANDARD .......... 7

IV. ARGUMENT .......... 8

A. Plaintiff's Motion Should Be Denied for Lack of Diligence .......... 8

1. Plaintiff Significantly Delayed Pursuing Discovery .......... 8

2. Plaintiff Said Nothing, and Took No Action, for Months Following the Parties' Mutual Non-Production .......... 9

3. Plaintiff Knew of Claimed Necessity of Discovery From Outset .......... 12

4. Plaintiff Was Not Diligent in Pursuing this Motion .......... 13

5. Plaintiff Has Not Been Diligent in Pursuing Claims Against Ramos .......... 13

B. Prejudice to Elias Defendants Merits Denial .......... 14

C. Rule 56(d) Does Not Require a Continuance in These Circumstances .......... 16

D. Rule 16 Does Not Warrant Plaintiff's Requested Relief .......... 17

V. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

## Cases

*Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1207 (C.D. Cal. 2002) ........ 16

*Boyer v. Novo Nordisk Inc.*, 2025 WL 2808149 (E.D. Cal. Oct. 1, 2025) ........ 9, 15

*Butler v. Univ. of Cal. Hastings College of the Law* 650 F. App'x 386 (9th Cir. 2016) ........ 16

*Daniels v. Specialized Loan Servicing, LLC*, No. 2:22-cv-06776-MCS-PD, 2025 WL 4740015 (C.D. Cal. Oct. 29, 2025) 13, 15

*FeedMe Trading LLC v. My Fish Stop LLC*, No. CV 23-08857-MWF (JCx), 2024 WL 5257016 (C.D. Cal. Oct. 10, 2024) ........ 10

*Greek v. Target Corp.*, No. 2:23-cv-00608-MCS-PVC, 2023 WL 8351537 (C.D. Cal. Sept. 21, 2023) ........ 9, 12

*Henry v. Regents of Univ. of Cal.*, 37 F. Supp. 3d 1067 (N.D. Cal. 2014) ........ 17

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605 (E.D. Cal. 1999) ........ 7, 13

*Johnson v. Mammoth Recs., Inc.*, 975 F.2d 604 (9th Cir. 1992) ........ 7, 8, 13, 14

*Kremen v. Cohen*, 2012 WL 2919332 (N.D. Cal. July 17, 2012) ........ 16

*M2 Software, Inc. v. M2 Communications, L.L.C.*, 217 F.R.D. 499 (C.D. Cal. 2003) ........ 10, 11

*McMullen v. Mercedes Benz USA, LLC*, No. CV 23-712-GW-MARx, 2024 WL 439439 (C.D. Cal. Jan. 2, 2024) ........ 12, 15

*Milky Way Int'l Trading Corp. v. Ningbo Sunny Int'l Co., Ltd.*, No. 2:23-cv-08259-JLS-JC, 2024 WL 5424119 (C.D. Cal. Dec. 20, 2024) ... 14

*Nghiem v. Santa Clara Univ.*, 710 F. Supp. 3d 748 (N.D. Cal. 2024) ........ 17

*Nidds v. Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir. 1996) ........ 16

*Program Eng'g, Inc. v. Triangle Pubs., Inc.*, 634 F.2d 1188 (9th Cir. 1980) ........ 16

*Reyes v. Wilson Mem. Hosp.*, 102 F. Supp. 2d 798 (S.D. Ohio 1998)....................17

*Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 2:24-cv-04546-SB-AGR, 2025 WL 2427837 (C.D. Cal. July 11, 2025) .8, 9

*Stitt v. Williams*, 919 F.2d 516 (9th Cir. 1990)....................16

*United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002)....................16

*White v. Baca*, No. CV 13-3401-JFW (SSx), 2014 WL 12700946 (C.D. Cal. Feb. 6, 2014).16

*Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052 (9th Cir. 2005)....................7, 14, 15

*Yao Guo v. Robl*, No. 2:22-cv-05576-FWS-MAA, 2024 WL 4003913 (C.D. Cal. May 24, 2024) ....................10

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002)....................7, 14

**Rules**

Fed. R. Civ. P. 16(b)(4) ....................10

Fed. R. Civ. P. 26(d)(1) ....................4, 5, 11

Fed. R. Civ. P. 33(b) ....................20

Fed. R. Civ. P. 56(d) ....................19

Fed. R. Civ. P. 26(f)....................5, 11

Fed. R. Civ. P. 56(d) ....................19, 20

**Local Rules and Judicial Standing Orders**

L.R. 11-6.1 ....................22

L.R. 37-1–37-3....................14

United States District Court for the Central District of California, Honorable Fred W. Slaughter, Civil Standing Order....................8,10, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's motion contends that Plaintiff was "stonewall[ed]" by the same exact conduct in which Plaintiff itself engaged during discovery in this action: Affirmatively representing through discovery responses that documents would be produced, then failing to produce any documents. Plaintiff's counsel acknowledged during meet-and-confer efforts that Plaintiff did this, despite Plaintiff's representations to the contrary in connection with the instant motion. That both sides in this action failed to produce documents or interrogatory verifications—to which Plaintiff had apparently acquiesced for months, until more than a month after the discovery cutoff that Plaintiff requested and had long been in place—does not supply good cause for Plaintiff's belated request for relief from this Court. This is particularly so given Plaintiff's consistent lack of diligence in prosecuting this action, both as to the Elias Defendants and as to Defendant Alexander Ramos.

Plaintiff, which requested and received a speedy case schedule over the Elias Defendants' objection, nevertheless waited more than three months before pursuing any discovery. Plaintiff's motion barely acknowledges this delay and makes no attempt to explain it. Then, when the Elias Defendants failed to promptly produce documents after the Court issued a protective order, Plaintiff responded in kind by representing in discovery responses that Plaintiff would produce documents pursuant to the already-issued protective order, but never did so. To date, Plaintiff has not produced a page of documents in discovery to the Elias Defendants—exactly the same failure that Plaintiff now contends, more than a month after the close of non-expert discovery and even after the close of expert discovery, merits a reopening and extension of discovery for Plaintiff's benefit. Having itself failed to produce anything, Plaintiff then sat silent for almost two months, without acknowledging either party's lack of production or addressing any discovery issue in any manner, including interrogatory verifications, depositions, or any other

claimed deficiency in the Elias Defendants' discovery responses.[1] The precedent upon which Plaintiff relies in its motion does not address mutual non-production—which is unsurprising, because Plaintiff's motion does not acknowledge Plaintiff's own conduct in discovery, and indeed misrepresents it—and so is inapplicable in these circumstances.

A litigant should not be rewarded for failing to be diligent, then crying foul at conduct that mirrors its own. Plaintiff's motion should be denied.

## II. PROCEDURAL BACKGROUND

### A. Discovery Between Plaintiff and Elias Defendants

#### 1. Discovery Opens and Plaintiff Secures Preferred Deadlines

Plaintiff Woodside Credit, LLC filed its Complaint on September 22, 2025, naming as defendants Fadi Elias, Jennifer Pope, Classic Motors, Inc. (collectively, "Elias Defendants"), and Alexander Ramos. [Dkt. 1.] Counsel for Plaintiff and Elias Defendants conducted their Rule 26(f) conference on December 23, 2025, opening discovery. (Declaration of Benjamin Levine ("Levine Decl.") ¶ 2; Fed. R. Civ. P. 26(d)(1).) The Court issued a Scheduling Order on January 6, 2026, adopting Plaintiff's requested schedule for discovery and trial, dates which were months earlier than those requested by Elias Defendants. [*See* Dkt. 26, 25-1.] The dates set by the Court included a July 9, 2026, deadline for non-expert discovery; a July 23, 2026, deadline for initial expert disclosures; and an October 15, 2026, deadline to hear motions [Dkt. 26], and a separate Order clarified that the deadline for non-expert discovery was the date by which any discovery motions must be resolved [Dkt. 21 at 4, 6].

---

[1] Despite being the focus of Plaintiff's motion, document production is not all that it seeks. In addition to seeking interrogatory verifications and depositions, Plaintiff also asks to be allowed to file a "motion concerning the sufficiency of the Elias Defendants' [written] discovery responses" (Mot. at 19), even though those responses were provided more than a month and a half before the fact discovery cutoff, with no timely challenge by Plaintiff.

2. After Three Months, Plaintiff Serves Discovery Requests, and Elias Defendants Follow Suit

On March 25, 2026, more than three months after discovery opened, Plaintiff propounded one set of RFPs, RFAs, and Interrogatories upon each of Elias Defendants, for which Plaintiff's counsel subsequently granted a three-week extension. (Levine Decl. ¶ 3.) On May 1, 2026, Defendant Fadi Elias propounded one set of RFPs and Interrogatories upon Plaintiff, for which Elias Defendants' counsel subsequently granted a two-week extension, until June 13, 2026, which was expressly premised on the expectation that Plaintiff would produce documents with its responses. (*Id.* ¶ 4.) On May 13, 2026, while these requests were pending, the parties filed a stipulation requesting a protective order. [Dkt. 32.] On May 15, 2026, Elias Defendants served their discovery responses; the RFP responses included objections and, for certain requests, representations that Elias Defendants nevertheless then intended to produce documents following issuance of a protective order, and the Interrogatory responses were not verified. (Levine Decl. ¶ 5.)

3. Neither Side Produces Documents, Follows Up, or Takes Other Action, Until a Month After Non-Expert Discovery Closes

On May 18, 2026, the Court issued a protective order. [Dkt. 35.] Then, on June 15, 2026, Plaintiff served responses to Defendant Fadi Elias's discovery requests, including extensive objections despite being two days late, and Plaintiff's Interrogatory responses were unverified. (Levine Decl. ¶¶ 6-7 & Exs. 1-3.) Of Plaintiff's responses to Fadi Elias's 33 RFPs, 32 stated that Plaintiff "will produce nonprivileged responsive documents, if any, in its possession, custody, or control" "subject to an appropriate protective order"; the other response stated that Plaintiff "will produce nonprivileged responsive documents in its possession, custody, or control, including responsive emails and text messages," without reference to a protective order. (Levine Decl. ¶ 6 & Ex. 1.) Of the former 32 responses, many identified specific categories of documents in Plaintiff's possession that Plaintiff

would produce, notwithstanding Plaintiff's untimely objections. (*Id.*) Despite these repeated representations, and even though the protective order had issued weeks before these responses were served, Plaintiff did not produce any documents. (Levine Decl. ¶¶ 6-7 & Exs. 1, 3.) Plaintiff has never produced any documents since, or verifications for its Interrogatory responses. (Levine Decl. ¶ 7.)

Neither party followed up with the other in any manner, regarding any issue, or attempted to seek any relief from the Court, prior to the non-expert discovery cutoff, which passed on July 9, 2026. (*Id.* ¶ 8.) Nearly an additional month passed thereafter before Plaintiff's counsel sent correspondence to Elias Defendants' counsel on August 4, 2026, requesting to meet and confer regarding the adequacy of Elias Defendants' discovery responses, including but not limited to the non-production of documents and lack of Interrogatory verifications. (*Id.*) Elias Defendants' counsel informed Plaintiff's counsel that the proposed challenges to Elias Defendants' discovery responses were untimely but nevertheless agreed to meet and confer, and Plaintiff's counsel responded that the meet-and-confer would also address the instant motion, which Plaintiff would file in order to pursue the discovery issues identified in the August 4 correspondence. (*Id.* ¶ 9.) Counsel met and conferred on August 13, 2026, during which Plaintiff's counsel confirmed same; Elias Defendants' counsel advised that no agreement likely would be reached but that he would advise Plaintiff's counsel if that changed, and Plaintiff's counsel advised that Plaintiff would file the instant motion by August 17 due to Plaintiff's view of its urgency. (*Id.* ¶ 10.)

On August 20, no motion having been filed, Elias Defendants' counsel contacted Plaintiff's counsel, requesting to meet and confer regarding an anticipated motion for summary judgment by Elias Defendants, which based on this Court's orders and procedures would need to be filed by September 3, 2026, to be heard by the October 15, 2026, deadline. (*Id.* ¶ 11; *see* Dkt. 26; Judge Slaughter Civil

Standing Order at § IX(f) ("Standing Order").[2]) Plaintiff's counsel did not then respond and instead filed the instant motion on August 24,[3] attaching Elias Defendants' counsel's August 20 email as an exhibit. (Levine Decl. ¶ 11; Dkt. 37-2 ¶ 17 & Ex. H.) Counsel for the parties ultimately met and conferred regarding Elias Defendants' summary judgment motion on August 27, during which Plaintiff's counsel confirmed that Plaintiff had never produced any documents in this case and acknowledged that the two sides thus faced a "mirror issue with respect to RFPs." (Levine Decl. ¶ 11.) Plaintiff's counsel suggested that the two sides could belatedly exchange documents that neither had produced, though no agreement was reached regarding document production, and alternatively suggested that if neither side producing documents precluded related relief from the Court then this would apply equally to both sides, and Elias Defendants' counsel confirmed agreement with the latter proposition. (*Id.*)

4. Neither Side Notices Depositions

Neither Plaintiff nor Elias Defendants have noticed any deposition at any time. (*Id.* ¶ 13.) On April 23, 2026, counsel for the two sides spoke by phone, during which Plaintiff's counsel advised that Plaintiff intended to take Defendant Ramos's deposition in jail. (*Id.* ¶ 14.) Plaintiff's counsel also proposed that the other parties pursue an early neutral evaluation or mediation, and that if Elias Defendants would not agree, then Plaintiff would seek to take Defendants Fadi Elias and Jennifer Pope's depositions. (*Id.*) Elias Defendants' counsel advised that Elias Defendants were not opposed to an early neutral evaluation or mediation, but noted that Elias Defendants disputed any liability and so did not anticipate making any meaningful offer of settlement, so it would be up to Plaintiff to determine how to proceed. (*Id.*)

---

[2] Available at https://apps.cacd.uscourts.gov/JpsApi/file/26c7e990-34b1-41f3-4d99-08dedec318af (last accessed August 31, 2026).

[3] The deadline for initial expert disclosures passed on July 23, 2026 [Dkt. 26], and either side served expert disclosures. (Levine Decl. ¶ 12.)

Plaintiff's counsel did not follow up regarding any deposition at any time thereafter, no depositions were noticed, and the subject of depositions was not raised again in any manner prior to the instant motion. (*Id.*)

**B. Plaintiff's Litigation Against Defendant Ramos**

After Plaintiff's Complaint was filed, Defendant Ramos was not timely served, prompting the Court to issue an Order to Show Cause re Dismissal for failure to prosecute. [Dkt. 22.] Plaintiff responded, stating that it "regret[ted] that service on [Ramos] ha[d] not yet been completed," and asked the court to exercise its discretion to allow Plaintiff more time, and the Court obliged. [Dkt 23 at 2; Dkt. 24.] Following service of Ramos, the Court issued a second Order to Show Cause re Dismissal for failure to prosecute, noting that "the deadline for Defendant [Ramos] to respond to the Complaint ha[d] passed and Plaintiff ha[d] taken no action." [Dkt. 29.] Plaintiff then filed a request for default against Ramos on February 3, 2026, which the Clerk entered on February 5. [Dkt. 30, 31.]

Months later, on April 24, 2026, Plaintiff's counsel contacted Elias Defendants' counsel requesting to meet and confer regarding an anticipated motion for default judgment against Ramos. (Levine Decl. ¶ 15.) Counsel ultimately met and conferred on May 8. (*Id.*) During the call, Elias Defendants' counsel raised a number of issues, including inquiring what the amount requested would be, and Plaintiff's counsel advised he would have to consider these issues and circle back. (*Id.*) Elias Defendants' counsel heard nothing further regarding this motion until reading it following Plaintiff's filing thereof on August 24, 2026, almost seven months after the default was entered. (*Id.*; Dkt. 38.) This was despite the Court's Standing Order, which provides that, "[u]nless the court orders otherwise, motions for default judgment shall be filed within 14 days after the later of (1) entry of default against the last remaining defendant or (2) resolution of all claims against all defendants who have not defaulted." Standing Order at § IX(e).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." *See* Standing Order at § XIV. The "good cause" inquiry "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recs., Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999) (after schedule is issued, parties "must [] diligently attempt to adhere to that schedule throughout the subsequent course of the litigation"). "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609).

"[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609; *see id.* at 610 (explaining that "[a] scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril'") (citation omitted). Courts' efforts to efficiently resolve cases through use of scheduling orders "will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines." *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005); *see id.* ("Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders ….").

The "good cause" standard also requires the party seeking amendment to demonstrate that modification is necessary "because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference." *Jackson*, 186 F.R.D. at 608 (citing *Johnson*, 975 F.2d at 609). And the moving party must show that "it was diligent in seeking amendment of the Rule 16 order, once it became apparent that it could not comply with the order." *Id.* Even where diligence is shown, "the existence or degree of prejudice to

the party opposing the modification" may also merit denial of the motion. *Johnson*, 975 F.2d at 609.

## IV. ARGUMENT

### A. Plaintiff's Motion Should Be Denied for Lack of Diligence

Plaintiff has failed to show that it was diligent in seeking the discovery it now asks the Court to modify the case schedule to allow Plaintiff to obtain. As explained below, this alone requires denial of Plaintiff's motion.

#### 1. Plaintiff Significantly Delayed Pursuing Discovery

Discovery opened on December 23, 2025, when the parties conducted their Rule 26(f) meeting of counsel. Fed. R. Civ. P. 26(d)(1). Plaintiff did not begin to pursue discovery until over three months later, on March 25, 2026, when Plaintiff propounded one set of requests for admission, interrogatories, and requests for production of documents to each of Elias Defendants. *See Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 2:24-cv-04546-SB-AGR, 2025 WL 2427837, at *3-4 (C.D. Cal. July 11, 2025) (denying motion seeking discovery sanctions where discovery deadline had passed and movant "ignored the court's admonition to 'complete discovery far enough in advance of the discovery deadline to allow for the filing of a discovery motion if necessary and for completion of the discovery allowed if relief is granted'"). Plaintiff's delay in propounding discovery is all the more significant in light of Plaintiff's claim that it needed the requested discovery before it could take Elias Defendants' depositions (Mot. at 13), a position that should have increased the written discovery's urgency. And in any event, Plaintiff never noticed Elias Defendants' depositions or made an unqualified request for their deposition availability, such that it is not true that Elias Defendants "withheld" their depositions as Plaintiff claims. (*Id.* at 15.)

/ / /

2. Plaintiff Said Nothing, and Took No Action, for Months Following the Parties' Mutual Non-Production

Shortly after Plaintiff ultimately propounded discovery on Elias Defendants, Elias Defendants propounded written discovery on Plaintiff, and each side granted extensions to the other. Then, each side served written discovery responses with objections, but neither produced documents or Interrogatory verifications. Accordingly, and as Plaintiff's counsel intimated while meeting and conferring, Plaintiff determined to respond to Elias Defendants' non-production simply by withholding its own document production, rather than by following up or timely seeking to compel production of the documents Plaintiff now claims to need. (*See* Levine Decl. ¶ 11.) This wholly fails to demonstrate diligence, even though Plaintiff now contends that its obligations were complete, and its diligence was satisfied, simply by virtue of propounding the requests and agreeing to a protective order, without following up in any manner until nearly one month after the close of discovery. *See Shakey's Pizza Asia Ventures, Inc.*, 2025 WL 2427837, at *3 (movant did not "show[] the diligence that is required under Rule 16 and the CMO to obtain a continuance" where movant waited to raise discovery dispute until two weeks before cutoff and filed no motion to amend scheduling order before cutoff); *Boyer v. Novo Nordisk Inc.*, 2025 WL 2808149, at *1-2 (E.D. Cal. Oct. 1, 2025) (denying motion to reopen discovery and compel production where, although moving plaintiff sought production of contract "before the discovery deadline, [p]laintiff never sought to compel production before fact discovery closed" and "it was foreseeable that disclosure of that contract would necessitate further discovery"); *Greek v. Target Corp.*, No. 2:23-cv-00608-MCS-PVC, 2023 WL 8351537, at *2-3 (C.D. Cal. Sept. 21, 2023) (denying request to defer summary judgment ruling or amend schedule based on defendant's failure to provide discovery where "for four months …, Plaintiff sa[t] idly by without raising the delay to defense counsel or moving to compel disclosure," making "no effort to seek

relief" despite claim that dispute concerned "the most crucial piece of evidence in th[e] case"); *see also Yao Guo v. Robl*, No. 2:22-cv-05576-FWS-MAA, 2024 WL 4003913, at *2 (C.D. Cal. May 24, 2024) (denying ex parte request to extend discovery where "Defendants refused to produce [] documents at least one month prior to the close of fact discovery" but "Plaintiffs neither moved to compel production of these response[s] nor moved to amend the scheduling order in that timeframe"). This approach also reveals Plaintiff's contention that Elias Defendants' separately filed summary judgment motion is based on an "information asymmetry [Elias Defendants] engineered" (Mot. at 16) as hollow and, at best, misleading.

Plaintiff's approach during discovery in this case, as described above, also markedly distinguishes this case from the precedent on which Plaintiff relies, including *FeedMe Trading LLC v. My Fish Stop LLC*, No. CV 23-08857-MWF (JCx), 2024 WL 5257016 (C.D. Cal. Oct. 10, 2024). Significantly, the motion in *FeedMe Trading* was unopposed, so the court there had no basis or context by which to judge the motion besides the movant's own representations. *Id.* at *1. The court had no occasion to consider, and in any event did not address, any issue of the movant's parallel failure to produce any documents in discovery, and the movant's accompanying acquiescence in both sides' non-production. *See id.* at *2-4. As such, "the interests of fairness and equity" that expressly drove *FeedMe Trading*'s holding, *id.* at *2, are inapplicable here, where there is no imbalance in the parties' circumstances. Also critical to that decision was the fact that the non-movant's discovery responses at issue were served only "[t]here weeks before the cut-off," *id.* at *3, which meant that there already was insufficient time for a motion to compel, whereas here far more time was available, but Plaintiff made no attempt to use it.

*M2 Software, Inc. v. M2 Communications, L.L.C.*, 217 F.R.D. 499 (C.D. Cal. 2003), likewise did not address any issue of the moving party's unclean hands, such that the court's reliance on an "interest in fairness and equity" there was appropriate. *Id.* at 500. But just as significantly, as the court there explained, after serving

discovery responses representing that documents would be produced, counsel for the non-movant also "stated in writing thereafter that she planned to make a supplemental production of documents," and counsel for the movant "repeatedly and diligently" followed up on its requests to no avail. *Id.* Neither occurred here.

Despite failing to raise the non-production and other disputes regarding Elias Defendants' discovery responses for nearly three months after the responses were served and the protective order was entered, Plaintiff asserts that it "promptly pressed the issue" by sending meet-and-confer correspondence on August 4, 2026. (Mot. at 10.) Claiming that this was "prompt[]" defies credulity, given that Elias Defendants' responses were served on May 15, 2026, and the protective order was entered on May 18, 2026—particularly in light of the intervening non-expert discovery cutoff that passed on July 9, 2026. Notably, the May 2026 response and protective order dates afforded sufficient time for Plaintiff to pursue a discovery motion if necessary, *see* L.R. 37-1–37-3, even despite having granted an extension, and certainly sufficient time to timely move to extend the cutoff date before it passed—and at a minimum, to follow up on the issue in any manner at all. Plaintiff does not acknowledge that Plaintiff in fact delayed significantly, and makes no attempt to explain that delay.[4] This lack of promptness is, again, particularly stark given Plaintiff's position that it needed the documents before it could even schedule the depositions of Elias Defendants that it now claims are necessary.[5]

---

[4] Even assuming that Plaintiff was required to wait for documents or interrogatory verifications for some amount of time after the protective order was issued, which Plaintiff has not argued it was, this would not apply to all other aspects of Elias Defendants' written discovery responses, which were already completed and subject to challenge as of their date of service. (*See* Mot. at 19 (requesting to be allowed to challenge "the sufficiency of the Elias Defendants' discovery responses").)

[5] Plaintiff cites *Wild Fish Conservancy v. Cooke Aquaculture Pacific, LLC*, 2019 WL 1755306 (W.D. Wash. Apr. 19, 2019), in support of its argument that it could

(footnote continued)

3. Plaintiff Knew of Claimed Necessity of Discovery From Outset

That Plaintiff failed to follow up in any manner regarding Elias Defendants' non-production or discovery responses for months, notwithstanding Plaintiff's own non-production, is particularly significant because Plaintiff has been aware of the claimed significance of this discovery since even before Plaintiff's complaint was filed. Plaintiff's Complaint outlines the alleged "scheme" and "conspiracy" between Elias Defendants and Ramos in detail, and was filed following investigations into Ramos's conduct by Plaintiff and law enforcement (*see* Compl. ¶¶ 35-55 & Exs. A-B), such that it was readily apparent from the outset of this litigation that the discovery Plaintiff now seeks would be necessary to establish the truth of Plaintiff's allegations against Elias Defendants. (*See* Mot. at 8 (explaining significance of requested records and direct connection to Complaint's core allegations) (citing Compl. ¶¶ 35-43 & Exs. A-B), 16 (explaining relevance of records).) This, together with Plaintiff's lack of diligence in attempting to secure the depositions of Elias Defendants, who have been named defendants throughout the litigation, further highlights Plaintiff's overall lack of diligence and undermines Plaintiff's proffered excuses for it. *See McMullen v. Mercedes Benz USA, LLC*, No. CV 23-712-GW-MARx, 2024 WL 439439, at *2 (C.D. Cal. Jan. 2, 2024) (denying plaintiff's motion to reopen discovery for purpose of obtaining records where "Plaintiff's professed need for the material in question was — as Plaintiff freely admits — clearly foreseeable to Plaintiff") (internal citation omitted); *Greek*, 2023 WL 8351537, at *2

---

not prepare for Elias Defendants' unnoticed depositions due to the lack of documents. (Mot. at 13.) That decision addressed a movant's request to continue *expert* deadlines based on its own *expert's* inability to form complete opinions due to incomplete fact discovery, where expert discovery was governed by separate deadlines, as here. 2019 WL 1755306, at *4. *Wild Fish Conservancy* did not address any argument that a movant elected not to conduct depositions of *fact* witnesses during the *fact* discovery period based on the movant's view that the depositions, if taken, might not be maximally effective.

(denying motion where moving plaintiff acknowledged that evidence sought "could 'be the most crucial piece of evidence in th[e] case'" but failed to timely seek relief for months); *see also Daniels v. Specialized Loan Servicing, LLC*, No. 2:22-cv-06776-MCS-PD, 2025 WL 4740015, at *2-3 (C.D. Cal. Oct. 29, 2025) (denying ex parte application to reopen discovery for purpose of deposing witness whose identity movant had learned several months earlier). Plaintiff thus has not shown, and cannot show, that modification is necessary "because of the development of matters which could not have been reasonably foreseen or anticipated" at the outset of discovery. *Jackson*, 186 F.R.D. at 608.

4. Plaintiff Was Not Diligent in Pursuing this Motion

Although not as substantial as Plaintiff's other delays, Plaintiff also unjustifiably delayed filing the instant motion. During a meet-and-confer call regarding this motion on August 13, 2026, counsel for Elias Defendants advised that Elias Defendants were unlikely to agree to a continuance, but that if counsel learned otherwise, counsel would notify Plaintiff's counsel. (Levine Decl. ¶ 10.) Plaintiff's counsel responded that the motion would be filed by August 17 if no update was received or agreement reached, citing the motion's urgency. (*Id.*) Nevertheless, Plaintiff did not file this motion until August 24, after an additional week had passed, evidently only in response to Elias Defendants' counsel's request to meet and confer regarding summary judgment. (*See* Mot. at 11, 15-17.) Accordingly, even assuming that Plaintiff's delay of almost three months before raising any discovery issues was appropriate and that Plaintiff could not have sought to modify the schedule sooner—which, of course, it could have—Plaintiff still was not "diligent in seeking amendment of the Rule 16 order, once it became apparent that it could not comply." *Jackson*, 186 F.R.D. at 608 (citing *Johnson*, 975 F.2d at 609).

5. Plaintiff Has Not Been Diligent in Pursuing Claims Against Ramos

Although separate from the discovery dispute that is the subject of Plaintiff's motion, Plaintiff's idle approach to pursuing its case against Ramos—the defendant

upon whose liability Elias Defendants' alleged liability depends—shows that Plaintiff's overall course of conduct in this case has been far from diligent. This Court has twice ordered Plaintiff to show cause as to why Plaintiff's case against Ramos should not be dismissed, first for lack of timely service of Ramos, and then for failure to timely seek entry of default after Ramos failed to respond. [Dkt. 22, 29.] Then, after ultimately obtaining a default on February 5, 2026, Plaintiff belatedly moved for a default judgment almost seven months later [Dkt. 38], in disregard of this Court's requirement that such motions be filed within 14 days of the entry of default unless all claims against non-defaulting defendants have been resolved, which has not occurred. Standing Order at § IX(e). This inattentive approach is characteristic of Plaintiff's prosecution of the entire case, further demonstrating that no good cause exists to modify the scheduling order. *Johnson*, 975 F.2d at 609; *Wong*, 410 F.3d at 1060.

Because Plaintiff "was not diligent" in pursuing the discovery it now claims was necessary or in litigating the case overall, "'the inquiry should end' and the motion to modify should not be granted." *Zivkovic*, 302 F.3d at 1087.

**B. Prejudice to Elias Defendants Merits Denial**

Although the Court need look no further due to Plaintiff's lack of diligence, *id.*, Plaintiff's request also prejudices Elias Defendants, further meriting denial. *Johnson*, 975 F.2d at 609. Initially, Plaintiff's delay in pursuing this motion, and the impact granting it would have on the remainder of the case schedule, itself shows prejudice. *Milky Way Int'l Trading Corp. v. Ningbo Sunny Int'l Co., Ltd.*, No. 2:23-cv-08259-JLS-JC, 2024 WL 5424119, at *2 (C.D. Cal. Dec. 20, 2024) (explaining that moving plaintiff's delay in seeking to amend scheduling order to allow belated amendment of complaint, resulting in filing of motion six weeks before the fact discovery cutoff, was prejudicial). Granting the motion would also cause Elias Defendants "prejudice[] as they would need to make deponents available for [] depositions and potentially be forced to delay ongoing summary judgment briefing."

*Boyer*, 2025 WL 2808149, at *1; *see Daniels*, 2025 WL 4740015, at *2 (denying motion and explaining that if it were granted, non-movant would be prejudiced by having to conduct depositions while preparing for trial); *McMullen*, 2024 WL 439439, at *2 (explaining same).

Moreover, Elias Defendants relied on Plaintiff's non-production, and apparent lack of intent to further pursue fact discovery up to and after the fact discovery cutoff, in determining not to depose Plaintiff's officers or other witnesses Plaintiff identified. Additionally, had the two sides exchanged documents and deposed witnesses, Elias Defendants may have retained one or more experts to opine on issues of liability and damages. Plaintiff has omitted the expert deadlines from its request to reopen discovery (Mot. at 17), and Elias Defendants relied—to their detriment if Plaintiff's motion is granted—on Plaintiff's course of conduct described herein in not disclosing experts by the now-passed deadline for expert disclosures. The relief Plaintiff requests would also allow Elias Defendants' depositions to be taken well after the deadline by which all summary judgment briefing would need to be completed (*see id.* at 18-19 (requesting that these depositions be allowed to occur as late as December 18, 2026, and requesting that any dispositive motion be heard no later than December 17, 2026)), likely preventing their testimony from being accounted for in the motion, an eventuality against which Plaintiff might again attempt to invoke Rule 56(d).

All of these would prejudice Elias Defendants, improperly so where the requested modification is the result of Plaintiff's lack of diligence. Elias Defendants relied on the scheduling order, which the Court should enforce, *Wong*, 410 F.3d at 1060, and Elias Defendants hope that the Court will hear and grant their separate Motion for Summary Judgment and thereby allow this action to be resolved without the necessity of a trial.

If the Court elects to reach the issue of prejudice even despite Plaintiff's lack of diligence, it should deny the motion on this ground.

### C. Rule 56(d) Does Not Require a Continuance in These Circumstances

It is at a minimum premature to address Plaintiff's request to reopen discovery under Rule 56(d) (Mot. at 15-16), which was made before the filing of Elias Defendants' motion for summary judgment, and which relatedly fails to "show[] … that, for specified reasons, [Plaintiff] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). A party seeking discovery under Rule 56(d) must "explain what further discovery would reveal that is essential to justify its opposition to the motion[ ] for summary judgment," *Program Eng'g, Inc. v. Triangle Pubs., Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980) (alteration adopted), and Plaintiff has not done so.

In any event, Rule 56(d) provides "a device for litigants to avoid summary judgment *when they have not had sufficient time* to develop affirmative evidence," *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002) (emphasis added), such as when an early motion for summary judgment is filed. *E.g. Kremen v. Cohen*, 2012 WL 2919332, at *6 (N.D. Cal. July 17, 2012). Even where the Rule's "prerequisites are met, a court may refuse to continue hearing a summary judgment motion where a party has had the opportunity to conduct discovery in a diligent fashion, but failed to do so." *Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1207, 1213 (C.D. Cal. 2002) (citing *Stitt v. Williams*, 919 F.2d 516, 526 (9th Cir. 1990)); *see Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996) (explaining same); *White v. Baca*, No. CV 13-3401-JFW (SSx), 2014 WL 12700946, at *3 n.4 (C.D. Cal. Feb. 6, 2014) (denying Rule 56(d) request in part because "the discovery cut-off date … has already passed" and because "Plaintiff has not been diligent in conducting discovery in this action"); *Viteri-Butler v. Univ. of Cal. Hastings College of the Law*, 650 F. App'x 386, 387 (9th Cir. 2016) (memorandum) (affirming denial of Rule 56(d) request where movant did not previously "request a motion to compel, despite having a month to complete discovery and submit a brief to the court").

In particular, relief under Rule 56(d) based on a failure to produce documents that were requested in discovery is improper after discovery has closed where the movant did not timely seek to compel their production. *Nghiem v. Santa Clara Univ.*, 710 F. Supp. 3d 748, 756 (N.D. Cal. 2024); *Henry v. Regents of Univ. of Cal.*, 37 F. Supp. 3d 1067, 1075 n.4 (N.D. Cal. 2014); *see Reyes v. Wilson Mem. Hosp.*, 102 F. Supp. 2d 798, 826 (S.D. Ohio 1998) ("[A] party may not claim the right to an extension of time under Rule 56([d[6]]), by claiming that the opposing party has not cooperated with discovery requests. The remedy for a party that has not complied with requests for discovery is a motion to compel …."). Here, as explained, it was not for lack of time that Plaintiff has not obtained the discovery it now claims to need; rather, Plaintiff was not diligent and determined to itself not produce documents rather than seek to compel Elias Defendants' production. Accordingly, relief under Rule 56(d) is not proper. *See Reyes*, 102 F. Supp. 2d at 826 (explaining that "[a] motion under Rule 56([d]) is not the equivalent of a motion to compel," and "that the Plaintiff's assertion that the Defendants have not cooperated [in discovery] does not serve to entitle the Plaintiff to an extension of time in which to answer the Motion for Summary Judgment").

**D. Rule 16 Does Not Warrant Plaintiff's Requested Relief**

Plaintiff alternatively requests that based on Rule 16 and the Scheduling Order, the Court order Elias Defendants to not only produce documents and interrogatory verifications, but also reopen discovery to allow depositions and challenges to discovery responses. (Mot. at 18.) But these authorities provide no backdoor means of securing the relief Plaintiff seeks without the strictures of showing diligence, which Plaintiff has not shown. Even if they could, neither the Court's scheduling order, Rule 16, or Rule 33(b) provide for the reopening of

---

[6] Before amendments made in 2010, the provisions in Rule 56(d) were contained in Rule 56(f). Fed. R. Civ. P. 56, Cmte. Notes (2010 Amendment).

discovery without a showing of good cause. The Court should deny all such relief, including the request to reopen discovery.

## V. CONCLUSION

The Elias Defendants respectfully request that the Court deny Plaintiff's Motion in all respects.

DATED: September 3, 2026

LAW OFFICES OF DALE K. GALIPO

By

Dale K. Galipo
*Attorney for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

**CERTIFICATION OF COMPLIANCE WITH WORD LIMIT (L.R. 11-6.1)**

The undersigned, counsel of record for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc., certifies that this brief contains **5,668** words, which complies with the word limit of L.R. 11-6.1.

DATED: September 3, 2026

LAW OFFICES OF DALE K. GALIPO

By____________________________
Dale K. Galipo
*Attorney for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*