# Exhibit 2

Geoffrey Neri (SBN 258802)
Geoff@bnsklaw.com
BROWN NERI SMITH & KHAN LLP
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

*Attorneys for Plaintiff*
WOODSIDE CREDIT, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| WOODSIDE CREDIT, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXANDER G. RAMOS, an individual; FADI ELIAS, an individual; JENNIFER POPE, an individual; CLASSIC MOTORS, INC., an Arizona business entity of unknown organization; and DOES 1 through 20, inclusive,<br><br>Defendant. | Case No. 8:25-cv-02146-FWS-JDE<br><br>**PLAINTIFF WOODSIDE CREDIT, LLC'S RESPONSES AND OBJECTIONS TO DEFENDANT FADI ELIAS'S INTERROGATORIES, SET ONE** |

PROPOUNDING PARTY: Defendant Fadi Elias
RESPONDING PARTY: Plaintiff Woodside Credit, LLC
SET NUMBER: One (1)

**PRELIMINARY STATEMENT**

Plaintiff Woodside Credit, LLC ("Plaintiff," "Woodside," or "Responding Party") submits the following Responses and Objections to Defendant Fadi Elias's ("Defendant" or "Propounding Party") Interrogatories, Set One (the "Interrogatories"). These responses are made solely for purposes of this action. Plaintiff's investigation and discovery in this matter are ongoing, and these responses are based upon information presently available to Plaintiff after a reasonable inquiry. Plaintiff reserves the right to supplement, amend, or modify these responses pursuant to Federal Rule of Civil Procedure 26(e). The General Objections below are incorporated into each response as though fully set forth therein. The inclusion of any specific objection in an individual response shall not be construed as a waiver of any General Objection, and the failure to assert any specific objection in response to a particular Interrogatory shall not constitute a waiver of any applicable objection.

Notwithstanding the objections set forth herein, Plaintiff remains willing to meet and confer in good faith with Defendant regarding any of the objections or responses set forth in this document in an effort to resolve or narrow any disputes without the need for Court intervention.

**GENERAL OBJECTIONS**

1. Plaintiff objects to each Interrogatory to the extent it seeks information that is not relevant to any party's claim or defense, is outside the scope of discovery permitted by Federal Rule of Civil Procedure 26(b)(1), or is not proportional to the needs of the case, including considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the requested discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

2. Plaintiff objects to each Interrogatory to the extent it is vague, ambiguous, unintelligible, overly broad, unduly expansive, or fails to describe with reasonable particularity the

information sought, including by use of undefined, imprecise, or overly broad terms.

3. Plaintiff objects to each Interrogatory to the extent it is unreasonably cumulative or duplicative, obtainable from a more convenient, less burdensome, or less expensive source, or imposes an undue burden or expense disproportionate to the needs of the case.

4. Plaintiff objects to each Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common-interest doctrine, mediation privilege, consulting expert protections, the law enforcement investigatory or official information privilege, or any other applicable privilege, immunity, or protection recognized under federal or state law. Any inadvertent disclosure of privileged or protected material shall not constitute a waiver of any privilege, immunity, or protection.

5. Plaintiff objects to each Interrogatory to the extent it seeks information not within Plaintiff's possession, custody, or control.

6. Plaintiff objects to each Interrogatory to the extent it seeks confidential, proprietary, commercially sensitive, trade secret, personal, or private information of Plaintiff or third parties. Plaintiff will provide responsive, nonprivileged information only subject to an appropriate protective order or confidentiality protections.

7. Plaintiff objects to each Interrogatory to the extent it seeks information already in Defendant's possession, custody, or control, equally available to Defendant, or obtainable by Defendant from public records, its own files, or other sources equally accessible to Defendant.

8. Plaintiff objects to each Interrogatory to the extent it seeks information outside a reasonable or relevant time period or imposes an unlimited or overbroad temporal scope.

9. Plaintiff's responses are based upon information presently known after a reasonable inquiry. Plaintiff reserves the right to amend or supplement its responses pursuant to Federal Rule of Civil Procedure 26(e) based on ongoing investigation, discovery, or review of documents.

10. The provision of any response shall not constitute an admission regarding relevance, admissibility, authenticity, materiality, ownership, or accuracy. Plaintiff expressly reserves all objections as to admissibility.

11. To the extent any Interrogatory purports to impose definitions or instructions inconsistent with the Federal Rules of Civil Procedure or otherwise broader than applicable law, Plaintiff objects and will construe such Interrogatory reasonably and in accordance with the Federal Rules.

12. By responding to any Interrogatory, Plaintiff does not waive, and expressly preserves, any objection, privilege, immunity, protection, or right with respect to any other Interrogatory, any future discovery request, or any proceeding in this action.

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify, by name, employing agency, rank (if known), phone number, and address, every official from every federal, state, or local law enforcement agency with whom YOU have communicated regarding DEFENDANTS or the INCIDENT at any time since January 1, 2022. (As used in these Interrogatories, "law enforcement agency" is defined to include, without limitation, the Newport Beach Police Department, Federal Bureau of Investigations, United States Department of Justice, and United States Department of Homeland Security.)

**RESPONSE TO INTERROGATORY NO. 1:**

Responding Party objects to this Interrogatory as overbroad in temporal scope to the extent it seeks information predating the events at issue. Responding Party further objects that this Interrogatory seeks information protected by the attorney work-product doctrine, the attorney-client privilege, and the law enforcement investigatory and official-information privileges, and to the extent disclosure would interfere with an ongoing governmental criminal investigation and prosecution. Responding Party further objects that the Interrogatory seeks information equally available to Defendant from the relevant governmental agencies, and that it is premature given that discovery and Plaintiff's investigation are ongoing. Subject to and without waiving the foregoing objections, Responding Party responds as follows: On or about October 20, 2024, Woodside contacted the Newport Beach Police Department ("NBPD") and reported the theft of more than $1 million by Ramos. Over the following two weeks, the NBPD notified Woodside that, due to the nature of the crime (wire fraud and check fraud), the fact that it occurred across multiple states,

and the amount of money stolen, the investigation and prosecution of Ramos was being referred to the Federal Bureau of Investigation ("FBI") and the United States Attorney for the Central District of California. On or about November 8, 2024, FBI investigators came to Woodside's office to conduct interviews and begin their investigation. Communications on behalf of Woodside have been conducted by or through Woodside's personnel, including Brian Trevisan, Natalie Hirschman, and its general counsel, Sean Kirwan.

The name and title of every NBPD personnel is not presently known to Responding Party but will be provided in a supplemental response. The address and telephone number of the NBPD are 870 Santa Barbara Drive, Newport Beach, CA 92660; 949-644-3681. The identities and contact information of the individual FBI investigators are subject to governmental restrictions on disclosure imposed in connection with the ongoing federal criminal investigation and prosecution, including restrictions arising under the United States Department of Justice's Touhy regulations (28 C.F.R. § 16.21 et seq.). Accordingly, Responding Party declines to identify the individual FBI investigators by name, title, telephone number, or address. To the extent this information later becomes subject to disclosure, including upon conclusion of the criminal matter or upon authorization from the relevant governmental authorities, Responding Party will supplement. Discovery and Plaintiff's investigation are continuing, and Responding Party reserves the right to supplement this response pursuant to Rule 26(e).

**INTERROGATORY NO. 2:**

Identify, by name, employer, title, phone number, and address, every "Representative[ ] of Partner Banks" referenced in YOUR F.R.C.P. 26(a) Initial Disclosures.

**RESPONSE TO INTERROGATORY NO. 2:**

Responding Party objects to this Interrogatory on the grounds that it seeks private, confidential, and proprietary information of nonparty financial institutions and their individual employees and representatives, including personal identifying and contact information, the disclosure of which would violate the privacy rights of those third parties. Responding Party will not disclose such third-party information, if at all, except pursuant to an appropriate protective order. Responding Party further objects that the Interrogatory is premature, as Plaintiff's Rule

26(a) Initial Disclosures identify these witnesses with names "to be supplemented" and Plaintiff's investigation is ongoing, and to the extent the information sought is obtainable by Defendant through other, less intrusive means of discovery. Subject to and without waiving the foregoing objections, Responding Party responds as follows: The "Partner Banks" are the Federal or State regulated community banks that purchased the loans at issue and held the authority to accept or decline offers on the repossessed vehicles, as alleged in the operative Complaint. On the basis of the foregoing objections, and to protect the privacy and confidentiality interests of these nonparties, Responding Party declines to identify the Partner Banks or their individual representatives by name, employer, title, telephone number, or address. Responding Party reserves the right to supplement this response pursuant to Rule 26(e).

**INTERROGATORY NO. 3:**

Identify, by name, title, phone number, and address, every "FBI Investigator[ ]" referenced in YOUR F.R.C.P. 26(a) Initial Disclosures.

**RESPONSE TO INTERROGATORY NO. 3:**

Responding Party objects to this Interrogatory on the grounds that it seeks information protected by the law enforcement investigatory and official-information privileges and the attorney work-product doctrine, and to the extent disclosure would interfere with an ongoing federal criminal investigation and prosecution. Responding Party further objects that the information sought is equally available to Defendant from the FBI and that the Interrogatory is premature, as Plaintiff's Rule 26(a) Initial Disclosures identify these individuals with names "to be supplemented." Subject to and without waiving the foregoing objections, Responding Party responds as follows: FBI investigators came to Woodside's office to conduct interviews on or about November 8, 2024, in connection with the investigation that led to Ramos's arrest on May 22, 2025. The identities and contact information of the individual FBI investigators are subject to governmental restrictions on disclosure imposed in connection with the ongoing federal criminal investigation and prosecution, including restrictions arising under the United States Department of Justice's Touhy regulations (28 C.F.R. § 16.21 et seq). Accordingly, Responding Party declines to identify the individual FBI investigators by name, title, telephone number, or address. To the

extent this information later becomes subject to disclosure, including upon conclusion of the criminal matter or upon authorization from the relevant governmental authorities, Responding Party will supplement. Responding Party reserves the right to supplement this response pursuant to Rule 26(e).

**INTERROGATORY NO. 4:**

Identify, by name, title, phone number, and address, every “Newport Beach Police Department personnel” referenced in YOUR F.R.C.P. 26(a) Initial Disclosures.

**RESPONSE TO INTERROGATORY NO. 4:**

Responding Party objects to this Interrogatory on the grounds that it seeks information protected by the law enforcement investigatory and official-information privileges and the attorney work-product doctrine, and to the extent disclosure would interfere with an ongoing investigation. Responding Party further objects that the information sought is equally available to Defendant from the NBPD and that the Interrogatory is premature, as Plaintiff’s Rule 26(a) Initial Disclosures identify these individuals with names “to be supplemented.” Subject to and without waiving the foregoing objections, Responding Party responds as follows: Woodside contacted the NBPD on or about October 20, 2024, to report the theft by Ramos, and the NBPD thereafter referred the matter to the FBI and the United States Attorney for the Central District of California. The name and title of every NBPD personnel is not presently known to Responding Party but will be provided in a supplemental response. The address and telephone number of the NBPD are 870 Santa Barbara Drive, Newport Beach, CA 92660; 949-644-3681 Discovery and Plaintiff's investigation are continuing, and Responding Party reserves the right to supplement this response pursuant to Rule 26(e).

**INTERROGATORY NO. 5:**

Identify, by name, title, phone number, and address, every “Other Woodside employee[ ] with knowledge” referenced in YOUR F.R.C.P. 26(a) Initial Disclosures.

**RESPONSE TO INTERROGATORY NO. 5:**

Responding Party objects to this Interrogatory as premature, as Plaintiff’s Rule 26(a) Initial Disclosures identify these individuals with names “to be supplemented,” and Plaintiff’s

investigation is ongoing. Responding Party further objects to the extent the Interrogatory seeks the private contact information of non-party employees, who should be contacted through Plaintiff's counsel. Subject to and without waiving the foregoing objections, Responding Party responds that the Woodside employees presently identified as having knowledge are as follows: Roger Kirwan, CEO, Mitch Shatzen, Director, Sean Kirwan, EVP & General Counsel, Brian Trevisan, EVP, Natalie Hirshman, Controller (no longer at Woodside), Raul Castro, Special Assets Manager, Brooke Perez, Title Manager, each of whom may be contacted c/o Plaintiff's counsel, Brown Neri Smith & Khan LLP.

**INTERROGATORY NO. 6:**

Identify, by name, employer, title, phone number, and address, all witnesses with information about the INCIDENT not already identified in YOUR F.R.C.P. 26(a) Initial Disclosures.

**RESPONSE TO INTERROGATORY NO. 6:**

Responding Party objects to this Interrogatory to the extent it seeks information protected by the attorney work-product doctrine, including the identity of witnesses selected or emphasized by counsel, and to the extent it is overbroad and premature in light of ongoing investigation and discovery. Subject to and without waiving the foregoing objections, Responding Party refers Defendant to the witnesses identified in Plaintiff's Rule 26(a) Initial Disclosures, which include Brian Trevisan, Brooke Perez, Alexander Ramos, Fadi Elias, Jennifer Pope, Amy Fisher (the Montana Agent, Agent for Montana Titles, Inc.), FBI investigators, and NBPD personnel. Responding Party is not presently aware of additional witnesses beyond those identified in its Initial Disclosures and the operative Complaint. The identity and contact information of any additional fact witnesses are not presently known and will be supplied upon ascertainment. Responding Party reserves the right to supplement this response pursuant to Rule 26(e).

**INTERROGATORY NO. 7:**

State all facts known to YOU that support YOUR allegation, in paragraph 40 of YOUR operative Complaint, that Defendant Fadi Elias "admitted to" the fraud scheme YOU allege therein, including the date(s) of any relevant statements, the specific content of such statements,

the source or context of such statements, and whether such statements were recorded.

**RESPONSE TO INTERROGATORY NO. 7:**

Responding Party objects to this Interrogatory to the extent it seeks information protected by the attorney work-product doctrine and the attorney-client privilege, and to the extent it seeks information derived from or related to an ongoing law enforcement investigation. Responding Party further objects that the Interrogatory is premature, as discovery is ongoing. Subject to and without waiving the foregoing objections, Responding Party responds as follows: As alleged in paragraph 40 of the operative Complaint, Elias admitted that Ramos told him that Woodside wanted the Partner Banks to believe that automobiles were selling for higher prices than the prices at which they were actually selling. The Elias Defendants would then sell the vehicle, keep the profits, and, upon information and belief, share a portion of those profits with Ramos. The specific date(s) of Elias's statement(s), the precise content, the source or context (including to whom and where the statement was made), and whether the statement was recorded are not presently set forth in the documents available to Plaintiff and will be supplied upon ascertainment through ongoing discovery and investigation. Responding Party reserves the right to supplement this response.

**INTERROGATORY NO. 8:**

State all facts known to YOU that support YOUR allegations that any DEFENDANT committed fraud against YOU, including as alleged in the First Cause of Action in YOUR operative Complaint.

**RESPONSE TO INTERROGATORY NO. 8:**

Responding Party objects to this Interrogatory as a premature contention interrogatory, as discovery and Plaintiff's investigation are ongoing, and to the extent it seeks information protected by the attorney work-product doctrine and the attorney-client privilege. Responding Party further objects that the Interrogatory is overbroad and unduly burdensome to the extent it purports to require Plaintiff to marshal "all facts." Subject to and without waiving the foregoing objections, Responding Party responds as follows: Defendant Alexander Ramos was hired by Woodside in 2017 and was promoted in April 2021 to Assistant Vice President, Title & Risk Manager, a position that gave him access to the funds he diverted. Woodside finances both the purchase price

and the sales tax, title, and licensing fees ("TT&L Fees") on consumer loans for classic and collector automobiles, and holds the TT&L Fees until the title package is ready to be sent to the applicable state DMV. Ramos developed two primary schemes to steal TT&L money. In the first, Ramos conspired with a Montana title agent, Agent for Montana Titles, Inc., controlled by Amy Fisher (the "Montana Agent"), to deposit TT&L checks into a Valley Bank account the Montana Agent controlled and then disburse the funds at Ramos's direction; Ramos siphoned the money to himself, primarily by having the Montana Agent write checks back to "Woodside Credit," which Ramos deposited into a Chase account he secretly opened under the name "Ramos-Woodside Credit, LLC." In the second scheme, conducted with the Elias Defendants, Ramos arranged for Elias, Pope, and/or Classic Motors to purchase repossessed vehicles from Woodside's Partner Banks and then directed the Montana Agent to issue checks fraudulently "refunding" a portion or all of the purchase price. Between March 23, 2023 and October 10, 2024, the Elias Defendants purchased at least 21 vehicles from Partner Banks for a total of $1,801,000, and the Montana Agent issued 48 checks and wires to Elias, Classic Motors, and Pope totaling $1,419,803, the majority of which bore "Refund" in the memo line. Defendants concealed these facts, which they were bound to disclose, in violation of California Civil Code sections 1709 and 1710, causing Woodside economic losses of no less than approximately $4 million. Responding Party reserves the right to supplement this response.

**INTERROGATORY NO. 9:**

State all facts known to YOU that support YOUR allegations that any DEFENDANT aided and abetted fraud against YOU, including as alleged in the Second Cause of Action in YOUR operative Complaint.

**RESPONSE TO INTERROGATORY NO. 9:**

Responding Party objects to this Interrogatory as a premature contention interrogatory, and to the extent it seeks information protected by the attorney work-product doctrine and the attorney-client privilege, and as overbroad and unduly burdensome to the extent it requires Plaintiff to marshal "all facts." Subject to and without waiving the foregoing objections, Responding Party incorporates its response to Interrogatory No. 8. In summary, the Elias Defendants knew of



BROWN NERI SMITH & KHAN LLP

Ramos's wrongful conduct and provided substantial assistance to it. The Elias Defendants submitted purchase offers on repossessed vehicles—either as the high bidder or at a price close enough to the loan balance that Ramos could obtain Partner Bank approval without obtaining additional bids—and then accepted fraudulent "refund" payments from the Montana Agent, retaining the vehicles and reselling them for profit. Elias admitted that Ramos told him Woodside wanted the Partner Banks to believe vehicles were selling for higher prices than the actual sale prices, demonstrating the Elias Defendants' awareness of the wrongful conduct and that their participation would substantially assist its accomplishment. Responding Party reserves the right to supplement this response.

**INTERROGATORY NO. 10:**

State all facts known to YOU that support YOUR allegations that any DEFENDANT engaged in a conspiracy to commit fraud against YOU, including as alleged in the Third Cause of Action in YOUR operative Complaint.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party objects to this Interrogatory as a premature contention interrogatory, and to the extent it seeks information protected by the attorney work-product doctrine and the attorney-client privilege, and as overbroad and unduly burdensome to the extent it requires Plaintiff to marshal "all facts." Subject to and without waiving the foregoing objections, Responding Party incorporates its responses to Interrogatory Nos. 8 and 9. In summary, as early as 2022, but at least beginning in 2023, Ramos and the Elias Defendants conspired and agreed that the Elias Defendants would either be the high bidder on a repossessed vehicle that Woodside was selling on behalf of a Partner Bank, or would offer a price close enough to the balance owed that Ramos could obtain the Partner Bank's acceptance without additional bids. After the purchase, Ramos directed the Montana Agent to cut checks to the Elias Defendants fraudulently "refunding" a portion or all of the purchase price, and the Elias Defendants resold the vehicles for profit, sharing a portion of the profit with Ramos. This agreement and its execution are evidenced by the pattern of 21 vehicle purchases totaling $1,801,000 and the corresponding 48 checks and wires from the Montana Agent totaling $1,419,803. Responding Party reserves the right to supplement this

response.

**INTERROGATORY NO. 11:**

State all facts known to YOU that support YOUR allegations that any DEFENDANT breached any fiduciary duty owed to YOU, including as alleged in the Fourth Cause of Action in YOUR operative Complaint.

**RESPONSE TO INTERROGATORY NO. 11:**

Responding Party objects to this Interrogatory as a premature contention interrogatory, and to the extent it seeks information protected by the attorney work-product doctrine and the attorney-client privilege, and as overbroad and unduly burdensome to the extent it requires Plaintiff to marshal "all facts." Subject to and without waiving the foregoing objections, Responding Party responds as follows: By reason of his position as Assistant Vice President, Title & Risk Manager, at Woodside, Ramos owed Plaintiff fiduciary duties, including the duties of good faith, undivided loyalty, and reasonable care, and the duty to refrain from self-dealing. Ramos breached those duties by exploiting his position and access to TT&L funds to orchestrate and conceal the misappropriation of Woodside's funds described above, including by diverting TT&L Fees to the Montana Agent, causing checks to be written back to a Chase account he secretly controlled, and directing fraudulent "refund" payments to the Elias Defendants, all for his own benefit and to Woodside's detriment. Responding Party reserves the right to supplement this response.

**INTERROGATORY NO. 12:**

State all facts known to YOU that support YOUR allegations that any DEFENDANT aided and abetted any breach of any fiduciary duty owed to YOU, including as alleged in the Fifth Cause of Action in YOUR operative Complaint.

**RESPONSE TO INTERROGATORY NO. 12:**

Responding Party objects to this Interrogatory as a premature contention interrogatory, and to the extent it seeks information protected by the attorney work-product doctrine and the attorney-client privilege, and as overbroad and unduly burdensome to the extent it requires Plaintiff to marshal "all facts." Subject to and without waiving the foregoing objections, Responding Party incorporates its response to Interrogatory No. 11. In summary, the Elias Defendants were aware of

Ramos's position of trust at Woodside and of his breaches of fiduciary duty, and knowingly provided substantial assistance to those breaches by participating in the vehicle-purchase and "refund" scheme and accepting the diverted funds from the Montana Agent. The Elias Defendants' knowledge is demonstrated by Elias's admission that Ramos disclosed the scheme's purpose to him and by the pattern of coordinated purchases and "refund" payments described above. Responding Party reserves the right to supplement this response.

**INTERROGATORY NO. 13:**

State all facts known to YOU that support YOUR allegations that any DEFENDANT violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), including as alleged in the Sixth Cause of Action in YOUR operative Complaint.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party objects to this Interrogatory as a premature contention interrogatory, and to the extent it seeks information protected by the attorney work-product doctrine and the attorney-client privilege, and as overbroad and unduly burdensome to the extent it requires Plaintiff to marshal "all facts." Subject to and without waiving the foregoing objections, Responding Party incorporates its responses to Interrogatory Nos. 8 through 12. In summary, Defendants conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity consisting of repeated acts of wire and mail fraud carried out by means of the TT&L diversion scheme and the vehicle "refund" scheme described above. The pattern is evidenced by, among other things, the repeated transmission of funds and checks across state lines between 2023 and October 2024, including the 48 checks and wires from the Montana Agent totaling $1,419,803, and the diversion of more than $1 million in TT&L Fees in 2024 alone. Ramos was arrested by the FBI on May 22, 2025 and charged with wire fraud. Responding Party reserves the right to supplement this response.

**INTERROGATORY NO. 14:**

State all facts known to YOU that support YOUR allegations that any DEFENDANT violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), including as alleged in the Seventh Cause of Action in YOUR operative Complaint.

**RESPONSE TO INTERROGATORY NO. 14:**

Responding Party objects to this Interrogatory as a premature contention interrogatory, and to the extent it seeks information protected by the attorney work-product doctrine and the attorney-client privilege, and as overbroad and unduly burdensome to the extent it requires Plaintiff to marshal "all facts." Subject to and without waiving the foregoing objections, Responding Party incorporates its response to Interrogatory No. 13. In summary, Defendants conspired and agreed to violate 18 U.S.C. § 1962(c), as evidenced by their coordinated conduct in furtherance of the TT&L diversion and vehicle "refund" schemes, including the agreement between Ramos and the Elias Defendants regarding the purchase of repossessed vehicles and the corresponding fraudulent "refunds," and Ramos's coordination with the Montana Agent to disburse and conceal the diverted funds. Each Defendant agreed to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. Responding Party reserves the right to supplement this response.

DATED: June 15, 2026

BROWN NERI SMITH & KHAN, LLP

By: *Geoffrey A. Neri*
Geoffrey A. Neri
Attorneys for Plaintiff
*Woodside Credit, LLC*

**VERIFICATION**

I, Sean Kirwan, declare:

I am the Executive Vice President and General Counsel of Plaintiff Woodside Credit, LLC, a party to the above-entitled action, and I am authorized to make this verification on its behalf. I have read the foregoing PLAINTIFF WOODSIDE CREDIT, LLC'S RESPONSES AND OBJECTIONS TO DEFENDANT FADI ELIAS'S INTERROGATORIES, SET ONE, and know its contents. The objections stated therein are made by counsel and are legal contentions to which this verification does not extend. As to the factual matters set forth in the responses, they are true and correct of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I am informed and believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ____________________, 2026, at ____________________, California.

__________________________________________

Sean Kirwan
Executive Vice President & General Counsel
Woodside Credit, LLC