**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118
*Attorney for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WOODSIDE CREDIT, LLC, a California limited liability company,

Plaintiff,

v.

ALEXANDER G. RAMOS, an individual; FADI ELIAS, an individual; JENNIFER POPE, an individual; CLASSIC MOTORS, INC., an Arizona business entity; and DOES 1 through 20, inclusive,

Defendants.

Case No. 8:25-cv-02146-FWS-JDE

*Honorable Fred W. Slaughter*

**DEFENDANTS FADI ELIAS, JENNIFER POPE, AND CLASSIC MOTORS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

[*Filed concurrently with Elias Defendants' Separate Statement of Undisputed Facts; Declaration of Fadi Elias; Declaration of Jennifer Pope; and (Proposed) Order*]

Date: October 15, 2026
Time: 10:00 a.m.
Courtroom: 10A

Action filed: September 22, 2025

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 15, 2026, at 10:00 a.m. or as soon thereafter as the matter may be heard, at the above-entitled court, located at 411 West 4th Street, Santa Ana, CA 92701, Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc. (collectively, "Elias Defendants"), will and hereby do move the Court for an order granting summary judgment in their favor based on Plaintiff's Complaint.

This Motion is made pursuant to Federal Rule of Civil Procedure 56 and upon the following grounds:

1. Elias Defendants are entitled to judgment on Plaintiff's first cause of action for Fraud under California Civil Code §§ 1709 and 1710 because under the uncontroverted facts, their purchases of vehicles and associated transactions, arranged and facilitated by Plaintiff's executive officer and agent, Defendant Alexander G. Ramos, were made without any knowledge that Ramos was engaged in any fraud against Plaintiff, or was otherwise acting without Plaintiff's authority and approval, and because Elias Defendants lacked any intent to commit fraud.

2. Elias Defendants are entitled to judgment on Plaintiff's second cause of action for Aiding and Abetting Fraud because under the uncontroverted facts, their purchases of vehicles and associated transactions, arranged and facilitated by Plaintiff's executive officer and agent, Defendant Alexander G. Ramos, were made without any knowledge that Ramos was engaged in any fraud against Plaintiff, or was otherwise acting without Plaintiff's authority and approval, and because Elias Defendants lacked any intent to aid and abet fraud.

3. Elias Defendants are entitled to judgment on Plaintiff's third cause of action for Conspiracy to Commit Fraud because under the uncontroverted facts, their purchases of vehicles and associated transactions, arranged and facilitated by Plaintiff's executive officer and agent, Defendant Alexander G. Ramos, were made without any knowledge that Ramos was engaged in any fraud against Plaintiff, or was otherwise acting without Plaintiff's authority and approval, and because Elias

Defendants lacked any intent conspire in any fraud.

4. Elias Defendants are entitled to judgment on Plaintiff's fifth cause of action for Aiding and Abetting Breach of Fiduciary Duty because under the uncontroverted facts, their purchases of vehicles and associated transactions, arranged and facilitated by Plaintiff's executive officer and agent, Defendant Alexander G. Ramos, were made without any knowledge that Ramos was engaged in any breach of a fiduciary duty toward Plaintiff, or was otherwise acting without Plaintiff's authority and approval, and because Elias Defendants lacked any intent to aid and abet such a breach.

5. Elias Defendants are entitled to judgment on Plaintiff's sixth cause of action for Violation of 18 U.S.C. § 1962(c) because under the uncontroverted facts, their purchases of vehicles and associated transactions, arranged and facilitated by Plaintiff's executive officer and agent, Defendant Alexander G. Ramos, were made without any knowledge that Ramos was engaged in any fraud against or breach of a fiduciary duty toward Plaintiff, or was otherwise acting without Plaintiff's authority and approval, and because Elias Defendants lacked any intent to aid or assist such fraud or breach.

6. Elias Defendants are entitled to judgment on Plaintiff's seventh cause of action for Violation of 18 U.S.C. § 1962(d) because under the uncontroverted facts, their purchases of vehicles and associated transactions, arranged and facilitated by Plaintiff's executive officer and agent, Defendant Alexander G. Ramos, were made without any knowledge that Ramos was engaged in any fraud against or breach of a fiduciary duty toward Plaintiff, or was otherwise acting without Plaintiff's authority and approval, and because Elias Defendants lacked any conspire in any such fraud or breach.

This Motion is based on this Notice of Motion and the attached Memorandum of Points and Authorities, Declarations and any exhibits attached thereto, the Separate Statement of Undisputed Facts, and all pleadings, records, papers on file in this action,

and any further argument the Court deems fit to receive at any hearing on this Motion.

This Motion is made following the conference of counsel for Elias Defendants and Plaintiff, which took place via telephone conference on August 27, 2026, during which counsel discussed the merits of the motion in detail over the phone, each side's position on the issues, and potential means of resolving the issues without motion practice. The parties, however, were unable to resolve the issues informally, necessitating the instant motion.

DATED: September 3, 2026

LAW OFFICES OF DALE K. GALIPO

By *\/s/ Dale K. Galipo*
Dale K. Galipo
*Attorney for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

A. Background and Plaintiff's Allegations ..... 2

B. Elias Defendants' Purchases of Vehicles through Plaintiff and Partial Refunds Received from Plaintiff ..... 3

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. Plaintiff Cannot Show Elias Defendants Committed Fraud ..... 7

B. Plaintiff Cannot Show Elias Defendants Aided and Abetted Fraud ..... 11

C. Plaintiff Cannot Show Elias Defendants Conspired to Commit Fraud ..... 12

D. Plaintiff Cannot Show Elias Defendants Aided and Abetted a Breach of Fiduciary Duty ..... 14

E. Plaintiff Cannot Show Elias Defendants Violated 18 U.S.C. § 1962(c) ..... 15

F. Plaintiff Cannot Show Elias Defendants Violated 18 U.S.C. § 1962(d) ..... 17

V. CONCLUSION ..... 18

# TABLE OF AUTHORITES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........ 6, 7

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ........ 15

*Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993) ........ 21

*Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802 (2005) ........ 12, 14

*Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138 (2005) ........ 12, 13, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........ 6

*Chisolm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032 (S.D. Cal. 2019) ........ 7

*Choate v. County of Orange*, 86 Cal. App. 4th 312 (2000) ........ 15, 16

*Conrad v. Bank of America*, 45 Cal. App. 4th 133 (1996) ........ 9

*Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, No. 11-ML-02265-MRP (MANx), 2012 WL 10731957 (C.D. Cal. June 29, 2012) ........ 20

*First All. Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) ........ 13, 14

*Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003) ........ 7

*George v. eBay, Inc.*, 71 Cal. App. 5th 620 (2021) ........ 13, 15

*Gerard v. Ross*, 204 Cal. App. 3d 968 (1988) ........ 13

*Gilbert v. MoneyMutual, LLC*, 2018 WL 8186605 (N.D. Cal. Oct. 30, 2018) ........ 19

*Gomez v. Guthy-Renker, LLC* No. EDCV 14-01425 JGB (KKx) 2015 WL 4270042 (C.D. Cal. July 13, 2015) . 19

*Gonzalez v. Lloyds TSB Bank, PLC*,
532 F. Supp. 2d 1200 (C.D. Cal. 2006) .......... 17, 18

*Gutierrez v. Wells Fargo & Co.*,
622 F. Supp. 2d 946 (N.D. Cal. 2009) .......... 10

*Hammett v. Sherman*,
2020 WL 1332591 (S.D. Cal. Mar. 23, 2020) .......... 18

*Hernandez v. Spacelabs Med. Inc.*,
343 F.3d 1107 (9th Cir. 2003) .......... 7

*Hough v. Carroll*,
No. 2:24-cv-02886-WLH-SK, 2025 WL 1674425 (C.D. Cal. May 5, 2025) .. 13, 14

*Hullinger v. Anand*,
CV 15-07185 SJO (PJWx), 2016 WL 11750270 (C.D. Cal. July 8, 2016) .... 12, 14, 17, 18

*IIG Wireless, Inc. v. Yi*,
22 Cal. App. 5th 630 (2018) .......... 15, 16

*Intel Corp. v. Hartford Accident & Indem. Co.*,
952 F.2d 1551 (9th Cir. 1991). .......... 7

*James River Ins. Co. v. Hebert Schenk, P.C.*,
523 F.3d 915 (9th Cir. 2008) .......... 6

*Kidron v. Movie Acquisition Corp.*,
40 Cal. App. 4th 1571 (1995) .......... 15

*Krouth v. Brown*,
2006 WL 3758256 (D. Or. Dec. 18, 2006) .......... 20

*Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP*,
676 F.3d 1354 (Fed. Cir. 2012) .......... 9, 10

*Levi Strauss & Co. v. Espirit US Distrib. Ltd.*,
588 F. Supp. 2d 1076 (2008) .......... 12

*Lewis v. Google LLC*,
461 F. Supp. 3d 938 (N.D. Cal. 2020) .......... 11

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005) .......... 19

*Lovejoy v. AT&T Corp.*,
92 Cal. App. 4th 85 (2001) .......... 10

*Matsushita Elec. v. Zenith Radio*,
475 U.S. 574 (1986) .......... 7

*Morning Star Packing Co. v. SK Foods, L.P.*,
2018 WL 3740561 (E.D. Cal. Aug. 7, 2018) .......... 21

*Nasrawi v. Buck Consultants LLC*,
231 Cal. App. 4th 328 (2014). .......... 17, 18

*Nayab v. Capital One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) .......... 9

*Neilson v. Union Bank of Cal., N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......... 17, 18

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) .......... 19

*Rattagan v. Uber Techs., Inc.*,
17 Cal. 5th 1 (2024) .......... 10, 11

*Robinson Helicopter Co., Inc., v. Dana Corp.*,
34 Cal. 4th 979 (2004) .......... 9

*Sanchez v. Sam's West, Inc.*,
2:21-cv-05122-SVW-JC, 2024 WL 4131841 (C.D. Cal. Feb. 9, 2024) .......... 7

*Shapiro v. Sutherland*,
64 Cal. App. 4th 1534 (1998) .......... 11

*Shaterian v. Wells Fargo Bank, N.A.*,
829 F. Supp. 2d 873 (N.D. Cal. 2011) .......... 12, 14, 17

*Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*,
245 Cal. App. 4th 821 (2016) .......... 11

*Tu Le v. Prestige Community Credit Union*,
2025 WL 1554413 (9th Cir. June 2, 2025) .......... 14

*United States v. Brandao*,
539 F.3d 44 (1st Cir. 2008) .......... 19

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 19, 20, 21

*United States v. Fernandez*,
388 F.3d 1199 (9th Cir. 2004) .......... 21

*United States v. Hall Family Tr. Dated June 8, 2001*,
2019 WL 1429572 (S.D. Cal. Mar. 29, 2019) .......... 16

*Upasani v. State Farm General Ins. Co.*,
227 Cal. App. 4th 509 (2014) .......... 13, 14, 17

*Verigy US, Inc. v. Mayder*,
2008 WL 4820755 (N.D. Cal. Nov. 4, 2008) .......... 16

*Williams v. Spazier*,
134 Cal. App. 340 (1933) .......... 10

**Statutes**

18 U.S.C. § 1962 .......... 1, 15, 17

Cal. Code § 1709 .......... 9

Cal. Code § 1710 .......... 9

**Rules**

Fed. R. Civ. P. 37 .......... 7

Fed. R. Civ. P. 56 .......... 6, 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Woodside Credit, LLC, is a consumer lender that funds purchases of classic and collector vehicles. Plaintiff alleges that one of its own executive officers, Defendant Alexander Ramos, who for years held the position of Assistant Vice President of Risk & Title Management, used his position to embezzle funds from Plaintiff that were intended for payments related to the transfer of vehicle ownership to Plaintiff's clients. Plaintiff further alleges that Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc. ("Elias Defendants"), participated in, aided and abetted, and conspired with Ramos in his fraud against, and breach of fiduciary duty toward, Plaintiff by arranging with Ramos to purchase repossessed vehicles from banks with which Plaintiff was partnered, which Ramos had responsibility for helping the banks sell. Plaintiff claims that Elias Defendants are liable for various causes of action because, at Ramos's direction, Elias Defendants purchased vehicles from Plaintiff's partner banks by making offers Ramos knew the banks would accept, then received partial reimbursements from Plaintiff that were issued at Ramos's direction. Based on these allegations, Plaintiff asserts claims against Elias Defendants for (1) fraud, (2) aiding and abetting fraud, (3) conspiracy, (5) aiding and abetting breach of fiduciary duty, (6) violation of 18 U.S.C. § 1962(c), and (7) violation of 18 U.S.C. § 1962(d).

Elias Defendants are entitled to summary judgment as to all claims asserted against them. Although the requirements for these claims vary in certain respects, all share the common requirement that Elias Defendants knew of Ramos's alleged scheme to defraud and breach his fiduciary duty toward Plaintiff, and most further require that Elias Defendants intended to cause or facilitate such fraud and/or breach against Plaintiff. Plaintiff scarcely even *alleges* that Elias Defendants had this requisite knowledge, such that Plaintiff's claims against them would likely be subject to judgment on the pleadings. But Plaintiff cannot show that Elias Defendants had such knowledge or intent, as necessary to create a genuine dispute of material fact

regarding same, because Plaintiff has no evidence to support its claims against Elias Defendants. Elias Defendants expressly deny any knowledge that Ramos was defrauding or breaching his fiduciary duty toward Plaintiff, or any intent to cause same, because Ramos affirmatively misled them about the vehicle transactions and concealed his embezzlement from them, and they relied on and believed his representations because he was an executive officer for Plaintiff. Elias Defendants were, at most, unwitting pawns in Ramos's alleged scheme to steal from Plaintiff, which as a matter of law is insufficient to prove liability.

Because the undisputed facts show that Elias Defendants had no knowledge or intent regarding Ramos's alleged fraud against or breach of fiduciary duty toward plaintiff, Elias Defendants cannot be liable and are entitled to summary judgment on all claims against them, or alternatively partial summary judgment or summary adjudication.

## II. STATEMENT OF FACTS

### A. Background and Plaintiff's Allegations[1]

Plaintiff provides consumer loans for automobile purchases, sells those loans to banks with which it is partnered, and handles repossession of vehicles when borrowers default. (Compl. ¶¶ 15-18.) Plaintiff also facilitates the resale of repossessed vehicles for the banks, including by soliciting offers from private buyers and securing the banks' approval thereof. (*Id.* ¶ 20.)

For years, Defendant Alexander Ramos managed Plaintiff's title department, and he was Plaintiff's Assistant Vice President for Title & Risk Management beginning in 2021. (*Id.* ¶¶ 21-22.) In those roles, Ramos was responsible for ensuring that sales tax, title fees, and licensing fees for the vehicles Plaintiff's customers purchased, which were included in loans Plaintiff issued to its customers, were paid to

---

[1] Section II.A summarizes allegations in Plaintiff's Complaint as context for the Court. By summarizing them here, Elias Defendants do not concede that the facts alleged are undisputed or true.

the appropriate agencies in the state where the purchased vehicles would be registered. (*Id.* ¶¶ 23-28.) Plaintiff alleges that, using his position and the access to these funds that it provided, Ramos stole money from Plaintiff by having Plaintiff issue checks to a title agent in Montana, who would then deposit those checks and issue checks back to Ramos, and that Ramos would then deposit the funds into an account that appeared to be associated with Plaintiff but was in fact Ramos's own private account. (*Id.* ¶¶ 31-34.)

**B. Elias Defendants' Purchases of Vehicles through Plaintiff and Partial Refunds Received from Plaintiff**

Defendant Fadi Elias is, and at all relevant times was, the founder, owner, and president of Classic Motor, Inc., a specialty vehicle dealer engaged in the business of buying and selling classic and other collector cars.[2] (Elias Defendants' Statement of Undisputed Facts ("SUF") 1-2.) Defendant Jennifer Pope is Fadi Elias's wife and assists with tasks related to the management of the business, and is an employee but not an officer. (SUF 3-5.)

Classic Motor, through Mr. Elias, worked with Plaintiff for many years prior to 2021, during which time Plaintiff was Classic Motor's preferred lender for vehicle transactions that required financing. (SUF 6.) In 2021, Mr. Elias spoke to Scott Steckel, who was then the loan representative for Plaintiff working with Classic Motor, and expressed interest in Classic Motor becoming eligible to purchase vehicles that were the subject of delinquent loans and were consequently repossessed and put up for sale by Plaintiff. (SUF 7-8.) Mr. Steckel advised that Defendant Ramos was the officer for Plaintiff in charge of sales and repossessed vehicles, and he introduced Mr. Elias to Ramos. (SUF 9-10.) When they were introduced to Ramos, Mr. Elias and Ms. Pope were informed and understood that Ramos was an executive officer for Plaintiff, specifically its Vice President for Title & Risk Management. (SUF 11.)

---

[2] The business is incorrectly denominated in this action as Classic Motor<u>s</u>, Inc.

Following this introduction, Ramos began to facilitate the sale of repossessed vehicles to Classic Motor, on behalf of Plaintiff or its partner banks. (SUF 12.) In doing so, Ramos would notify Mr. Elias, or Mr. Elias and Ms. Pope, that a particular vehicle Plaintiff had repossessed was being made available for purchase, and would provide them with details including the vehicle's make, model, year, and mileage, as well as a purchase price. (SUF 13.) Ramos stated and represented to them that these purchase prices were intentionally inflated as part of a business determination by Plaintiff and that, after Classic Motor or Mr. Elias on its behalf made that payment, Classic Motor or Mr. Elias on its behalf would be reimbursed for the amount by which Ramos, on Plaintiff's behalf, determined they had overpaid. (SUF 14-15.) Ramos stated and represented to Mr. Elias and Ms. Pope that the reason for Plaintiff's inflated requested purchase prices was sometimes to resolve Plaintiff's internal accounting issues and other times to attempt to improve Plaintiff's relationships with its partner banks by representing to the banks that the repossessed vehicles were being sold at favorable prices that were near to or greater than the balance owed on the delinquent loan. (SUF 16.) During all of these communications, Ramos continually and consistently represented that this arrangement for the purchase of vehicles, and for the subsequent partial reimbursement of overpayment for the vehicles, was known to and desired by Plaintiff, and that Ramos was coordinating the transactions in this manner in his capacity and as part of his responsibilities as an executive officer for Plaintiff. (SUF 17.)

For a given repossessed vehicle for which Ramos was arranging a sale to Classic Motor, after Ramos informed Mr. Elias (or Mr. Elias and Ms. Pope) of the purchase price and the expected reimbursement amount for the intended overpayment, and after Mr. Elias agreed to purchase the vehicle, Mr. Elias, or Ms. Pope at his direction, would issue payment from Classic Motor to an account designated by Ramos. (SUF 18.) The account name included the name "Woodside Credit, LLC," indicating to Elias Defendants that this was an official account owned and operated by

Plaintiff. (SUF 19.) Then, after the purchase, Elias Defendants would receive payment for the reimbursement amount from an entity identified as Agent for Montana Woodside Escrow Account, which Ramos represented was a contractor for Plaintiff. (SUF 20-21.) These reimbursement payments were typically made out to Classic Motor, though on a small number of occasions they were made out to Mr. Elias, and on one occasion made out to Ms. Pope; Mr. Elias and Ms. Pope did not and do not know why some payments were made out to them rather than to Classic Motor, and Ramos never explained this. (SUF 22-23.) Also after the purchase, Classic Motor would receive title for the vehicle and the vehicle, after arranging for any necessary transportation; Classic Motor would then attempt to resell the vehicle after making any necessary repairs or refurbishments. (SUF 24.)

On approximately two occasions, after Classic Motor purchased vehicles in the manner described above, Ramos contacted Mr. Elias and requested that Classic Motor re-issue payment for an already-purchased vehicle to assist Plaintiff in resolving an accounting issue, and advised Mr. Elias that Plaintiff would ensure that Classic Motor was then reimbursed for the full amount of the re-issued payment. (SUF 26.) Mr. Elias informed Ms. Pope of this. (*Id.*) Mr. Elias obliged, and Classic Motor re-issued the payments and subsequently received reimbursements. (SUF 27.)

At the time of all of these transactions, Mr. Elias and Ms. Pope accepted and believed Ramos's representations regarding the nature of the transactions, including that they were known by, on behalf of, and at the behest of Plaintiff; that the account to which Classic Motor directed the purchase payments was owned and operated by Plaintiff, and that these purchase payments were received by Plaintiff; and that the reimbursement payments sent following the vehicle purchases were known by, on behalf of, and at the behest of Plaintiff. (SUF 28.) At the time of the transactions, Mr. Elias and Ms. Pope did not know or believe that Ramos was acting independently from Plaintiff (as Plaintiff alleges he was) in spite of his executive position with Plaintiff, or that any aspect of the transactions had been arranged and facilitated by

Ramos without Plaintiff's knowledge and approval. (SUF 29.) During the period during which the vehicle transactions were occurring, no employee or officer for Plaintiff contacted Mr. Elias or Ms. Pope regarding the transactions to advise that any aspect thereof lacked Plaintiff's knowledge or approval. (SUF 30.)

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be entitled to summary judgment, a moving defendant that will not bear the burden of proof at trial may, but need not, support its motion with evidence proving the non-existence of an essential element of plaintiff's cause of action against it. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Alternatively, a moving defendant may carry its initial burden simply by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008).

The burden then shifts to the nonmoving party to "make a showing sufficient to establish that the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," and "evidence [that] is merely colorable, or is not significantly probative," is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party may not "simply show that there is some metaphysical doubt as to material facts," *Matsushita Elec. v. Zenith Radio*, 475 U.S. 574, 576 (1986), or rely on "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Rather, the opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem.*

*Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

Any evidence that is put forward is viewed in the light most favorable to the non-moving party, and all justifiable inferences are drawn in its favor. *Anderson*, 477 U.S. at 255. The Court may not make credibility determinations or weigh the evidence. *Id.* The non-moving party must show that its evidence could be presented in a form admissible at trial, *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003); Fed. R. Civ. P. 56(c)(2), which does not include evidence that was not timely disclosed or produced during discovery, *see Chisolm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032, 1045 (S.D. Cal. 2019), *aff'd*, 814 F. App'x 194, 196 (9th Cir. 2020); *Sanchez v. Sam's West, Inc.*, 2:21-cv-05122-SVW-JC, 2024 WL 4131841, at *10 (C.D. Cal. Feb. 9, 2024) (collecting cases); Fed. R. Civ. P. 37(c)(1).

## IV. <u>ARGUMENT</u>

### A. Plaintiff Cannot Show Elias Defendants Committed Fraud

Plaintiff alleges Elias Defendants are liable "for deceit, and specifically fraudulent concealment," contending they "concealed facts, which they were bound to disclose, … in violation of [Civil Code] Section 1710(3)." (Compl. ¶¶ 57-58.) These allegations are premised on Plaintiff's allegation that Elias Defendants were aware of, and knowingly participated in, Ramos's alleged scheme to defraud Plaintiff. (*See id.* ¶¶ 35-43.) Thus, although the Complaint does not directly state what facts Elias Defendants allegedly concealed, they necessarily must be facts showing the existence of Ramos's fraudulent scheme against Plaintiff.

At the outset, however, it bears noting that the Complaint's only allegations regarding Elias Defendants that suggest any tortious conduct by them toward Plaintiff[3]

---

[3] To the extent Plaintiff's Complaint suggests Elias Defendants committed fraud or other tortious conduct against Plaintiff's *partner banks* by acquiescing in Ramos's efforts to mislead the banks regarding prices paid for vehicles (*see* Compl. ¶ 37), Plaintiff has not purported to sue on those banks' behalf (*see generally* Compl.), and in any event could not establish standing to do so. *Allee v. Medrano*, 416 U.S. 802,

are that, after Elias Defendants properly *paid Plaintiff* (or its partner banks) for the vehicles they purchased, they then received "fraudulent[] 'refund'" payments that Ramos directed and, "upon information and belief," shared subsequent resale proceeds with Ramos. (*Id.* ¶¶ 38-40.) Under Federal Rule of Civil Procedure 9, allegations "based on information and belief" may suffice to allege fraud only if "the allegations are accompanied by a statement of facts upon which the belief is founded," *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493-94 (9th Cir. 2019), which Plaintiff has not included. Accordingly, the Court need not consider Plaintiff's speculative allegation that Elias Defendants shared resale proceeds, which in any event Plaintiff has no evidence support. Properly considered, then, the only basis of Elias Defendants' purported tortious conduct toward Plaintiff identified in the Complaint is that Elias Defendants received payments from Plaintiff, by and through Ramos and the Montana Agent, after duly paying Plaintiff or its partner banks for the vehicles Elias Defendants purchased.

Under California law, any fraud claim requires "knowledge of falsity (or scienter)" and "intent to defraud." *Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP*, 676 F.3d 1354, 1359 (Fed. Cir. 2012) (quoting *Robinson Helicopter Co., Inc., v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004)); *see Conrad v. Bank of America*, 45 Cal. App. 4th 133, 157 (1996) (explaining same and that a "defendant is not liable in fraud for unintended consequences"). To prove fraudulent concealment, a

---

828-29 (1974) ("[A] plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; … a person cannot predicate standing on injury which he does not share."); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (plaintiff "bears the burden of establishing [standing] elements," including that its own "injury in fact" is "fairly traceable to the challenged action of the defendant") (alterations adopted); *cf. also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (identifying requirements for associational standing). Nor has Plaintiff alleged that any claimed deception of the partner banks itself injured Plaintiff or made other allegations suggesting liability on any similar derivative basis.

plaintiff must show, "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact …; and (5) the plaintiff sustained damage as a result of the concealment or suppression of the material fact." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 40 (2024); *see Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 958 (N.D. Cal. 2009) (fraud requires "intent to induce reliance") (quoting *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93-94 (2001)). A "duty to disclose a material fact can arise" if "the material facts are known or accessible only to defendant, and defendant knows those facts are not known or reasonably discoverable by plaintiff"; "the defendant makes representations but fails to disclose other facts that materially qualify the facts disclosed or render the disclosure misleading"; or "defendant actively conceals discovery of material fact from plaintiff." *Rattagan*, 17 Cal. 5th at 40.

Plaintiff's claim fails because Elias Defendants had no knowledge that Ramos was, as Plaintiff alleges, acting on his own, without Plaintiff's knowledge and approval and contrary to Plaintiff's wishes and interests, when Ramos was in fact Plaintiff's executive officer and held himself out to be acting in that capacity throughout his dealings with Elias Defendants. *See Landmark Screens, LLC*, 676 F.3d at 1359. As such, Plaintiff cannot show Elias Defendants knew of any fraud or had any duty to disclose their arrangements for vehicle purchases that Ramos organized to Plaintiff (i.e., to other Woodside Credit officials *besides* Ramos who Plaintiff does not identify), because Ramos was himself Plaintiff's executive officer and affirmatively represented to Elias Defendants that Plaintiff was aware of and intended to pursue those purchase arrangements. Plaintiff has no evidence to the contrary. *See Williams v. Spazier*, 134 Cal. App. 340, 347-48 (1933) (under Civil Code sections 1709 and 1710, plaintiffs are "bound to introduce proof not merely of a falsehood, but of falsehood and fraud or deceit").

Accepting that Ramos was acting on Plaintiff's behalf as its officer, as Ramos held himself out to be, Elias Defendants justifiably understood that all material details regarding the vehicle transactions had been disclosed to Plaintiff because Elias Defendants disclosed them to Ramos as Plaintiff's officer, or they had been disclosed to Elias Defendants by Ramos in the first instance, and thus Elias Defendants knowingly concealed nothing from Plaintiff. *See Lewis v. Google LLC*, 461 F. Supp. 3d 938, 960 (N.D. Cal. 2020) (fraudulent concealment requires that "defendant actively conceals discovery from the plaintiff") (quoting *Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 245 Cal. App. 4th 821, 844 (2016)). For the same reason, Elias Defendants did not "know[]" that the pertinent "facts [we]re not known or reasonably discoverable by" Plaintiff, *Rattagan*, 17 Cal. 5th at 40, but in fact understood the opposite, and justifiably so.

As such, even if Plaintiff could show Elias Defendants somehow had a duty to disbelieve Ramos or verify whether other Woodside Credit officers were aware of and approved of any purchases and refunds—which Plaintiff cannot—Plaintiff nevertheless cannot also show that Elias Defendants "conceal[ed] or suppress[ed]" those facts or thereby "intended to defraud" Plaintiff. *Id.*; *see Shapiro v. Sutherland,* 64 Cal. App. 4th 1534, 1548 (1998) ("[F]or a defendant to be liable for fraud, he or she must intend that a particular representation (or concealment) be relied upon by a specific person or persons."); *Levi Strauss & Co. v. Espirit US Distrib. Ltd.*, 588 F. Supp. 2d 1076, 1084 (2008) (concluding plaintiff failed to prove fraudulent intent regarding trademark submission given lack of evidence that defendant officials "did not believe or had reason not to believe that the affidavits they signed were accurate," and granting summary judgment). Because knowledge and intent are necessary elements of Plaintiff's claim for fraud for which no genuine dispute of material fact exists, Elias Defendants are entitled to summary judgment on this claim.

### B. Plaintiff Cannot Show Elias Defendants Aided and Abetted Fraud

"Under California law, aiding and abetting liability extends to a person who aids and abets an intentional tort," including fraud, "where that person (1) had actual knowledge of the underlying wrongful conduct," "(2) gave substantial assistance or encouragement to another to so act," *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 884-85 (N.D. Cal. 2011) (citing *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005)), and "(3) reached a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act," *Hullinger v. Anand*, CV 15-07185 SJO (PJWx), 2016 WL 11750270, at *8 (C.D. Cal. July 8, 2016) (quoting *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 n.10 (2005)) (alteration adopted); *Upasani v. State Farm General Ins. Co.*, 227 Cal. App. 4th 509, 519 (2014) (aiding and abetting requires "intentional participation with knowledge of the object to be attained"). "[T]o satisfy the knowledge prong, the defendant must have 'actual knowledge of the specific primary wrong the defendant substantially assisted.'" *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (quoting *Casey*, 127 Cal. App. 4th at 1152). Even a suspicion that the intentional tortfeasor is engaged in misconduct, without more, is insufficient. *Id.* at 993 n.4; *see Casey*, 127 Cal. App. 4th at 1149 (at pleading stage, allegations that defendant banks "knew something fishy was going on with the accounts opened" by plaintiff's fiduciaries were insufficient to show actual knowledge of fraud). And "[a] defendant that does not know of the specific tortious act cannot be said to have acted with the intent to facilitate the tort," and thus cannot be liable for aiding and abetting. *Hough v. Carroll*, No. 2:24-cv-02886-WLH-SK, 2025 WL 1674425, at *8 (C.D. Cal. May 5, 2025); *see George v. eBay, Inc.*, 71 Cal. App. 5th 620, 642 (2021) (explaining same) (citing *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (1988)).

Plaintiff cannot show Elias Defendants aided and abetted Ramos's fraud for the same reasons it cannot show they committed fraud. The undisputed facts show that Elias Defendants lacked "actual knowledge of [Ramos's] underlying wrongful

conduct," *i.e.*, that Ramos was embezzling Plaintiff's funds as Plaintiff alleges.[4] *Shaterian*, 829 F. Supp. 2d at 884-85; *see Tu Le v. Prestige Community Credit Union*, 2025 WL 1554413, at *2 (9th Cir. June 2, 2025) (holding plaintiff's claim for aiding and abetting fraud could not survive summary judgment based on lack of triable issue of fact as to defendant's actual knowledge of fraudulent scheme). It is insufficient as a matter of law for Plaintiff to argue, as Elias Defendants anticipate Plaintiff may, that Elias Defendants should have perceived that Ramos's arrangement under which they overpaid for vehicles and then received partial refunds was "fishy," *Casey*, 127 Cal. App. 4th at 1149, and on that basis should have assumed that Ramos's representations that the vehicle transactions he arranged with them were not known to or approved by Plaintiff, notwithstanding the fact that Ramos was Plaintiff's executive officer. *In re First All. Mortg. Co.*, 471 F.3d at 993. An "accidental participant in [an alleged unlawful] enterprise" is not an aider and abettor. *Upasani*, 227 Cal. App. 4th at 519. And even if such a chain of conjecture could suffice to establish actual knowledge, it still would not establish that Elias Defendants "conscious[ly] deci[ded]" to proceed with the transactions in the manner Ramos directed "for the purpose of assisting" him in defrauding Plaintiff, *Hullinger*, 2016 WL 11750270, at *8; *Berg & Berg Enters., LLC*, 131 Cal. App. 4th at 823 n.10, and thus Plaintiff cannot show the requisite intent. *Hough*, 2025 WL 1674425, at *8; *George*, 71 Cal. App. 5th at 642. Summary judgment must therefore be granted on this claim.

### C. Plaintiff Cannot Show Elias Defendants Conspired to Commit Fraud

"Conspiracy is not a separate tort, but a form of vicarious liability by which one defendant can be held liable for the acts of another." *IIG Wireless, Inc. v. Yi*, 22 Cal.

---

[4] Although unnecessary to this motion, at a trial in this action Plaintiff likely could not show that even Ramos committed fraud, having produced no evidence thereof—or any other evidence—during discovery. (Declaration of Benjamin Levine in Support of Opposition to Motion to Modify Scheduling Order ¶ 7 [Dkt. 46-1]; *see Chisolm*, 383 F. Supp. 3d at 1045; *Sanchez*, 2024 WL 4131841, at *10.)

App. 5th 630, 652 (2018). "A conspiracy requires evidence 'that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it.'" *Id.* (quoting *Choate v. County of Orange*, 86 Cal. App. 4th 312, 333 (2000)). "It is not enough" that alleged coconspirators "knew of an intended wrongful act, they had to agree—expressly or tacitly—to achieve it. Unless there is such a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy." *Choate*, 86 Cal. App. 4th at 333 (internal quotation marks and citation omitted); *see Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) (a coconspirator "share[s] with the immediate tortfeasors a common plan or design in its perpetration"); *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) ("The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose."). A plaintiff alleging conspiracy thus has "a weighty burden to prove it," and "'[b]are' allegations and 'rank' conjecture do not suffice for a civil conspiracy." *Choate*, 86 Cal. App. 4th at 333.

As with the claims addressed above, Plaintiff cannot meet its "weighty burden" to show that Elias Defendants conspired to commit fraud, because Plaintiff cannot show they knew that fraud would be, or was being, committed. Elias Defendants had no "mutual understanding" or "common plan or design" with Ramos to engage in any fraudulent scheme, *IIG Wireless, Inc.*, 22 Cal. App. 5th at 652; *Applied Equipment Corp.*, 7 Cal. 4th at 510-11, because Ramos, as Plaintiff's executive officer, affirmatively represented to them that the vehicle transactions he arranged were proper, and were done with Plaintiff's knowledge and at its behest. *See United States v. Hall Family Tr. Dated June 8, 2001*, 2019 WL 1429572, at *3 (S.D. Cal. Mar. 29, 2019) ("Cobb simply being involved with the sale is not enough to show she acted in concert with the other cross-defendants to further an unlawful plan."); *Choate*, 86 Cal. App. 4th at 334 (granting summary judgment where plaintiff put forward "no

evidence of a meeting of the minds among the alleged conspirators"); *IIG Wireless, Inc.*, 22 Cal. App. 5th at 652-53 (granting nonsuit where plaintiff "fail[ed] to present any evidence" that alleged coconspirator "had knowledge of and agreed to both the objective and the course of action that resulted in the injury," which required proving that alleged coconspirator formed company with tortfeasor "with knowledge of both the conversion and fraud" that tortfeasor "purportedly engaged in"); *Verigy US, Inc. v. Mayder*, 2008 WL 4820755, at *7 (N.D. Cal. Nov. 4, 2008) (in action alleging conspiracy to misappropriate trade secrets, plaintiff had to "show (1) that [coconspirator] knew that [tortfeasor] planned to misappropriate the trade secret; or (2) that he knew [tortfeasor] had misappropriated [plaintiff]'s trade secrets and agreed with him to use that wrongfully acquired information"). Elias Defendants are therefore entitled to summary judgment on this claim.

**D. Plaintiff Cannot Show Elias Defendants Aided and Abetted a Breach of Fiduciary Duty**

Plaintiff's claim for aiding and abetting breach of fiduciary duty is analyzed in essentially the same manner as its claim for aiding and abetting fraud, except by virtue of differences in the underlying torts, which for purposes of this motion are minimally significant. To establish this claim, a plaintiff must show "(1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014). As with any tort for aiding and abetting, a plaintiff must prove that the defendant "kn[e]w[] the primary wrongdoer's conduct constitute[d] a breach of duty, and it substantially assist[ed] that breach of duty." *Gonzalez v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1207 (C.D. Cal. 2006) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003)); *see Shaterian*, 829 F. Supp. 2d at 884-85. And, as noted above, it must also prove that the defendant "reached a

conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Hullinger*, 2016 WL 11750270, at *8; *see Upasani*, 227 Cal. App. 4th at 519 (plaintiff must prove "intentional participation with knowledge of the object to be attained").

Plaintiff cannot prove that Elias Defendants knew Ramos was breaching any fiduciary duty to Plaintiff when, as Plaintiff cannot dispute, Ramos represented to Elias Defendants that the vehicle transactions he arranged, including the manner in which he arranged for them to occur, were at Plaintiff's behest and arranged in Ramos's capacity as Plaintiff's executive officer. Given these undisputed facts, Elias Defendants had no "actual knowledge" that Ramos breached any fiduciary duty to Plaintiff, and thus could not have "substantial[ly] … encourage[d]" such breach or "conscious[ly] deci[ded] to participate" therein "for the purpose of assisting" Ramos in it. *Nasrawi*, 231 Cal. App. 4th at 343; *Hullinger*, 2016 WL 11750270, at *8. Although Plaintiff may argue that Elias Defendants should have known that Ramos was breaching a fiduciary duty toward Plaintiff, notwithstanding Ramos's affirmative misrepresentations regarding his alleged scheme to embezzle funds from Plaintiff, this is legally insufficient to show liability even if accurate. *Gonzalez*, 532 F. Supp. 2d at 1207 (citing *Neilson*, 290 F. Supp. 2d at 1127); *Hammett v. Sherman*, 2020 WL 1332591, at *8-9 (S.D. Cal. Mar. 23, 2020). Summary judgment must therefore be granted on this claim.

**E. Plaintiff Cannot Show Elias Defendants Violated 18 U.S.C. § 1962(c)**

Subsection (c) of 18 U.S.C. § 1962, the civil RICO statute, prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To establish a claim under subsection (c), a plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to

the plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). To qualify as an enterprise, an association or group must share "a common purpose." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007). In particular, the plaintiff must prove "the defendants had some knowledge of the nature of the enterprise [] to avoid an unjust association of the defendant[s]" with the wrongdoing of others, which requires showing defendants were "aware of the 'essential nature and scope' of that enterprise and intended to participate in it." *Id.* (quoting *United States v. Brandao*, 539 F.3d 44, 42 (1st Cir. 2008)).

Plaintiff cannot prove Elias Defendants violated subsection (c) because, as with all other claims asserted against them, Plaintiff can show no genuine dispute that Elias Defendants lacked "a common purpose" with Ramos when Ramos concealed from them his alleged fraudulent scheme against Plaintiff, and Elias Defendants simply intended to purchase vehicles through Woodside Credit as part of their business. *Id.*; *see Gilbert v. MoneyMutual, LLC*, 2018 WL 8186605, at *17 (N.D. Cal. Oct. 30, 2018) (granting summary judgment, finding "Plaintiffs have failed to establish disputed issues of fact about whether the various members of the alleged associated-in-fact enterprise were pursuing a 'shared purpose' rather than 'pursing their individual economic interests'") (quoting *Gomez v. Guthy-Renker, LLC* No. EDCV 14-01425 JGB (KKx) 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015)); *cf. In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, No. 11-ML-02265-MRP (MANx), 2012 WL 10731957, at *8-9 (C.D. Cal. June 29, 2012) (finding plaintiffs failed to allege association-in-fact enterprise under Ohio's corrupt practices act where, on the face of the complaint, "it appear[ed] that each of the non-parties identified ... entered into a business relationship for their own commercial reasons").

Nor can Plaintiff dispute that Elias Defendants lacked "knowledge of the nature of [Ramos's] enterprise" when they were unaware that any aspect of their business relationship with him, which they justifiably understood to be coextensive

with their business relationship with Plaintiff, was in fact unknown to or unintended by Plaintiff. *Christensen*, 828 F.3d at 780; *see Krouth v. Brown*, 2006 WL 3758256, at *7-8 (D. Or. Dec. 18, 2006) (granting summary judgment based on absence of genuine dispute where, "[e]ven assuming Brown fraudulently solicited loans, … the record d[id] not reflect anyone other than Brown would have known the solicitations were fraudulent," such that "Brown appear[ed] to be the only party who may have committed fraud, and, therefore, … the only party who could have participated in the alleged racketeering activity"). Under these undisputed circumstances, allowing Plaintiff to maintain its claim against Elias Defendants would work "an unjust association" between them and Ramos's alleged wrongdoing. *Id.* Thus, here as with the other claims, Elias Defendants are entitled to summary judgment.

**F. Plaintiff Cannot Show Elias Defendants Violated 18 U.S.C. § 1962(d)**

Subsection (d) of 18 U.S.C. § 1962 prohibits "any person [from] conspir[ing] to violate any of the provisions of subsection (a), (b), or (c) of this section."[5] Accordingly, and as with the other conspiracy claim addressed above, a defendant under subsection (d) must have been "aware of the essential nature and scope of the enterprise and intended to participate in it." *Christensen*, 828 F.3d at 780 (quoting *United States v. Fernandez*, 388 F.3d 1199, 1221 (9th Cir. 2004)); *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). This requires the plaintiff to prove that the defendant "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *Fernandez*, 388 F.3d at 1229-30.

Plaintiff cannot prove that Elias Defendants conspired to violate subsection (c) because it is undisputed that they were unaware of the "essential nature and scope" of Ramos's enterprise and thus could not "knowingly agree to facilitate a [racketeering] scheme" with Ramos. *See Morning Star Packing Co. v. SK Foods, L.P.*, 2018 WL 3740561, at *8 (E.D. Cal. Aug. 7, 2018) (denying reconsideration of grant of

---

[5] Plaintiff's Complaint alleges no violation of subsections (a) or (b).

summary judgment to defendants based on absence of dispute of material fact regarding whether defendants were aware of scheme to commit bribery). That Elias Defendants may have been misled by Ramos's affirmative misrepresentations into believing that Plaintiff intended for them to pay inflated prices for vehicles of which Plaintiff sought to secure the sale, then pay them partial reimbursements to offset that inflated price, does not and cannot show that Elias Defendants intended to defraud Plaintiff, participate in racketeering, or anything of the sort. Where the fundamental nature of Ramos's alleged scheme was deliberately concealed from Elias Defendants by Ramos, as was undisputedly the case here, Elias Defendants cannot have been knowing parties to it and are entitled to summary judgment.

## V. CONCLUSION

For the foregoing reasons, each claim against Elias Defendants fails as a matter of law. The Court should therefore grant summary judgment or, barring summary judgment, partial summary judgment or summary adjudication.

DATED: September 3, 2026 LAW OFFICES OF DALE K. GALIPO

By *<u>/s/ Dale K. Galipo</u>*
Dale K. Galipo
*Attorney for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

**CERTIFICATION OF COMPLIANCE WITH WORD LIMIT (L.R. 11-6.1)**

The undersigned, counsel of record for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc., certifies that this brief contains **6,092** words, which complies with the word limit of L.R. 11-6.1.

DATED: September 3, 2026

LAW OFFICES OF DALE K. GALIPO

By *\/s/ Dale K. Galipo*
Dale K. Galipo
*Attorney for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*