**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333 / Facsimile: (818) 347-4118
*Attorney for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WOODSIDE CREDIT, LLC, a California limited liability company,

Plaintiff,

v.

ALEXANDER G. RAMOS, an individual; FADI ELIAS, an individual; JENNIFER POPE, an individual; CLASSIC MOTORS, INC., an Arizona business entity; and DOES 1 through 20, inclusive,

Defendants.

Case No. 8:25-cv-02146-FWS-JDE

*Honorable Fred W. Slaughter*

**DEFENDANTS FADI ELIAS, JENNIFER POPE, AND CLASSIC MOTORS, INC.'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

[*Filed concurrently with Elias Defendants' Motion for Summary Judgment or Adjudication; Declaration of Fadi Elias; Declaration of Jennifer Pope; and (Proposed) Order*]

Date: October 15, 2026
Time: 10:00 a.m.
Courtroom: 10A

Action filed: September 22, 2025

**TO THIS HONORABLE COURT AND PLAINTIFF AND ITS COUNSEL OF RECORD:**

Pursuant to Civil Local Rule 56-1 and the Court's Standing Order, Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc. submit their Statement of Undisputed Facts in support of their Motion for Summary Judgment or Adjudication.

| | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 1. | Defendant Fadi Elias is, and at all relevant times was, the founder, owner, and president of Classic Motor, Inc. | Declaration of Fadi Elias ("Elias Decl.") ¶ 1.<br><br>Declaration of Jennifer Pope ("Pope Decl.") ¶ 1. |
| 2. | Classic Motor, Inc. is a specialty vehicle dealer engaged in the business of buying and selling classic and other collector cars. | Elias Decl. ¶ 2.<br><br>Pope Decl. ¶ 2. |
| 3. | Defendant Jennifer Pope is Fadi Elias's wife. | Elias Decl. ¶ 1.<br><br>Pope Decl. ¶ 1. |
| 4. | Jennifer Pope assists with tasks related to the management of Classic Motor, Inc. | Elias Decl. ¶ 3.<br><br>Pope Decl. ¶ 3. |
| 5. | Jennifer Pope is an employee but not an officer of Classic Motor, Inc. | Elias Decl. ¶ 3.<br><br>Pope Decl. ¶ 3. |
| 6. | Classic Motor, through Mr. Elias, worked with Plaintiff for many years prior to 2021, during which time Plaintiff was Classic Motor's preferred lender for vehicle transactions that required financing. | Elias Decl. ¶ 4. |
| 7. | In 2021, Mr. Elias spoke to Scott Steckel, who was then the loan representative for Plaintiff working with Classic Motor. | Elias Decl. ¶ 4. |
| 8. | Mr. Elias expressed interest to Scott | Elias Decl. ¶ 4. |

| | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| | Steckel in Classic Motor becoming eligible to purchase vehicles that were the subject of delinquent loans and were consequently repossessed and put up for sale by Plaintiff. | |
| 9. | Mr. Steckel advised Mr. Elias that Alexander Ramos was the officer for Plaintiff in charge of sales and repossessed vehicles. | Elias Decl. ¶ 5. |
| 10. | Mr. Steckel introduced Mr. Elias to Ramos. | Elias Decl. ¶ 5. |
| 11. | Mr. Elias and Ms. Pope were informed and understood that Ramos was an executive officer for Plaintiff, specifically its Vice President for Title and Risk Management. | Elias Decl. ¶ 5.<br><br>Pope Decl. ¶ 4. |
| 12. | Following Mr. Elias's introduction to Ramos, Ramos began to facilitate the sale of repossessed vehicles to Classic Motor, on behalf of Plaintiff or its partner banks. | Elias Decl. ¶ 6. |
| 13. | In facilitating the vehicle sales, Ramos would notify Mr. Elias, or Mr. Elias and Ms. Pope, that a particular vehicle Plaintiff had repossessed was being made available for purchase, and would provide them with details including the vehicle's make, model, year, and mileage, as well as a purchase price. | Elias Decl. ¶ 7.<br><br>Pope Decl. ¶ 6. |
| 14. | Ramos stated and represented that these purchase prices were intentionally inflated as part of a business determination by Plaintiff. | Elias Decl. ¶ 7.<br><br>Pope Decl. ¶ 6. |
| 15. | Ramos stated and represented that that, after Classic Motor or Mr. Elias on its behalf made the requested payment, Classic Motor or Mr. Elias on its behalf would be reimbursed for the amount by which Ramos, on Plaintiff's behalf, | Elias Decl. ¶ 7.<br><br>Pope Decl. ¶ 6. |

| | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| | determined they had overpaid. | |
| 16. | Ramos stated and represented to Mr. Elias and Ms. Pope that the reason for Plaintiff's inflated requested purchase prices was sometimes to resolve Plaintiff's internal accounting issues and other times to attempt to improve Plaintiff's relationships with its partner banks by representing to the banks that the repossessed vehicles were being sold at favorable prices that were near to or greater than the balance owed on the delinquent loan. | Elias Decl. ¶ 7.<br><br>Pope Decl. ¶ 6. |
| 17. | During all of Ramos's communications with Mr. Elias, or with Mr. Elias and Ms. Pope, Ramos continually and consistently represented that the arrangement for the purchase of vehicles that he proposed, and for the subsequent partial reimbursement of overpayment for the vehicles to Classic Motor, was known to and desired by Plaintiff, and that Ramos was coordinating the transactions in this manner in his capacity and as part of his responsibilities as an executive officer for Plaintiff. | Elias Decl. ¶ 7.<br><br>Pope Decl. ¶ 6. |
| 18. | For a given repossessed vehicle for which Ramos was arranging a sale to Classic Motor, which Ramos represented was on Plaintiff's behalf, after Ramos informed Mr. Elias (or Mr. Elias and Ms. Pope) of the purchase price and the expected reimbursement amount for the intended overpayment, and after Mr. Elias agreed to purchase the vehicle, Mr. Elias, or Ms. Pope at his direction, would issue payment from Classic Motor to an account designated | Elias Decl. ¶ 8.<br><br>Pope Decl. ¶ 7. |

| | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| | by Ramos. | |
| 19. | The name of the account Ramos designated included the name "Woodside Credit, LLC," indicating that this was an official account owned and operated by Plaintiff. | Elias Decl. ¶ 8.<br><br>Pope Decl. ¶ 7. |
| 20. | After each purchase, Elias Defendants would receive payment for the reimbursement amount from an entity identified as Agent for Montana Woodside Escrow Account. | Elias Decl. ¶ 8.<br><br>Pope Decl. ¶ 7. |
| 21. | Ramos represented to Elias Defendants that Agent for Montana Woodside Escrow Account was a contractor for Plaintiff. | Elias Decl. ¶ 8.<br><br>Pope Decl. ¶ 7. |
| 22. | The reimbursement payments were typically made out to Classic Motor, though on a small number of occasions they were made out to Mr. Elias, and on one occasion made out to Ms. Pope. | Elias Decl. ¶ 8.<br><br>Pope Decl. ¶ 7. |
| 23. | Mr. Elias and Ms. Pope did not and do not know why some payments were made out to them rather than to Classic Motor, and Ramos never explained this. | Elias Decl. ¶ 8.<br><br>Pope Decl. ¶ 7. |
| 24. | After the purchase, Classic Motor would receive title for the vehicle and the vehicle, after arranging for any necessary transportation. | Elias Decl. ¶ 8.<br><br>Pope Decl. ¶ 7. |
| 25. | Classic Motor would then attempt to resell the vehicle after making any necessary repairs or refurbishments. | Elias Decl. ¶ 8.<br><br>Pope Decl. ¶ 7. |
| 26. | On approximately two occasions, after Classic Motor purchased vehicles through Plaintiff as arranged by Ramos, Ramos contacted Mr. Elias and requested that Classic Motor re-issue payment for an already-purchased vehicle to assist Plaintiff in resolving an accounting issue, and advised Mr. Elias | Elias Decl. ¶ 9.<br><br>Pope Decl. ¶ 8. |

| | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| | that Plaintiff would ensure that Classic Motor was then reimbursed for the full amount of the re-issued payment, of which Mr. Elias informed Ms. Pope. | |
| 27. | Mr. Elias obliged, and Classic Motor re-issued the payments and subsequently received reimbursements. | Elias Decl. ¶ 9.<br><br>Pope Decl. ¶ 8. |
| 28. | At the time of the transactions, Mr. Elias and Ms. Pope accepted and believed Ramos's representations regarding the nature of the transactions, including that they were known by, on behalf of, and at the behest of Plaintiff; that the account to which Classic Motor directed the purchase payments was owned and operated by Plaintiff, and that these purchase payments were received by Plaintiff; and that the reimbursement payments sent following the vehicle purchases were known by, on behalf of, and at the behest of Plaintiff. | Elias Decl. ¶ 10.<br><br>Pope Decl. ¶ 9. |
| 29. | At the time of the transactions, Mr. Elias and Ms. Pope did not know or believe that Ramos was acting independently from Plaintiff in spite of his executive position with Plaintiff, or that any aspect of the transactions had been arranged and facilitated by Ramos without Plaintiff's knowledge and approval. | Elias Decl. ¶ 10.<br><br>Pope Decl. ¶ 9. |
| | / / /<br><br>/ / /<br><br>/ / /<br><br>/ / / | |

| | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 30. | During the period during which the vehicle transactions were occurring, no employee or officer for Plaintiff contacted Mr. Elias or Ms. Pope regarding the transactions to advise that any aspect thereof lacked Plaintiff's knowledge or approval. | Elias Decl. ¶ 11.<br><br>Pope Decl. ¶ 10. |

DATED: September 3, 2026

LAW OFFICES OF DALE K. GALIPO

By */s/ Dale K. Galipo*
Dale K. Galipo
*Attorney for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*