**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118
*Attorney for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WOODSIDE CREDIT, LLC, a California limited liability company,

Plaintiff,

v.

ALEXANDER G. RAMOS, an individual; FADI ELIAS, an individual; JENNIFER POPE, an individual; CLASSIC MOTORS, INC., an Arizona business entity; and DOES 1 through 20, inclusive,

Defendants.

Case No. 8:25-cv-02146-FWS-JDE

*Honorable Fred W. Slaughter*

**DECLARATION OF JENNIFER POPE IN SUPPORT OF DEFENDANTS FADI ELIAS, JENNIFER POPE, AND CLASSIC MOTORS, INC.'S MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION**

**DECLARATION OF JENNIFER POPE**

I, Jennifer Pope, declare as follows:

1. I am the wife of Fadi Elias, who is the founder, owner, and president of Classic Motor Inc. ("Classic Motor"). I have personal knowledge of the facts set forth herein and, if called upon as a witness, I could and would competently testify under oath thereto.

2. Classic Motor is a specialty vehicle dealer engaged in the business of buying and selling classic and other collector cars. Classic Motor was originally incorporated in California and is now based and incorporated in Scottsdale, Arizona.

3. I from time to time assist Fadi Elias with various tasks related to the management of Classic Motor, and am an employee but not an officer of Classic Motor.

4. I was introduced to Alexander Ramos ("Ramos") in approximately 2021. When I was introduced to Ramos and thereafter, I was informed and understood that Ramos was employed by Woodside Credit as a vice president for title and risk management, an executive position.

5. When I met Ramos, Ramos had begun to facilitate the sale of repossessed vehicles by Woodside Credit to Classic Motor, on Woodside Credit's behalf or on behalf of the partner banks that owned the delinquent loans of which the repossessed vehicles were the subject.

6. In arranging the vehicle sales, Ramos would notify Fadi Elias, or would notify both Fadi Elias and me, that a particular vehicle that was the subject of a delinquent loan had been repossessed by Woodside Credit and was being made available for purchase; on occasions when Ramos notified Fadi Elias of this, Fadi Elias notified me. Ramos would provide Fadi Elias, or Fadi Elias and me, details regarding the vehicle including the make, model, year, and mileage, and would provide a purchase price; on occasions when Ramos notified Fadi Elias of this, Fadi Elias notified me. Ramos stated and represented to Fadi Elias and me that the

purchase price being requested was intentionally inflated as part of a business determination made by Woodside Credit and that, after Classic Motor made payment to purchase the vehicle, Classic Motor would be reimbursed for the amount by which Ramos, on behalf of Woodside Credit, had determined Classic Motor overpaid. Ramos stated and represented to Fadi Elias and me that the reason for Woodside Credit's inflated requested purchase prices was sometimes to resolve internal accounting issues at Woodside Credit and other times to attempt to improve Woodside Credit's relationships with its partner banks by representing to the banks that the repossessed vehicles were being sold at favorable prices that were near to or greater than the balance owed on the delinquent loan. During all of these communications with me, and with Fadi Elias of which Fadi Elias informed me, Ramos continually and consistently represented that this arrangement for the purchase of vehicles, and for the subsequent partial reimbursement of overpayment for the vehicles to Classic Motor, was known to and desired by Woodside Credit, and that Ramos was coordinating the transactions in this manner in his capacity and as part of his responsibilities as an executive officer for Woodside Credit.

7. For a given repossessed vehicle for which Ramos was arranging a sale to Classic Motor, which Ramos represented was on Woodside Credit's behalf, after Ramos informed Fadi Elias of the purchase price and the expected reimbursement amount for overpayment, and after Fadi Elias agreed to purchase the vehicle, Fadi Elias, or I at Fadi Elias's direction, would issue payment from Classic Motor to an account designated by Ramos. The account name included the name "Woodside Credit, LLC," indicating that this was an official account owned and operated by Woodside Credit. Then, after the purchase, Classic Motor would receive payment for the reimbursement amount from an entity identified as Agent for Montana Woodside Escrow Account, which Ramos represented was a contractor for Woodside Credit. These reimbursement payments were typically made out to Classic Motor, though on a small number of occasions they were made out to Fadi

Elias, and on one occasion made out to me; I did not and do not know why some payments were made out to Fadi Elias or to me rather than to Classic Motor, and Ramos never explained this. Also after the purchase, Classic Motor would receive title for the vehicle and the vehicle, after arranging for any necessary transportation, before attempting to resell the vehicle, after making any necessary repairs or refurbishments.

8. On approximately two occasions, after Classic Motor purchased vehicles in the manner described above, Ramos contacted Fadi Elias and requested that Classic Motor re-issue payment for an already-purchased vehicle to assist Woodside Credit in resolving an accounting issue, and advised Fadi Elias that Woodside Credit would ensure that Classic Motor was then reimbursed for the full amount of the re-issued payment. Fadi Elias informed me of this. Fadi Elias obliged with Ramos's request, and Classic Motor re-issued the payments and subsequently received reimbursements.

9. At the time of all of the above-described transactions, I accepted and believed Ramos's representations regarding the nature of the transactions, including that they were known by, on behalf of, and at the behest of Woodside Credit; that the account to which Classic Motor directed the purchase payments was owned and operated by Woodside Credit, and that these purchase payments were received by Woodside Credit; and that the reimbursement payments sent following the vehicle purchases were known by, on behalf of, and at the behest of Woodside Credit. At the time of the transactions, I did not know or believe that Ramos was acting independently from Woodside Credit in spite of his executive position with Woodside Credit, or that any aspect of the transactions had been arranged and facilitated by Ramos without Woodside Credit's knowledge and approval.

10. During the period during which the aforementioned vehicle transactions were occurring, no Woodside Credit employee or officer contacted me

regarding the transactions to advise that any aspect thereof lacked Woodside Credit's knowledge or approval.

I declare under penalty of perjury of the laws of the United States of America, that the foregoing is true and correct. Executed on September 2, 2026, at Scottsdale, Arizona.

DocuSigned by:
Jennifer Pope
29FD7F1DFA9C41F...

Jennifer Pope