Geoffrey Neri (SBN 258802)
Geoff@bnsklaw.com
BROWN NERI SMITH & KHAN LLP
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

Attorneys for Plaintiff
WOODSIDE CREDIT, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

WOODSIDE CREDIT, LLC, a California limited liability company,

Plaintiff,

vs.

ALEXANDER G. RAMOS, an individual; FADI ELIAS, an individual; JENNIFER POPE, an individual; CLASSIC MOTORS, INC., an Arizona business entity of unknown organization; and DOES 1 through 20, inclusive,

Defendants.

Case No. 8:25-cv-02146-FWS-JDE

**PLAINTIFF WOODSIDE CREDIT, LLC'S REPLY IN SUPPORT OF MOTION TO MODIFY THE SCHEDULING ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 16(b)(4)**

[Filed concurrently with Supplemental Declaration of Geoffrey A. Neri and exhibits thereto]

Date: September 24, 2026
Time: 10:00 a.m.
Crtrm.: 10A

Complaint Filed: Sept. 22, 2025
Trial Date: February 2, 2027

## TABLE OF CONTENTS


I. INTRODUCTION .......... 5

II. ARGUMENT .......... 6

A. The Opposition's Statement of the Governing Standard Is Incomplete .......... 6

B. Woodside Has Been Diligent .......... 8

1. Serving Nine Sets of Discovery Requests Fifteen Weeks Before the Cut-Off Was Diligent .......... 8

2. Relying on Thirty-Two Written Commitments Was Diligent; a Motion to Compel Was Neither Required Nor Realistically Available .......... 9

C. The "Foreseeability" Argument Confuses the Need for Discovery With the Impediment to It .......... 13

D. Woodside Moved Within Days of the Elias Defendants' First Refusal .......... 14

E. The Ramos Default Proceedings Are Irrelevant .......... 15

F. Woodside's Own Non-Production, Now Corrected and Cured, Does Not Defeat Good Cause .......... 15

G. The Trial Is Not Imminent and the Elias Defendants Will Not Be Prejudiced If the Motion Is Granted .......... 19

H. The Rule 56(d) "Prematurity" Argument Should Be Rejected .......... 20

III. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

Cases

*Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1207 (C.D. Cal. 2002).................................. 21

*Boyer v. Novo Nordisk Inc.*, No. 2:24-cv-01866-DJC-AC, 2025 WL 2808149 (E.D. Cal. Oct. 1, 2025)........................................ 10, 14, 19

*Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes*, 323 F.3d 767 (9th Cir. 2003)........................................ 20, 21, 22

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060 (9th Cir. 2017)............. 7, 14, 19, 23

*Daniels v. Specialized Loan Servicing, LLC*, No. 2:22-cv-06776-MCS-PD, 2025 WL 4740015 (C.D. Cal. Oct. 29, 2025) ........................................ 13

*Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649 (N.D. Cal. 2025) ...................... 12

*FeedMe Trading LLC v. My Fish Stop LLC*, No. CV 23-08857-MWF (JCx), 2024 WL 5257016 (C.D. Cal. Oct. 10, 2024) ........................................ passim

*Greek v. Target Corp.*, No. 2:23-cv-00608-MCS-PVC, 2023 WL 8351537 (C.D. Cal. Sept. 21, 2023) ........................................ 10

*Guo v. Robl*, No. 2:22-cv-05576-FWS-MAA, 2024 WL 4003913 (C.D. Cal. May 24, 2024)........................................ 10

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605 (E.D. Cal. 1999)........................................ 7, 13

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992)................................ 8

*Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004) ........................................ 20

*M2 Software, Inc. v. M2 Commc'ns, L.L.C.*, 217 F.R.D. 499 (C.D. Cal. 2003).......... passim

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667 (C.D. Cal. 2003)........................................ 7

*McMullen v. Mercedes Benz USA, LLC*, No. CV 23-712-GW-MARx, 2024 WL 439439 (C.D. Cal. Jan. 2, 2024)........................................ 13, 19

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) ........................................ 20

*Milky Way Int'l Trading Corp. v. Ningbo Sunny Int'l Co.*, No. 2:23-cv-08259-JLS-JC, 2024 WL 5424119 (C.D. Cal. Dec. 20, 2024) .......... 20

*Nidds v. Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir. 1996) .......... 21

*Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188 (9th Cir. 1980) .......... 21

*Reyes v. Wilson Mem'l Hosp.*, 102 F. Supp. 2d 798 (S.D. Ohio 1998) .......... 18

*Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 2:24-cv-04546-SB-AGR, 2025 WL 2427837 (C.D. Cal. July 11, 2025) .......... 8, 9

*Stevens v. CoreLogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) .......... 22

*Stitt v. Williams*, 919 F.2d 516 (9th Cir. 1990) .......... 21

*United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) .......... 21

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472 (9th Cir. 1986) .......... 21

*Viteri-Butler v. Univ. of Cal. Hastings Coll. of the Law*, 650 F. App'x 386 (9th Cir. 2016) .......... 10, 21

*White v. Baca*, No. CV 13-3401-JFW (SSx), 2014 WL 12700946 (C.D. Cal. Feb. 6, 2014) .......... 21

*Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052 (9th Cir. 2005) .......... 7

Rules and Orders

Fed. R. Civ. P. 6(a)(1)(C) .......... 16

Fed. R. Civ. P. 16(b)(4) .......... 7, 17, 23

Fed. R. Civ. P. 26(d)(3)(B) .......... 16

Fed. R. Civ. P. 26(g)(1) .......... 12

Fed. R. Civ. P. 34(b)(2)(B) .......... 9

Fed. R. Civ. P. 56(d) .......... 6, 20, 21, 22

C.D. Cal. L.R. 7-3, 37-1, 37-2.2, 37-3 .......... 12, 14

Civil Standing Order of Hon. Fred W. Slaughter .......... passim

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Opposition does not dispute the facts that establish good cause. Defendants Fadi Elias, Jennifer Pope and Classic Motors, Inc. (the "Elias Defendants") concede that their May 15, 2026 responses contained "representations that Elias Defendants nevertheless then intended to produce documents following issuance of a protective order" (Levine Decl. ¶ 5). They concede that the protective order was entered three days later (Dkt. 35); that they have produced no document and served no verification in the four months since (Opp. at 3, 9); and that the first time they took the position that the cut-off barred Plaintiff Woodside Credit LLC ("Woodside")'s requests was August 11, 2026 — a month after the cut-off they now invoke. (Levine Decl. ¶ 9.) And on September 3, the day the Elias Defendants filed the Opposition, they filed the summary judgment motion the Motion anticipated, seeking judgment on every claim on the strength of their own declarations and the assertion that "Plaintiff has no evidence to the contrary." (Dkt. 47 at 1–2, 9.) That motion cites Woodside's non-production as proof that Woodside cannot prove its case. (*Id.* at 12 n.4.)

Rather than defend that sequence, the Opposition changes the subject. Its centerpiece is that Woodside, too, stated in its June 15 responses that it would produce documents subject to the protective order and had not done so, and that the Motion said otherwise. The second point is correct, and Woodside corrects it without qualification: the statement in the Motion (at 10) and in paragraph 11 of counsel's declaration that Woodside "produced documents on June 15, 2026" was wrong. Woodside served written responses that day; it did not produce documents with them, and the interrogatory verification counsel's cover email said would "follow shortly" was not served. The error was counsel's, it was inadvertent, and counsel regrets it. (Supplemental Declaration of Geoffrey A. Neri ("Supp. Neri Decl.") ¶¶ 2–3.) Woodside has now produced its responsive documents — 297 pages, Bates-numbered WC000001 through WC000297 — and it asks that the modified schedule bind both sides equally. (*Id.* ¶¶ 4–6.)

The first point, however, does not defeat good cause. The Federal Rules recognize no mutual-default defense to discovery obligations; the Elias Defendants themselves never wrote, conferred, or sought relief about Woodside's production before this Motion was filed (Levine Decl. ¶¶ 8, 11); and the two sides' positions are not symmetrical in the respects that matter. The Elias Defendants set the protective-order condition and Woodside cleared it; their obligation to produce matured a month before Woodside's responses were served; Woodside bears the burden of proof on claims whose proof sits in their files; and they, not Woodside, are the parties asking for judgment on the record their non-production created. The Court should treat mutual non-production the way the Rules do — by ordering both sides to produce — rather than by rewarding the promisor with summary judgment.

The Opposition's remaining arguments fare no better. Its diligence cases involve parties who knew before the cut-off that their opponent would not produce and did nothing; here there was no refusal to move against until after the cut-off. Its statement of the standard is incomplete and omits this Court's Standing Order, which directs that the good-cause inquiry consider "the potential for prejudice that might result from a denial of the continuance." Critically, its claimed prejudice is unsupported by a declaration from any party. And its argument that Rule 56(d) relief is "premature" answers itself: Woodside's opposition to the summary judgment motion is due September 17, 2026, one week before this Motion is heard.

## II. ARGUMENT

### A. The Opposition's Statement of the Governing Standard Is Incomplete

The Opposition (at 7) tells the Court that the good-cause standard "requires" the movant to "demonstrate" that modification is necessary because of unforeseen developments, and that the movant "must show" diligence in seeking amendment. The source it cites says something more measured. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605 (E.D. Cal. 1999), states that a movant "may be required to show" three things, the second of which is that noncompliance with a deadline occurred "notwithstanding her diligent

efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated *at the time of the Rule 16 scheduling conference*." 186 F.R.D. at 608 (emphasis added). The Opposition (at 13) ends its quotation just before the italicized words and substitutes its own, outside the quotation marks — "at the outset of discovery" — because the substitution matters to its foreseeability argument, addressed in Section II.C below.

Nor does the Opposition mention the Court's Civil Standing Order, which frames the inquiry the Court applies: "The court's determination of whether good cause has been shown focuses upon evidence of diligence by the party or parties seeking a continuance and on the potential for prejudice that might result from a denial of the continuance." Standing Order § XIV (citing Fed. R. Civ. P. 16(b)(4); *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003)). Prejudice from denial is part of the analysis. And the Ninth Circuit's test for reopening discovery adds considerations the Opposition never addresses: "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (citation omitted). Section II.G applies those factors.

The Opposition's remaining authority on the standard, *Wong v. Regents of University of California*, 410 F.3d 1052, 1060 (9th Cir. 2005), does not help it. *Wong* affirmed the exclusion of expert witnesses whom the plaintiff had disclosed after the scheduling order's deadline; its admonition that parties "will pay a price for failure to comply strictly with scheduling and other orders" was directed at the party that had ignored the schedule. It enforced the order against that party. That is what Woodside asks here: the Court's order required the Elias Defendants to provide their responses to previously served discovery by

July 9 (Dkt. 21 at 6); they did not; and the Motion asks the Court to hold them to it rather than to reward the default with a judgment on the record it produced.

### B. Woodside Has Been Diligent

#### *1. Serving Nine Sets of Discovery Requests Fifteen Weeks Before the Cut-Off Was Diligent*

The Opposition's first theme is that Woodside "waited more than three months" after the December 23, 2025 Rule 26(f) conference to serve discovery. (Opp. at 1, 8.) Woodside served seventy-five document requests, seventy-five interrogatories, and ninety requests for admission on March 25, 2026 — eleven weeks after the Scheduling Order issued and fifteen weeks before the July 9 cut-off, with time for responses, production, a conference of counsel, and motion practice within the schedule Woodside itself had proposed. (Neri Decl. ¶¶ 3–4.) The Elias Defendants, who call that interval a "significant[]" delay (Opp. at 8), served their own first discovery on May 1, 2026 — five weeks after Woodside. (Levine Decl. ¶ 4.) Rule 16 does not require a party to serve discovery on the first day it may; it asks whether the party's conduct was reasonable in light of the schedule. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Serving comprehensive discovery with more than a quarter of a year to run, and then granting the responding parties the three-week extension they requested, is the conduct of a party working the schedule, not ignoring it.

*Shakey's Pizza* does not suggest otherwise. There, the court denied an untimely sanctions motion brought by parties who had "waited until just before the discovery deadline to seek a discovery conference with the magistrate judge," had filed no motion to compel "at any point during the discovery period," and had "neither requested a continuance nor showed the diligence that is required under Rule 16" to obtain one. *Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 2:24-cv-04546-SB-AGR, 2025 WL 2427837, at *1, *3 (C.D. Cal. July 11, 2025). It says nothing about a party that served its discovery with a full quarter of the schedule remaining, obtained written commitments to produce, and

moved to modify the schedule within two weeks of learning that those commitments would not be honored.

### ***2. Relying on Thirty-Two Written Commitments Was Diligent; a Motion to Compel Was Neither Required Nor Realistically Available***

The Opposition's core argument is that Woodside should have moved to compel, or moved to extend the cut-off, between the May 18 protective order and the July 9 cut-off, and that its failure to "follow up in any manner" in that period is dispositive. (Opp. at 9–11.) The argument ignores what the Elias Defendants had told Woodside and what the Rules required of them.

*A written commitment to produce is not a refusal.* Rule 34 gives a responding party two choices: object with specificity, or state that it will produce, in which case "[t]he production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). The Elias Defendants chose the second course thirty-two times and specified their time: "upon entry of a protective order." (Neri Decl. ¶ 7 & Ex. C.) The order was entered May 18. From that day the Elias Defendants were under a self-imposed obligation to complete production within a reasonable time, and under this Court's order to provide their responses by the cut-off. (Dkt. 21 at 6.) The Opposition never explains why a requesting party holding a written commitment, and a court-ordered deadline running against its opponent, must treat that commitment as worthless and start motion practice at once. Rule 16 requires diligence in pursuing the discovery, and a party that has served its requests, obtained written promises to produce, and satisfied the promisor's one condition has pursued it. *M2 Software, Inc. v. M2 Commc'ns, L.L.C.*, 217 F.R.D. 499, 500 (C.D. Cal. 2003); *FeedMe Trading LLC v. My Fish Stop LLC*, No. CV 23-08857-MWF (JCx), 2024 WL 5257016, at *3 (C.D. Cal. Oct. 10, 2024).

*The Opposition's diligence cases involve movants that knew, well before the cut-off, that their opponents were not producing — and did nothing.* In *Guo v. Robl* — this Court's

decision — "Defendants refused to produce these documents at least one month prior to the close of fact discovery," and the plaintiffs "neither moved to compel production of these response[s] nor moved to amend the scheduling order in that timeframe," waiting until the day of the cut-off to file an ex parte application; the Court denied ex parte relief because the applicants were not "without fault in creating the crisis," and expressly left open a noticed motion to amend the schedule. No. 2:22-cv-05576-FWS-MAA, 2024 WL 4003913, at *2–3 (C.D. Cal. May 24, 2024). In *Greek v. Target Corp.*, the plaintiff served interrogatories in March and then "for four months — nearly the entirety of fact discovery — . . . sa[t] idly by without raising the delay to defense counsel or moving to compel disclosure," and there was "no evidence that Plaintiff's counsel sought the surveillance footage sooner or raised a discovery issue with the magistrate judge." No. 2:23-cv-00608-MCS-PVC, 2023 WL 8351537, at *2–3 (C.D. Cal. Sept. 21, 2023). In *Boyer*, the court found the plaintiff's diligence "mixed" — a qualification the Opposition's quotation (at 9) omits, along with the clause that produced it: "While Plaintiff sought the contract that prompted this request before the discovery deadline, Plaintiff never sought to compel production before fact discovery closed." *Boyer v. Novo Nordisk Inc.*, No. 2:24-cv-01866-DJC-AC, 2025 WL 2808149, at *1 (E.D. Cal. Oct. 1, 2025). And in *Viteri-Butler*, the movant "did not seek additional production or request a motion to compel" — the Opposition (at 16) quotes only the second half of the phrase — with a month left to do either. *Viteri-Butler v. Univ. of Cal. Hastings Coll. of the Law*, 650 F. App'x 386, 387 (9th Cir. 2016). None of those decisions involved a responding party that had committed in signed discovery responses to produce, had its one stated condition satisfied, and then refused for the first time after the cut-off. That is this case. The Elias Defendants' first refusal came on August 11, 2026 — thirty-three days after the cut-off — when their counsel took the position that the cut-off relieved them of any obligation even to confer. (Levine Decl. ¶ 9; Neri Decl. ¶ 14 & Ex. G.) Woodside moved thirteen days later.

*FeedMe Trading is on point, and the Opposition's account of it is inaccurate.* The Opposition (at 10) says *FeedMe* turned on the fact that the responses at issue were served only three weeks before the cut-off, leaving no time for a motion to compel. The opinion says something else. The movant there "requested the documents approximately seven weeks before the discovery cut-off," and "[t]hree weeks before the cut-off, FeedMe appeared to intimate that it would produce the documents"; on those facts the court held that the movant "could not have reasonably foreseen that FeedMe would refuse only after the deadline had passed," and modified the schedule. 2024 WL 5257016, at *3.

The movant in *FeedMe* did not move to compel before the cut-off either; it relied on an intimation of production. Woodside relied on thirty-two express written commitments, made eight weeks before the cut-off, whose sole condition was satisfied seven weeks before it. That the motion was unopposed does not change the standard: the court treated the opposing party's summary judgment briefing as a possible opposition, proceeded "to the merits," and found diligence. *Id.* at *1, *3. And the *FeedMe* court "determined that the discovery issues should be heard before resolving the Motion for Summary Judgment," then directed the parties to set deadlines for the production and for supplemental summary judgment briefing. *Id.* at *2, *4.

As for *M2 Software*, the Opposition (at 10–11) notes that counsel there had also "stated in writing" that a supplemental production was planned. But the holding was that a party who "reasonably relied to its detriment upon the representations of [its opponent] and its counsel that [it] would produce the documents at issue" should not be held to a rigid cut-off, because the responding party "never clearly stated that it would not produce the requested and promised documents until it was too late to file a timely discovery motion." 217 F.R.D. at 500. Thirty-two signed discovery responses are representations of production in the most formal sense the Rules recognize; *M2 Software* treated a verified response that the party "will produce" as "a response under penalty of perjury that it will produce all documents responsive to the request." *Id.* at 501; *see* Fed. R. Civ. P. 26(g)(1).

*The "sufficient time" the Opposition posits did not exist.* The Opposition asserts (at 11) that the May dates "afforded sufficient time for Plaintiff to pursue a discovery motion if necessary, *see* L.R. 37-1–37-3." The arithmetic says otherwise. Under this Court's order, a discovery motion must be *heard*, not filed, by the cut-off. (Dkt. 21 at 6.) The Local Rule 37 process requires a letter, a conference of counsel within ten days of it, a joint stipulation prepared and exchanged in stages, and a hearing noticed at least twenty-one days after the stipulation is filed — roughly six weeks at a minimum, before the Magistrate Judge's calendar is consulted. L.R. 37-1, 37-2.2, 37-3. Fifty-two days separated the protective order from the cut-off. To have a motion to compel heard by July 9, Woodside would have had to send its Rule 37-1 letter within days of May 18 — that is, to declare the Elias Defendants in breach of a commitment made three days earlier, before any reasonable production period had run. Diligence does not require that.

*Sequencing depositions behind the promised production was reasonable.* The Opposition (at 8, 12) faults Woodside for not noticing the Elias Defendants' depositions. Woodside told defense counsel on April 23 that, absent an agreement to early mediation, it would seek to depose Mr. Elias and Ms. Pope. (Levine Decl. ¶ 14.) It planned to do so after receiving the documents the Elias Defendants had committed to produce, so that each witness could be examined once, on his or her own bank records, transaction files, and communications. (Neri Decl. ¶ 10.) That is how discovery is ordinarily staged, and courts decline to read Rule 16 to penalize it. *See Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 654–55 (N.D. Cal. 2025) (movant that served document requests early was diligent although it took depositions "after the completion of most written discovery"; "[g]iven the ubiquity of this practice in civil litigation, the Court is loath to adopt any interpretation of Rule 16(b)'s diligence requirement that would punish parties for staging discovery in this manner"). The reason the depositions did not occur is the reason the documents did not arrive.

**C. <u>The "Foreseeability" Argument Confuses the Need for Discovery With the Impediment to It</u>**

The Opposition (at 12–13) argues that Woodside knew "from [the] outset" that it would need the Elias Defendants' records because its Complaint describes the scheme in detail. Of course it did; that is why it served the discovery. The question *Jackson* asks — correctly quoted — is whether the deadline could not be met "because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference." 186 F.R.D. at 608. On January 6, 2026, no party could reasonably have anticipated that the Elias Defendants would commit in writing to produce upon entry of a protective order, have that condition satisfied within days, and then produce nothing through the cut-off and beyond. That development, not the need for the documents, is what made the schedule unworkable. *FeedMe Trading*, 2024 WL 5257016, at *3.

*McMullen* and *Daniels* involved the opposite situation: parties who could have obtained the discovery within the period and did not try. In *McMullen*, the plaintiff "freely admit[ted]" that its need for the material was foreseeable, sought to reopen discovery two months after fact discovery and a month after expert discovery had closed, with trial "quickly-approaching," and "[t]he discovery now-sought could have been obtained within" the period. *McMullen v. Mercedes Benz USA, LLC*, No. CV 23-712-GW-MARx, 2024 WL 439439, at *2 (C.D. Cal. Jan. 2, 2024). In *Daniels*, the movant sought, ex parte and a month before trial, to depose a witness whose identity it had learned seven months earlier. *Daniels v. Specialized Loan Servicing, LLC*, No. 2:22-cv-06776-MCS-PD, 2025 WL 4740015, at *1–2 (C.D. Cal. Oct. 29, 2025). Neither involved a promise to produce. *Boyer*'s foreseeability point, meanwhile, cuts against the Opposition: what was foreseeable there was that production of a contract "would necessitate further discovery," 2025 WL 2808149, at *1 — follow-on discovery beyond what had been requested. Woodside seeks nothing beyond what it requested in March and was promised in May.

**D. Woodside Moved Within Days of the Elias Defendants' First Refusal**

The Opposition's promptness argument (at 11, 13) depends on measuring from May 18 rather than from the first indication that the Elias Defendants would not perform. Measured from the right starting point, the sequence is: written commitments (May 15); condition satisfied (May 18); cut-off passes with no production and no word (July 9); Local Rule 37-1 letters demanding production and verifications and specifying the relief to be sought (August 3–4); first refusal, on timeliness grounds (August 11); conference of counsel under Local Rules 37-1 and 7-3 (August 13); motion (August 24). (Neri Decl. ¶¶ 13–17.) Thirteen days from refusal to motion is prompt by any measure. *See Pomona*, 866 F.3d at 1066.

As for the week between August 17 and August 24: on the August 13 call, defense counsel said he would provide the Elias Defendants' position "by the following day or the following Monday"; none came. (Neri Decl. ¶¶ 15–16.) On August 20, as counsel was finalizing the Motion for filing, defense counsel announced the summary judgment motion. (Neri Decl. Ex. H; Supp. Neri Decl. ¶ 8.) Counsel revised the Motion to address that development — now Sections II.F and IV.A.4 of the Motion — and filed it on Monday, August 24. (Supp. Neri Decl. ¶ 8.) The Opposition (at 13) calls the filing a reaction to its own email. It was: the email changed what the Motion needed to ask for. A week spent addressing a newly announced dispositive motion is not a lack of diligence, and it cost no one anything — the hearing date moved by one week, and the Elias Defendants' request to confer regarding summary judgment was honored on August 27. (Levine Decl. ¶ 11.)

**E. The Ramos Default Proceedings Are Irrelevant**

The Opposition devotes two pages (at 6, 13–14) to Woodside's prosecution of its claims against the defaulted defendant, Ramos. The good-cause inquiry concerns the discovery at issue, and the Opposition cites no authority for importing into it a party's conduct on unrelated deadlines. Nor does the record show what the Opposition says. Both orders to show cause were resolved without dismissal: the Court extended the time for

service and Ramos was served; when he failed to answer, Woodside requested and obtained his default. (Dkt. 24, 30, 31.) Woodside then monitored his parallel criminal prosecution, in which the Court entered a final order of forfeiture on July 7, 2026, and moved for default judgment on August 24. (Neri Decl. ¶ 12; Dkt. 38.) The charge that the motion was filed "in disregard of" Standing Order § IX(e) misreads the provision, which runs from "the *later of* (1) entry of default against the last remaining defendant or (2) resolution of all claims against all defendants who have not defaulted." Standing Order § IX(e) (emphasis added). The claims against the Elias Defendants are unresolved, so the later event has not occurred and the fourteen-day period has not begun to run. Woodside moved ahead of the Standing Order's timetable, not behind it.

**F. <u>Woodside's Own Non-Production, Now Corrected and Cured, Does Not Defeat Good Cause</u>**

Woodside served its responses to Defendant Elias's requests for production and interrogatories on June 15, 2026. (Levine Decl. Exs. 1–2.) Thirty-two of its thirty-three document responses stated that Woodside "will produce nonprivileged responsive documents, if any, in its possession, custody, or control," subject to the protective order; no documents accompanied the responses; and the verification counsel's transmittal said would "follow shortly" was not served. (*Id.* ¶¶ 6–7 & Ex. 3.) The Motion's statement that Woodside "produced documents on June 15, 2026" (Mot. at 10; Neri Decl. ¶ 11) was therefore inaccurate, and Woodside withdraws it. The statement described Woodside's June 15 service of responses — in which Woodside stated that it would produce — as a production; counsel did not check the June 15 transmittal against the statement before the declaration was filed. (Supp. Neri Decl. ¶¶ 2–3.) Two points of context follow, neither offered as an excuse. First, the responses were not "two days late" (Opp. at 3): the agreed date, June 13, fell on a Saturday, so the period ran to Monday, June 15, the day the responses were served. *See* Fed. R. Civ. P. 6(a)(1)(C). Second, Woodside has now produced the documents identified in its responses. On September 10, 2026, it served 297 pages, Bates-

numbered WC000001 through WC000297: its general ledger and loss schedules; the Montana agent's Valley Bank statements and check images; the schedules of the forty-eight checks and wires to the Elias Defendants and of the vehicles they purchased; the loan-level payment and repossession records; the vehicle disposition and release documents; the preservation correspondence; the public filings in the Ramos criminal case; and the Complaint — with confidentiality designated document by document under the Protective Order. (Supp. Neri Decl. ¶ 4 & Ex. I.) The transmittal asked the Elias Defendants to produce, and to serve their verifications, within fourteen days. (*Id.* ¶ 5 & Ex. I.)

The Opposition's premise is that because "both sides" failed to produce, there is "no imbalance in the parties' circumstances," and the equitable principle of *FeedMe* and *M2 Software* is "inapplicable." (Opp. at 2, 10.) The premise fails at each step.

*First*, the Rules recognize no mutual-default defense. Each party's discovery obligations run independently — "discovery by one party does not require any other party to delay its discovery," Fed. R. Civ. P. 26(d)(3)(B) — and the remedy for a party dissatisfied with its opponent's production is to demand it, confer, and if necessary move. The Elias Defendants did none of those things. The Levine Declaration identifies no letter, no request to confer, and no motion by the Elias Defendants concerning Woodside's production at any time; by their own account, neither side raised any discovery issue with the other between June 15 and August 4 (Levine Decl. ¶ 8), and the Elias Defendants first raised Woodside's production on August 27, after this Motion was filed (*id.* ¶ 11), and now offer it as a reason Woodside should not obtain theirs. The "acquiescence" the Opposition describes (at 1) was mutual, and it cannot be a reason to deny discovery to one side only. Nor does the Opposition cite any decision — from this Circuit or anywhere else — holding that a movant's own outstanding production defeats good cause under Rule 16(b)(4); the standard "primarily considers the diligence of the party seeking the amendment" in obtaining the discovery at issue, *Johnson*, 975 F.2d at 609, and the Opposition's cases apply nothing else.

*Second*, the positions are not symmetrical in the respects that matter to good cause. The Elias Defendants conditioned their production on a protective order; Woodside cleared the condition within a week; and their obligation to produce matured on May 18, a month before Woodside's responses were due. Woodside's responses, served after the order existed, imposed no condition on anyone. Woodside is the plaintiff and bears the burden of proof on claims of knowledge, agreement, and pattern, and the proof of those elements — the deposit records for forty-eight "Refund" checks and wires, the vehicle purchase and resale files, the communications with Ramos and the Montana agent — is in the Elias Defendants' files, which they have acknowledged hold responsive documents. (Neri Decl. ¶¶ 7, 18.) And the Elias Defendants are the parties seeking judgment. Their motion rests on their own declarations about what Ramos told them and what they believed — the separate statement cites nothing else (Dkt. 47 at 1–6; Dkt. 47-1) — asserts that "Plaintiff has no evidence to the contrary" (*id.* at 9), and cites Woodside's non-production as proof that Woodside cannot establish even Ramos's fraud (*id.* at 12 n.4 (citing Levine Decl. ¶ 7)). A party cannot invoke mutual non-production as a shield against producing and, in a filing made the same day, wield its opponent's non-production as a sword for judgment. The equity that *FeedMe* and *M2 Software* protect — that a party may not keep the benefit of its own broken promise to produce — applies with more force, not less, to a promisor litigating on the vacuum.

*Third*, the Opposition's own authority confirms that the answer to non-production is a remedy, not a forfeiture. *Reyes*, cited (at 17) for the proposition that a motion to compel is "the remedy" for non-production, actually says that the remedy is "a motion to compel or a motion for a finding of contempt" — the plaintiff there had already obtained an order compelling production and never enforced it. *Reyes v. Wilson Mem'l Hosp.*, 102 F. Supp. 2d 798, 826 (S.D. Ohio 1998). The Opposition's quotation omits the contempt clause. The point of the passage is that the cure for withheld discovery is production. That is what the Motion asks for — on both sides.

Woodside therefore proposes, and consents to, three refinements of the relief requested. (1) All parties complete production of the documents they committed to produce, and serve interrogatory verifications, within fourteen days of the Court's order (Woodside having already produced). (2) The reopened deposition window applies to both sides, so that the Elias Defendants may depose Woodside's Rule 30(b)(6) designee and the witnesses identified in Woodside's initial disclosures on the same schedule Woodside proposed for Mr. Elias, Ms. Pope, and Classic Motors. (3) If the Elias Defendants in fact wish to disclose an expert — the Opposition says only that they "may have retained one or more" had documents been exchanged (Opp. at 15) — Woodside does not oppose a short, reciprocal expert period within the same window — initial disclosures thirty days after the Elias Defendants certify substantial completion of their production, rebuttals fourteen days later, and expert discovery closing with the reopened window on December 18 — provided the trial date holds. (Supp. Neri Decl. ¶ 6.) A modification on those terms takes every reliance-based "prejudice" the Opposition identifies off the table.

### G. <u>The Trial Is Not Imminent and the Elias Defendants Will Not Be Prejudiced If the Motion Is Granted</u>

Trial is not imminent: it is set for February 2, 2027, and the requested relief leaves that date and the January 7, 2027 Final Pretrial Conference in place. *Cf. McMullen*, 2024 WL 439439, at *2 (reopening denied where it "would interfere with preparation for the quickly-approaching trial"). The request is opposed, but that is the only *Pomona* factor the Opposition can claim. Woodside was diligent, for the reasons stated in Section II.B. The need for the discovery was foreseeable; the Elias Defendants' refusal to honor their commitments was not. And the likelihood that the discovery "will lead to relevant evidence," 866 F.3d at 1066, is not a matter of prediction: the Elias Defendants acknowledged possessing responsive documents and agreed to produce them, and the summary judgment motion they have now filed turns entirely on their state of mind — what Ramos told them, what they believed, what they intended — which their contemporaneous

communications and financial records, and their deposition testimony, are the ordinary means of testing.

That leaves prejudice, which the Standing Order directs the Court to weigh on the side of denial as well as of grant. Standing Order § XIV. The Elias Defendants' showing consists of counsel's assertions that they "relied" on Woodside's silence in deciding not to depose Woodside's witnesses, and that they "may have retained" experts. (Opp. at 15.) No party declaration supports either statement; the reciprocal relief proposed above supplies the depositions and, if wanted, the expert window; and parties that chose to depose no one, disclose no one, and produce nothing are poorly positioned to claim reliance on the schedule. The remaining prejudice — that the Elias Defendants "would need to make deponents available" and their summary judgment briefing might be delayed (Opp. at 14–15, quoting *Boyer*) — describes compliance with ordinary discovery obligations and the loss of a tactical advantage, not cognizable harm. (*Boyer* involved "additional depositions," 2025 WL 2808149, at *1 — a word the Opposition's quotation omits — and *Milky Way* concerned a belated motion to amend the complaint, denied for lack of diligence by a court that expressly "need not address prejudice." *Milky Way Int'l Trading Corp. v. Ningbo Sunny Int'l Co.*, No. 2:23-cv-08259-JLS-JC, 2024 WL 5424119, at *2 (C.D. Cal. Dec. 20, 2024).) The Opposition's candid statement of what the Elias Defendants want — that the Court "hear and grant" their summary judgment motion "and thereby allow this action to be resolved without the necessity of a trial" (Opp. at 15) — describes the advantage the current schedule confers, not a prejudice from losing it.

The prejudice from denial, by contrast, is concrete and imminent. Woodside's opposition to the summary judgment motion is due September 17, 2026. (Dkt. 26; Standing Order § IX(f).) Absent modification, Woodside will oppose judgment on fraud, conspiracy, and RICO claims with none of the moving parties' documents, no verified interrogatory answers, and no deposition testimony, against declarations it has had no opportunity to test — the posture Rule 56(d) exists to prevent. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832,

846 (9th Cir. 2001); *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 773–74 (9th Cir. 2003); *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004). The gap cannot be filled from Woodside's own files: Woodside's records show that forty-eight "Refund" checks and wires were sent; only the Elias Defendants' records show into whose accounts they were deposited, who controlled those accounts, where the money went, and what the Elias Defendants said to Ramos and the Montana agent about it. Those facts are "solely within the Elias Defendants' possession, custody, or control," and Woodside "cannot obtain [them] by other means." (Neri Decl. ¶ 18.)

**H. <u>The Rule 56(d) "Prematurity" Argument Should Be Rejected</u>**

The Opposition argues (at 16) that it is "premature" to address Rule 56(d) because the summary judgment motion had not been filed, and that Woodside has not identified what discovery would reveal. Both points are overtaken. The motion was filed the same day as the Opposition, and Woodside's opposition to it — with the declaration Rule 56(d) requires — is due before this Motion is heard. And the Neri Declaration already specifies the facts the withheld materials are expected to establish and why they are essential to the knowledge and intent the summary judgment motion says Woodside cannot show. (Neri Decl. ¶ 18.) That is the showing *Program Engineering* requires, *see Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980), and it is not speculation: the Elias Defendants acknowledged possessing the documents and agreed to produce them. *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) (denial of relief "generally disfavored" where the application is timely, "specifically identifies" relevant information, and "there is some basis for believing that the information sought actually exists," and "especially inappropriate where the material sought is also the subject of outstanding discovery requests"); *Assiniboine*, 323 F.3d at 774–75 (same, quoting *VISA*).

The Opposition's Rule 56(d) authorities (at 16–17) hold that a court may deny a continuance to a party that "had the opportunity to conduct discovery in a diligent fashion,

but failed to do so," and that Rule 56(d) "is not the equivalent of a motion to compel." Woodside does not offer Rule 56(d) as a substitute for a motion to compel; it filed this Motion so that the discovery deficit can be addressed through the schedule, before the summary judgment motion is decided. And the "opportunity" line of cases the Opposition collects (at 16) concerns parties who had time and did not use it.[1] Woodside's problem was never time; it was the moving parties' non-performance of a written commitment, first disclosed after the cut-off. *Kitsap* describes Rule 56(d) as a device for parties that "have not had sufficient time to develop affirmative evidence," *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002); a party whose opponent withholds the evidence while the clock runs has not had that time in any meaningful sense. Nor does the Rule 56(d) inquiry rise or fall with Rule 16. Where a party has shown "some basis for believing" that the movant's own files hold the evidence and has "had no fair opportunity to develop the record," deciding summary judgment without that discovery is an abuse of discretion, and the district court "may tailor limited discovery before again entertaining a motion for summary judgment." *Assiniboine*, 323 F.3d at 774–75. That tailored sequence is what the Motion proposes, and what the *FeedMe* court ordered on facts weaker than these. 2024 WL 5257016, at *2, *4.

What the prematurity argument does establish is the efficient course. If the schedule stands, the Court will confront the identical discovery deficit in Woodside's September 17 opposition, in a Rule 56(d) posture, after full summary judgment briefing — and will then have to decide whether to defer or deny the motion and reopen discovery in any event. *See Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 677–78 (9th Cir. 2018) (where the materials a pending discovery motion seeks are relevant to the basis for summary judgment, the district court must address the discovery motion and the Rule 56(d) request and state its reasons).

[1] *Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1207, 1213 (C.D. Cal. 2002); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996); *Stitt v. Williams*, 919 F.2d 516, 526 (9th Cir. 1990); *White v. Baca*, No. CV 13-3401-JFW (SSx), 2014 WL 12700946, at *3 n.4 (C.D. Cal. Feb. 6, 2014); *Viteri-Butler*, 650 F. App'x at 387.

Modifying the schedule now, and continuing the hearing on the summary judgment motion until the limited discovery is complete, resolves the question once and ensures that the motion is decided on a record both sides have had a fair opportunity to build.

## III. CONCLUSION

The Elias Defendants promised in writing to produce, received the protective order they asked for, produced nothing, refused for the first time after the cut-off, and moved for judgment on the resulting record. Woodside has corrected its misstatement, cured its production, and asked that the modified schedule bind both sides. Good cause is established under Rule 16(b)(4), the Standing Order, and *Pomona*. The Motion should be granted or, alternatively, the Elias Defendants should be ordered to honor their written commitments, with depositions and the summary judgment motion to follow.

Respectfully submitted,

**DATED:** September 10, 2026

**BROWN NERI SMITH & KHAN LLP**

By: /s/ Geoffrey A. Neri
Geoffrey A. Neri
Attorneys for Plaintiff
WOODSIDE CREDIT, LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Woodside Credit, LLC, certifies that this brief contains 6,284 words, which complies with the word limit of L.R. 11-6.1.

**DATED:** September 10, 2026

**BROWN NERI SMITH & KHAN LLP**

By: /s/ Geoffrey A. Neri
Geoffrey A. Neri
Attorneys for Plaintiff
WOODSIDE CREDIT, LLC

**DECLARATION OF GEOFFREY A. NERI PURSUANT TO CIVIL STANDING ORDER § VIII.h**

I, Geoffrey A. Neri, declare as follows:

1. I am an attorney admitted to practice before this Court and counsel of record for Plaintiff Woodside Credit, LLC. I make this declaration pursuant to Section VIII.h of the Court's Civil Standing Order. I have personal knowledge of the facts stated below.

2. Generative artificial intelligence was used to research and assist in preparing portions of the foregoing Reply and the Supplemental Declaration of Geoffrey A. Neri filed with it.

3. I have reviewed the source material on which those filings rely, including the authorities, the record, and the exhibits cited in them, and I have verified that the content generated with the assistance of artificial intelligence is accurate and complies with my obligations under Federal Rule of Civil Procedure 11.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 10, 2026, at Los Angeles, California.

By: /s/ Geoffrey A. Neri
Geoffrey A. Neri