**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WOODSIDE CREDIT, LLC, a California limited liability company,

Plaintiff,

v.

ALEXANDER G. RAMOS, an individual; FADI ELIAS, an individual; JENNIFER POPE, an individual; CLASSIC MOTORS, INC., an Arizona business entity; and DOES 1 through 20, inclusive,

Defendants.

Case No. 8:25-cv-02146-FWS-JDE

*Honorable Fred W. Slaughter*

**DEFENDANTS FADI ELIAS, JENNIFER POPE, AND CLASSIC MOTORS, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION**

[*Filed concurrently with Elias Defendants' Response to Statement of Genuine Disputes and Additional Material Facts; Objections to Evidence; and (Proposed) Order*]

Date: October 15, 2026
Time: 10:00 a.m.
Courtroom: 10A

Action filed: September 22, 2025

TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. The Court Should Decline to Consider Plaintiff's Opposition, Which is Untimely Without Leave or Legitimate Excuse .......... 1

B. Knowledge and Intent Are Properly Resolved on This Record .......... 4

1. State of Mind is Not Immune from Summary Judgment .......... 4

2. Plaintiff Cannot Build its Opposition on the Declarations it Asks the Court to Exclude .......... 5

3. Plaintiff's Circumstantial Case Does Not Support the Necessary Inference Regarding Knowledge .......... 6

4. Plaintiff's Attacks on the Declarations Do Not Manufacture a Dispute .......... 9

C. Plaintiff's Agency Authorities Turn on Elias Defendants' Knowledge and Provide No Basis to Deny the Motion .......... 11

1. Plaintiff's Statutes Condition their Rules on the Dealer's Knowledge .......... 11

2. Ostensible Authority Rests on the Principal's Acts, and Plaintiff placed Ramos in His Role .......... 12

3. Plaintiff's Framing Confirms that Ramos's Position is Relevant .......... 13

D. Each Claim Fails on the Same Missing Element: Actual Knowledge .......... 13

1. Aiding and Abetting Fraud and Breach of Fiduciary Duty (Second and Fifth Claims) .......... 14

2. Conspiracy (Third Claim) .......... 15

3. Fraudulent Concealment (First Claim) .......... 16

4. RICO (Sixth and Seventh Claims) .......... 16

E. Plaintiff's Summaries of Records Not Timely Produced Do Not Carry Its Burden at Summary Judgment .......... 18

1. The Schedules are Rule 1006 Summaries Whose Foundation Plaintiff Has Not Laid .......... 18

2. The Exclusion Framework Plaintiff Invokes Does Not Change the Result .......... 19

F. Plaintiff Is Not Entitled to a Rule 56(d) Continuance .......... 19

1. The Knowledge Plaintiff Actually Needs Is the Object of Pure Speculation .......... 20

2. Plaintiff Did Not Diligently Pursue the Discovery It Now Calls Essential .......... 20

III. CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Cases**

*Ahanchian v. Xenon Pictures, Inc.*,
624 F.3d 1253 (9th Cir. 2010) .......... 2, 3
*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
225 Cal. App. 4th 1451 (2014) .......... 15, 16, 18
*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 8, 9
*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993) .......... 18, 19
*Braxton-Secret v. A.H. Robins Co.*,
769 F.2d 528 (9th Cir. 1985) .......... 5, 9, 11
*Casey v. U.S. Bank Nat. Assn.*,
127 Cal. App. 4th 1138 (2005) .......... 15, 16, 18
*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 6
*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) .......... 20
*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
235 F. Supp. 3d 1132 (E.D. Cal. 2017) .......... 20
*Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*,
353 F.3d 1125 (9th Cir. 2004) .......... 23, 24
*Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
525 F.3d 822 (9th Cir. 2008) .......... 22, 24
*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .......... 15
*Gard v. United States*,
594 F.2d 1230 (9th Cir. 1979) .......... 5
*Global Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) .......... 9
*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*,
397 F.3d 1217 (9th Cir. 2005) .......... 4
*Kidron v. Movie Acquisition Corp.*,
40 Cal. App. 4th 1571 (1995) .......... 17
*Kyle v. Campbell Soup Co.*,
28 F.3d 928 (9th Cir. 1994) .......... 2
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 8, 9
*Meyer v. Glenmoor Homes, Inc.*,
246 Cal. App. 2d 242 (1966) .......... 13
*Nasrawi v. Buck Consultants LLC*,
231 Cal. App. 4th 328 (2014) .......... 16

*Nelson v. Pima Cmty. Coll.*,
83 F.3d 1075 (9th Cir. 1996) .......... 7

*Ohler v. United States*,
529 U.S. 753 (2000) .......... 6, 7

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993) .......... 2

*Preis v. American Indemnity Co.*,
220 Cal. App. 3d 752 (1990) .......... 13

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) .......... 5, 11

*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*,
673 F.3d 1240 (9th Cir. 2012) .......... 22

*Rattagan v. Uber Techs., Inc.*,
17 Cal. 5th 1 (2024) .......... 18

*Reeves v. Sanderson Plumbing Products, Inc.*,
530 U.S. 133 (2000) .......... 10

*Saks v. Charity Mission Baptist Church*,
90 Cal. App. 4th 1116 (2001) .......... 14

*Salinas v. United States*,
522 U.S. 52 (1997) .......... 19

*Sandoval v. Cnty. of San Diego*,
985 F.3d 657 (9th Cir. 2021) .......... 21

*Sands v. Eagle Oil & Ref. Co.*,
83 Cal. App. 2d 312 (1948) .......... 14

*Shaw v. Nissan N. Am., Inc.*,
220 F. Supp. 3d 1046 (C.D. Cal. 2016) .......... 19

*Soremekun v. Thrifty Payless, Inc.*,
509 F.3d 978 (9th Cir. 2007) .......... 7

*Speiser, Krause & Madole P.C. v. Ortiz*,
271 F.3d 884 (9th Cir. 2001) .......... 2

*State of Cal., on Behalf of California Dep't of Toxic Substances Control v. Campbell*,
138 F.3d 772 (9th Cir. 1998) .......... 23

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
313 F. Supp. 3d 1056 (N.D. Cal. 2018) .......... 20

*Tatung Co., Ltd. v. Shu Tze Hsu*,
217 F. Supp. 3d 1138 (C.D. Cal. 2016) .......... 19

*Underwager v. Channel 9 Australia*,
69 F.3d 361 (9th Cir. 1995) .......... 5

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 18

*Upasani v. State Farm Gen. Ins. Co.*,
227 Cal. App. 4th 509 (2014) .......... 15, 17

*Wells v. J. C. Penney Co.*,
250 F.2d 221 (9th Cir. 1957) .......... 6

*Wyatt v. Union Mortg. Co.*,
24 Cal. 3d 773 (1979) .......... 17

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) .......... 22

**Statutes**

18 U.S.C. § 1962(c) .......... 16, 17, 18

Cal. Civ. Code § 2334 .......... 11

Cal. Civ. Code § 2332 .......... 11

Cal. Civ. Code § 2330 .......... 11

Cal. Civ. Code § 2306 .......... 11

**Rules**

Fed. R. Civ. P. 37(c)(1) .......... 10

Fed. R. Civ. P. 56 .......... passim

Fed. R. Evid. 1006 .......... 18

**Local Rules and Judicial Standing Orders**

United States District Court for the Central District of California
Judge Slaughter Civil Standing Order Standing Order .......... 1, 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Consistent with its usual cavalier approach to this litigation, Plaintiff filed its opposition to Elias Defendants' summary judgment motion after the deadline without leave, leaving Elias Defendants a mere six days to respond. Yet despite the additional time Plaintiff took, it remains unable to show any genuine dispute of material fact exists bearing on the essential knowledge and intent elements of Plaintiff's claims—only conjecture. The Court should not consider Plaintiff's untimely filing. Moreover, as explained below, Plaintiff's attempts to manufacture disputes fail, and its schedules are inadmissible. Nor is Plaintiff entitled to a Rule 56(d) continuance, due in large part to its significant lack of diligence in pursuing the discovery it now claims to need. For the reasons explained in Elias Defendants' motion and herein, summary judgment must be granted.

## II. ARGUMENT

### A. The Court Should Decline to Consider Plaintiff's Opposition, Which is Untimely Without Leave or Legitimate Excuse

Under this Court's Scheduling Order and its Standing Order, Plaintiff's opposition was due September 17, 2026. [Dkt. 26 (enumerating motion briefing deadlines); Judge Slaughter Civil Standing Order ("Standing Order") at 9, § IX(f).] In a footnote, Plaintiff concedes that, despite these multiple orders putting Plaintiff on notice of this deadline months ago, its opposition was nevertheless filed late without leave. (Opp. at 7 n.1.) A footnote asking the Court to excuse the delay is no substitute for the request for relief, or the requisite showing justifying that relief, that the rules require. Once a deadline expires, a court may extend time only upon a motion made after the time has expired, if the party failed to act because of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). Plaintiff filed no such motion, and in any event has not shown excusable neglect.

Plaintiff's proffered excuse—that its counsel "calendared the deadline by counting back twenty-eight days from the October 15 hearing" and that the "computation mistakenly treated September as having thirty-one days"—is inadequate. (Opp. at 7 n.1.) "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). The Ninth Circuit has explicitly held that an attorney's miscalculation of a filing deadline is "a mistake of law [that] does not constitute excusable neglect." *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931-32 (9th Cir. 1994); *accord Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 886-87 (9th Cir. 2001). The error was entirely "within [Plaintiff's] reasonable control." *Pioneer Inv. Servs. Co.*, 507 U.S. 380, 395. September has never had thirty-one days, and ascertaining the correct deadline required nothing more than counting four weeks backward on a calendar from the noticed hearing date. That is garden-variety carelessness, not excusable neglect.

Plaintiff's own authority proves the point. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259-62 (9th Cir. 2010), found excusable neglect only because counsel there moved for an extension *before* the deadline (as Federal Rule 6(b)(1)(B) requires), then filed a separate motion asking the court to accept the late opposition, and faced a compressed eight-day deadline falling over Labor Day weekend and had no history of missed deadlines. Here, Plaintiff did none of that. It filed late and sought forgiveness in a footnote, even though a motion was required under the Federal Rules. And, unlike in *Ahanchian*, Plaintiff was on notice that it had already missed multiple other deadlines in this case, as detailed in Elias Defendants' opposition to Plaintiff's belated motion to reopen discovery. [*See* Dkt. 46 at 4-5 & 9-13 (detailing Plaintiff's attempt to raise and litigate discovery disputes long past the cutoff date due to lack of diligence, and further delay in moving to reopen discovery), 6 & 13-14 (explaining that Plaintiff's separate motion for default judgment was filed months after deadline).]

The delay was not harmless, despite Plaintiff's claim to the contrary. Plaintiff contends the reply deadline runs from its opposition, so Elias Defendants lost no time. Although that is what the Scheduling Order says, the Court's Standing Order and webpage each set the reply deadline as "twenty-one (21) days before the noticed hearing date." (Standing Order at 9, § IX(f); *accord* Hon. Fred W. Slaughter Procedures, Law and Motion Schedule, "CIVIL MOTIONS," *available at* https://apps.cacd.uscourts.gov/Jps/honorable-fred-w-slaughter (last accessed September 24, 2026).)[1] A fixed date that does not change when an opposition is filed late. Plaintiff's late opposition thus cost Elias Defendants a day of their reply period, and Elias Defendants are filing the instant brief today to comply with all of the Court's rules. Plaintiff's offer "not [to] oppose" an extension of the reply deadline (Opp. at 7 n.1) cannot rewrite the Court's Standing Order or shift onto Elias Defendants the burden of curing Plaintiff's error, particularly where the Court's Standing Order requires that, notwithstanding any agreement among the parties, "[a]ny briefing schedule must provide the court at least twenty-one (21) days between the reply deadline and the hearing date." (Standing Order at 9, § IX(f).)

Under Local Rule 7-12, "[t]he Court may decline to consider any memorandum or other document not filed within the deadline." The Court should decline to consider Plaintiff's untimely opposition and treat the motion as unopposed, while still assessing Elias Defendants' entitlement to judgment on the merits. As explained in Elias Defendants' motion, such assessment requires that summary judgment be granted because based on Elias Defendants' lack of knowledge of, or intent to further, Ramos's theft of Plaintiff's funds. (*See* Mot.) Alternatively, the Court may strike

[1] The Court's Standing Order, although not formally issued on the docket of this action, was expressly incorporated by a separate order that was. [Dkt. 21 at 4, 7 (directing counsel to "refer to the court's Standing Order for specific guidelines governing summary judgment motions" and for "guidance regarding requests for continuance").]

Plaintiff's untimely opposition; the Ninth Circuit has held it is not an abuse of discretion to strike summary-judgment opposition material filed after the deadline without leave. *See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224 (9th Cir. 2005).

**B. Knowledge and Intent Are Properly Resolved on This Record**

Plaintiff suggests that state of mind is "the classic jury question" and so can virtually never be decided on summary judgment. (Opp. at 6.) That is not the law, and Plaintiff's own authority says so. Rather, knowledge and intent are decided as a matter of law when the record permits only one reasonable inference, which Plaintiff's opposition confirms is the case here. The opposition rests on the very declarations Plaintiff seeks to exclude, adopting them as "some of Woodside's best evidence." (*Id.*) And the circumstantial "inferences" it assembles show, at most, that Ramos deceived Plaintiff's partner banks and Elias Defendants—*not* that Elias Defendants knew Ramos was stealing from Plaintiff. That is the only knowledge Plaintiff's claims require, and Plaintiff has no competent evidence of it. The chains of speculation Plaintiff offers in lieu of competent evidence cannot suffice.

1. <u>State of Mind is Not Immune from Summary Judgment</u>

Plaintiff quotes the first half of the governing rule and, crucially, omits the second. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985), upon which Plaintiff relies, held in pertinent part that although "[q]uestions involving a person's state of mind … are generally factual issues inappropriate for resolution by summary judgment[,] … *where the palpable facts are substantially undisputed, such issues can become questions of law which may be properly decided by summary judgment*." *Id.* at 531 (emphasis added). Plaintiff's opposition includes only the first clause (Opp. at 12), but the portion Plaintiff omits is dispositive.

The Ninth Circuit has applied this principle to grant and affirm summary judgment on knowledge and intent. "[T]he existence of such questions, usually considered by the trier of facts, does not prevent use of summary judgment when the

requirements for summary judgment are nonetheless satisfied." *Gard v. United States*, 594 F.2d 1230, 1234 & n.2 (9th Cir. 1979) (affirming grant of summary judgment where undisputed facts failed to show requisite intent). Summary judgment on a party's state of mind is proper where "there is no rational basis in the record" for the requisite mental state. *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996). And the Supreme Court has "specifically rejected" the argument Plaintiff advances—that summary judgment is unavailable whenever "a person's state of mind" is at issue—holding that "even where [a party's] state of mind is at issue," the opponent must present *affirmative evidence* in order to defeat a properly supported summary judgment motion. *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 n.5 (9th Cir. 1995) (citing *Anderson*, 477 U.S. at 256); *see id.* at 365, 368 (explaining that nonmovant must make sufficient showing on all essential elements of its case with respect to which it has the burden of proof, and affirming grant of summary judgment based on absence of genuine dispute regarding requisite knowledge) (citing *Celotex Corp. v. Catrett*, 577 U.S. 317, 323 (1986)).

The question, then, is not whether knowledge and intent are "generally" jury issues. It is whether Plaintiff has come forward with significant probative evidence from which a reasonable jury could find that Elias Defendants actually knew Ramos was defrauding Plaintiff, and intended to assist in or perpetuate same. It has not.

2. <u>Plaintiff Cannot Build its Opposition on the Declarations it Asks the Court to Exclude</u>

Plaintiff's factual case is largely the declarations of Defendants Fadi Elias and Jennifer Pope. It calls them "some of Woodside's best evidence" (Opp at 6) and rests much of its argument on them—specifically, that Ramos said vehicle purchase prices were "intentionally inflated," that partial refunds were paid after each purchase, that certain payments were made to Mr. Elias and Ms. Pope personally, and that Classic Motors twice paid again for a vehicle it already owned. (*Id.* (citing Elias Decl. ¶¶ 7-9 [Dkt. 47-3]; Pope Decl. ¶¶ 6-8 [Dkt. 47-2]).) Yet Plaintiff filed objections challenging

the admissibility of those same declarations and, in its Statement of Genuine Disputes, repeatedly tags the identical paragraphs "Disputed (Credibility/Rule 56(d))." [Dkt. 52.] A litigant may not have it both ways. "[W]aiver of the objection … is indicated by … reliance on [the] testimony in [the] brief." *Wells v. J. C. Penney Co.*, 250 F.2d 221, 235 (9th Cir. 1957); *accord Ohler v. United States*, 529 U.S. 753, 755 (2000). By making the declarations the centerpiece of its opposition, Plaintiff waived its objections to them.

Having adopted the declarations, Plaintiff takes them as they are. The paragraphs Plaintiff quotes also establish—without contradiction from any competent evidence—that Ramos represented the arrangement for vehicle purchases and partial refunds was authorized by and known to Plaintiff, that Ramos represented that he coordinated the arrangement as part of his duties as Plaintiff's executive officer, and that Elias Defendants believed him. (Elias Decl. ¶¶ 7, 10; Pope Decl. ¶¶ 6, 9.) Plaintiff cannot embrace the fragments it likes and disown the rest of the same sworn declarations. Its answer to Elias Defendants' sworn declaration statements is argument, not evidence, and argument does not create a triable issue.

3. <u>Plaintiff's Circumstantial Case Does Not Support the Necessary Inference Regarding Knowledge</u>

The required knowledge element is, specifically, knowledge that Ramos was stealing from Plaintiff. Plaintiff's central argument is that Ramos told Elias Defendants the vehicle prices were "intentionally inflated," in part so Plaintiff could represent to its partner banks that the vehicles "were being sold at favorable prices." (Opp. at 13.) But that representation was about deceiving the *banks*, and Plaintiff concedes it "is not suing for the banks." (*Id.*) Knowledge that prices were inflated for the banks' consumption is not knowledge that Ramos was embezzling Plaintiff's money. Plaintiff's argument supplies the missing step by assertion, not evidence; contrary to Plaintiff's claim, a jury may *not* validly "infer that a dealer who knowingly joins a lender's officer in deceiving the lender's banks also understood that the officer

was not faithfully serving the lender" (*id.* at 14) when the only competent evidence shows the dealer was affirmatively led to believe the officer was acting in lockstep with, and at the direction of, the lender. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996); *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The nonmovant must present "affirmative evidence" rather than betting the jury will disbelieve the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (nonmovant must offer evidence "that tends to exclude the possibility" of the innocent explanation).

Plaintiff's "follow the money" catalog—the size, source, payees, timing of the payments, repeat payments, and resales (Opp. at 14)—establishes no genuine dispute, because each item is consistent with the arrangement Ramos described, detailed in Elias Defendants' declarations, which Plaintiff has adopted as its own evidence. (1) The size of the reimbursements are commensurate with the high values of the classic and luxury vehicles,[2] and with Ramos's representations regarding the vehicles' values and loan status (Pope Decl. ¶ 6; Elias Decl. ¶ 7); (2) the declarations explained that Ramos expressly represented that the source of the reimbursements was legitimate, as a contractor for Plaintiff (Pope Decl. ¶ 7; Elias Decl. ¶ 8); (3) the declarations swore that Elias Defendants have never learned definitively why certain reimbursement payments were made to Mr. Elias, and why one was made to Ms. Pope, directly (*id.*)[3]; (4) the timing is consistent with Ramos having already

---

[2] Although Elias Defendants separately object to Plaintiff's vehicle sales schedule, it purports to identify the vehicles' prices. (Neri Decl. Ex. J [Dkt. 53-9].)

[3] Plaintiff claims these sworn statements are inconsistent with an interrogatory response from Ms. Pope, which Plaintiff has also noted was unverified. (Opp. at 16; *see* Dkt. 37-1 at 9.) This purported inconsistency is wholly manufactured by Plaintiff. The referenced interrogatory response described only what Ms. Pope "came to

determined the reimbursement amounts at the times the vehicle purchases were arranged (*id.*); (5) acquiescing to requests for repeat payment had the "commercial purpose" (Opp. at 14) of maintaining goodwill with a business partner (Pope Decl. ¶ 8; Elias Decl. ¶ 9); and (6) reselling vehicles was a basic part of Elias Defendants' business (Pope Decl. ¶ 7; Elias Decl. ¶ 8), meaning such resales obviously had a "business justification" (Opp. at 14), notwithstanding Plaintiff's speculation regarding the resale prices.

Summary judgment is defeated only "where contradictory inferences may be drawn." *Braxton-Secret*, 769 F.2d at 531. And the evidence from which inferences favoring the non-movant must be "significantly probative"; "[t]he mere existence of a scintilla of evidence" cannot suffice. *Anderson*, 477 U.S. at 249-250, 252. Here culpable knowledge is not a competing reasonable inference; it is wholly speculation, and the undisputed facts foreclose it. Plaintiff contends Ramos concealed the scheme from Plaintiff itself until October 2024. (Opp. at 18; Trevisan Decl. ¶ 3 [Dkt. 54].) And no employee or officer of Woodside ever told Elias Defendants that anything about the transactions lacked Plaintiff's approval—a fact Plaintiff concedes is undisputed. (Plaintiff's Statement of Genuine Disputes and Additional Material Facts ("Plaintiff's Statement") [Dkt. 52] No. 30.) Elais Defendants cannot be charged as a matter of law with knowledge of fraud against Plaintiff—of which the undisputed evidence shows Elias Defendants were unaware—that Plaintiff's own controls did not detect for nineteen months.

Plaintiff's fallback, willful blindness, requires "deliberate actions to avoid learning" the truth. (Opp. at 15 (quoting *Global Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).) Plaintiff identifies none. That Elias Defendants dealt with the executive officer Plaintiff itself designated for repossession sales and were paid

---

understand," based on inference, regarding the reason this payment was made to her; it did not state that she in fact knew the reason, or that Ramos had actually explained it. (Neri Decl. Ex. F [Dkt. 53-6] at 7.)

from an account bearing Plaintiff's name is the opposite of deliberate avoidance. And that Elias Defendants accepted Ramos's representation that the refund payments, including their source, was known to and at the behest of Plaintiff (Pope Decl. ¶ 9; Elias Decl. ¶ 10) does nothing to show—even circumstantially—that Elias Defendants believed otherwise, or took deliberate action to avoid learning otherwise. Finally, the "four vehicles" and undisclosed resale profits (Opp. at 15) are makeweight: they do nothing to support the knowledge theory advanced by Plaintiff, and Plaintiff offers no evidence that Elias Defendants knew any of those transactions was unauthorized. Indeed, the undisputed evidence shows that Elias Defendants paid for the vehicles that they received. (Pope Decl. ¶¶ 6-9; Elias Decl. ¶¶ 7-10.) That Ramos may have embezzled the entirety of Elias Defendants' payments for these four vehicles, unbeknownst to them, and not covered his tracks for Plaintiff, does nothing to show that Elias Defendants were aware of his embezzlement.

4. Plaintiff's Attacks on the Declarations Do Not Manufacture a Dispute

Plaintiff's remaining points do not supply the missing evidence.

*Interested witnesses:* Plaintiff argues that courts disregard evidence "the jury is not required to believe," quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000). (Opp. at 16.) But the rule from *Reeves*, which addressed a posttrial motion for judgment notwithstanding the verdict, lets a *jury* decline to credit testimony; it does not permit a court to deny summary judgment where the movant's account is uncontradicted by competent evidence. *See* 530 U.S. 149-54. Plaintiff offers only inferences, and has adopted Elias Defendants' declarations as its proof.

*Claimed impeachment:* The discovery responses Plaintiff cites are not contradictions at all, and Plaintiff's suggestion that they are is misleading at best. In the identified responses to Plaintiff's request for admission, Mr. Elias and Classic Motors responded simply that they were "unable to admit or deny [the] Request as phrased, and on that basis denie[d]" it. (Opp. at 16 (citing Neri Decl. Ex. A [Dkt. 53-1], No. 8; Ex. B [Dkt. 53-2], No. 19).) A denial of a vague and ambiguous request for

admission based on an inability to answer is not a sworn statement that Ramos said nothing about Plaintiff's knowledge or intentions regarding the transactions and does not contradict the declarations. Ms. Pope's discovery responses (in which she merely stated what she "came to understand" based on inference, not that Ramos ever directly "explained" the reason for the check to her) and her declaration are consistent—both are that Ramos never gave her a clear explanation for her check. A manufactured conflict is not probative evidence of knowledge.

*Rule 37:* Plaintiff's suggestion that Elias Defendants' declarations be disregarded as "untested" or undisclosed (Opp. at 16) is meritless. Nearly all of information in them was already averred in Plaintiff's complaint. To the extent any of the information was not disclosed, it was based on Elias Defendants' objections to Plaintiff's improper discovery requests, objections which Plaintiff apparently accepted for months, as detailed in Elias Defendants' opposition to Plaintiff's motion to reopen discovery [Dkt. 46], such that any undisclosed details were "substantially justified" and likely harmless in light of Plaintiff's extended acceptance thereof. Fed. R. Civ. P. 37(c)(1). And Plaintiff is in no position to press this point while asking the Court to credit its own inadmissible schedules (Neri Decl. Exs. J-K), which are simply summaries of records that were not produced until long after the discovery cutoff, immediately before Plaintiff filed its reply in support of its belated request to reopen discovery, in order to correct Plaintiff's prior false representation to this Court regarding having timely produced the records during the discovery period. [*See* Dkt. 48 at 5; 48-1 ¶¶ 3-4.]

Because the material facts bearing on knowledge and intent permit only one reasonable inference—Elias Defendants' innocent understanding—this is precisely the kind of case in which state of mind "become[s] [a] question[] of law" amenable to summary judgment. *Braxton-Secret*, 769 F.2d at 531. Because there is "no rational basis in the record" to find that Elias Defendants knew Ramos was defrauding Plaintiff, *Provenz*, 102 F.3d at 1490, summary judgment must be granted.

**C. Plaintiff's Agency Authorities Turn on Elias Defendants' Knowledge and Provide No Basis to Deny the Motion**

Plaintiff suggests the motion argued Ramos's title alone—his status as Plaintiff's executive officer—automatically makes his conduct Plaintiff's, regardless of what Elias Defendants knew. Not so. Rather, the motion argued only that this is what Elias Defendants understood, based on Ramos's affirmative representations to them regarding Plaintiff's intentions and business practices, such that Elias Defendants lacked knowledge of, and intent to further, any fraud on Plaintiff. Every authority Plaintiff identifies on this issue depends upon the third party's own knowledge, suspicion, or collusion. Each therefore rises or falls with Elias Defendants' knowledge, and none supplies a reason to deny summary judgment.

1. <u>Plaintiff's Statutes Condition their Rules on the Dealer's Knowledge</u>

Plaintiff relies on Civil Code § 2306, under which an agent "can never have authority, either actual or ostensible, to do an act which is, and is known or suspected by the person with whom he deals, to be a fraud upon the principal." Cal. Civ. Code § 2306. By its terms, the rule operates only where the fraud "is known or suspected by the person with whom [the agent] deals." *Id.* When a dealer did not know or suspect the agent was defrauding the principal—which is Plaintiff's burden to prove—§ 2306 does not apply. And as explained, Plaintiff has no competent evidence that Elias Defendants knew or suspected Ramos was defrauding Plaintiff. To the extent § 2306 bears at all, it confirms that a dealer without such knowledge retains the protection the statute withholds only from the knowing. *See* Cal. Civ. Code §§ 2330, 2332.

Section 2334 is the same. A principal is bound by an agent's ostensible authority "to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof." Cal. Civ. Code § 2334. That provision protects the good-faith dealer; it is not a weapon against one. It, too, turns entirely on Elias Defendants' good faith—the disputed issue Plaintiff must, but cannot, prove.

2. Ostensible Authority Rests on the Principal's Acts, and Plaintiff Placed Ramos in His Role

Plaintiff invokes *Preis v. American Indemnity Co.*, 220 Cal. App. 3d 752, 761 (1990), for the rule that "[o]stensible authority must be established through the acts or declarations of the principal and not the acts or declarations of the agent." That principle does not help Plaintiff; it helps Elias Defendants. Plaintiff itself, through its loan representative Scott Steckel, identified Ramos as the officer in charge of repossession sales and introduced Mr. Elias to him. (Plaintiff's Statement Nos. 9-10.) *Preis* held that "where the principal knows that the agent holds himself out as clothed with certain authority, and remains silent, such conduct on the part of the principal may give rise to liability," and that a principal's "act of placing [the agent] in such a position" can cause a third party to believe the agent had authority. 220 Cal. App. 3d at 761, 763. Plaintiff placed Ramos in precisely that position and does not dispute he was its officer or charged with repossession sales for Plaintiff. That makes Elias Defendants' reliance reasonable; it is no basis for denying summary judgment.

Plaintiff's non-imputation authorities are either irrelevant or inapposite for the same reason: Each applies only where the third party was a knowing participant in the officer's fraud. *See Meyer v. Glenmoor Homes, Inc.*, 246 Cal. App. 2d 242, 264-65 (1966) (holding "[a] corporation is not chargeable with the knowledge of an officer who collaborates with an outsider to defraud it," but presupposing that in such circumstances the officer's "confederate" has the same "knowledge" as the officer); *Sands v. Eagle Oil & Ref. Co.*, 83 Cal. App. 2d 312, 319-20 (1948) (explaining that exception applies only "if the agent and the third party act in collusion against the principal" and where "the third party knows that the agent will not advise the principal," and that imputation rule is intended to protect those who exercise good faith); *Saks v. Charity Mission Baptist Church*, 90 Cal. App. 4th 1116, 1138-42 (2001) (applying exception where lender admitted he "acquiesced in a scheme" and "knowingly participated" in officer's fraud). Accordingly, Plaintiff cannot claim the

benefit of the non-imputation rule without first proving that Elias Defendants knowingly collaborated with Ramos to defraud Plaintiff, which the record does not support.

3. Plaintiff's Framing Confirms that Ramos's Position is Relevant

Plaintiff acknowledges that "Ramos's title helps Elias Defendants only if they dealt with him in good faith and without suspicion," and that "[w]hether they did is the disputed fact." (Opp. at 18.) But that purportedly "disputed fact" is simply the same knowledge question addressed above. Because Plaintiff's arguments regarding Ramos's title and position reduce to the same inquiry, they have no separate bearing on the motion, because no competent evidence creates a genuine dispute as to Elias Defendants' knowledge.

Plaintiff's rejoinder that no official for Plaintiff warned Elias Defendants only because Ramos "hid the scheme from Woodside until October 2024" (*id.*) cuts in Elias Defendants' favor. It is undisputed that no employee or officer for Plaintiff ever told Elias Defendants that anything about the transactions lacked Plaintiff's approval, contrary to Ramos's undisputed affirmative representations to Elias Defendants. (Plaintiff's Statement No. 30.) A fraud that Plaintiff's own controls did not detect for nineteen months cannot be charged, as a matter of law, to an outside dealer; the concealment by Ramos that Plaintiff describes is affirmative confirmation that Elias Defendants had no reason to suspect what Plaintiff itself did not. Thus, Plaintiff's argument on these points provides no ground to deny summary judgment.

**D. Each Claim Fails on the Same Missing Element: Actual Knowledge**

Plaintiff's claim-by-claim arguments do not establish any genuine dispute as to whether Elias Defendants had the requisite knowledge or intent necessary for Plaintiff to prove its claims. Aiding and abetting, conspiracy, fraudulent concealment, and RICO each require that Elias Defendants actually knew Ramos was defrauding Plaintiff, or agreed to and adopted that object. Plaintiff's circumstantial case establishes merely that Elias Defendants understood the stated prices were inflated for

the partner banks' consumption, which Elias Defendants themselves acknowledged. Under the authorities Plaintiff cites, that is not the knowledge any of these claims require.

1. Aiding and Abetting Fraud and Breach of Fiduciary Duty (Second and Fifth Claims)

Aiding and abetting under California law "requires a finding of 'actual knowledge' and 'substantial assistance.'" *In re First All. Mortg. Co.*, 471 F.3d 977, 989 (9th Cir. 2006). The knowledge prong is exacting: The defendant must have "actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005); *accord Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1475 (2014); *Upasani v. State Farm Gen. Ins. Co.*, 227 Cal. App. 4th 509, 519 (2014). The elements require the defendant's "actual knowledge" of the breach. *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014).

The authority Plaintiff's opposition addresses forecloses its theory. *Casey* held that a party's knowledge of suspicious activities—even money laundering—without more, does not give rise to tort liability; the plaintiff must show the defendant "knew the [fiduciaries] were stealing corporate funds and knowingly assisted" the wrong. 127 Cal. App. 4th at 1151. Knowledge that "something fishy was going on" is not enough. *Id.* at 1149. "[S]uspicion and surmise do not constitute actual knowledge," and the fact that prices were inflated "does not necessarily mean" the counterparty knew funds were being stolen. *Id.* at 1147. That is this case: Elias Defendants were told the stated prices were inflated for *the banks*, but Plaintiff has no evidence that they knew Ramos was diverting Plaintiff's money to pay the "refunds."

The specific-intent debate Plaintiff raises does not save these claims. Whether or not a "conscious decision to participate … for the purpose of assisting" is a separate element—and it remains part of the independent-tort theory Plaintiff presses, *Am. Master Lease LLC*, 225 Cal. App. 4th at 1477—the dispute is beside the point. The

threshold actual-knowledge element is indispensable under either view and is absent here. Plaintiff's argument about substantial assistance fares no better: Purchasing vehicles Plaintiff offered for sale, on terms Ramos set as Plaintiff's executive officer, is ordinary arm's-length commerce, not knowing assistance to embezzlement.

2. Conspiracy (Third Claim)

Civil conspiracy requires that the defendant "have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995); *accord Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 785 (1979). "The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective." *Upasani*, 227 Cal. App. 4th at 515.

Plaintiff leans on the rule that agreement "may be inferred" and claims that the reimbursement payments to Elias Defendants show "a meeting of the minds." Like many of Plaintiff's other arguments, this is mere assertion and conjecture—Elias Defendants have sworn to their innocent understanding of the arrangement, based on Ramos's affirmative representations to them, and the division of the reimbursement payments does nothing to show Elias Defendants knew Ramos was lying. Moreover, even "actual knowledge of the planned tort"—if it could be shown, which it cannot—"without more, is insufficient," *Kidron*, 40 Cal. App. 4th at 1582, and "mere knowledge, acquiescence, or approval of an act, without cooperation or agreement to cooperate is insufficient to establish liability," *id.* (quoting *Michael R. v. Jeffrey B*, 158 Cal. App. 3d 1059, 1069 (1984)). A party that does legitimate business with a wrongdoer is not a co-conspirator; "[t]o be a conspirator one must share a common purpose with another, not merely suspect or have knowledge of the other's own private purpose." *Id.* at 1590-91. As explained, the reimbursement payments are equally consistent with the reimbursement arrangement Ramos described and that Plaintiff itself relies on; they are not evidence of an agreement to defraud Plaintiff.

3. <u>Fraudulent Concealment (First Claim)</u>

A fraudulent-concealment claim requires "a defendant with a duty to disclose the fact" and an intent "to defraud the plaintiff by intentionally concealing." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 40 (2024). Elias Defendants were arm's-length buyers; they owed Plaintiff no duty to disclose Ramos's misconduct (which they were affirmatively led by Ramos to believe *was not* misconduct), and Plaintiff identifies none of the recognized triggers establishing a duty. *See id.* The claim also requires intent to defraud—the same knowledge Plaintiff cannot establish.

Plaintiff's fallback that Elias Defendants "answer for Ramos's concealment as his aiders and abettors" (Opp. at 21) does not avoid the problem. Aiding and abetting "has no overlaid requirement of an independent duty," *Am. Master Lease LLC*, 225 Cal. App. 4th at 1475, but it does require actual knowledge of the primary wrong, *Casey*, 127 Cal. App. 4th at 1148, which is absent here for the reasons stated above.

4. <u>RICO (Sixth and Seventh Claims)</u>

Plaintiff's RICO theory founders on the same missing knowledge, at two independent points.

*Conduct of the enterprise (§ 1962(c)):* Liability requires participation in the "operation or management" of the enterprise; "simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO." *Baumer v. Pachl*, 8 F.3d 1341, 1344-45 (9th Cir. 1993) (alteration adopted). A defendant must also "know the general nature of the enterprise and know that the enterprise extends beyond his individual role." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015). In *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138 (C.D. Cal. 2016), the court granted summary judgment on similar facts, where a defendant who funded the enterprise entities and "benefitted from his involvement" still could not be held liable, because providing funding and receiving benefits neither "direct[s]" the enterprise nor shows the defendant "knew 'the general nature of the enterprise.'" *Id.* at 1165-66. Elias Defendants did less—they bought

vehicles and received payments. That is not operation, management, or knowledge of an enterprise.

*RICO conspiracy (§ 1962(d)):* A conspirator must "adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997). "[M]ere association with the enterprise" is not enough; an individual must agree to participate in the affairs of the enterprise, and must be "aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer*, 8 F.3d at 1346-47 (citations omitted). Plaintiff offers no evidence that Elias Defendants agreed to further a scheme to steal from Plaintiff.

*Common purpose / ordinary commerce:* Courts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises. *See, e.g.*, *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046 (C.D. Cal. 2016). A group whose members are "associated in a manner directly related to their own primary business activities" is not an enterprise bound by a common unlawful purpose. *Id.* at 1056-57. Rather, to show a common purpose, a plaintiff must show "that the group engaged in enterprise conduct distinct from their own affairs," *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1173 (E.D. Cal. 2017); conduct "consistent with ordinary business conduct and an ordinary business purpose" does not suffice, *id.* at 1175 (citation omitted). And a putative member who lacks "knowledge of the … predicate" fraud is not part of the enterprise or the conspiracy. *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1077 (N.D. Cal. 2018); *see id.* (arm's-length legitimate dealings defeat the § 1962(d) theory); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 981 (N.D. Cal. 2018) ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client"). Elias Defendants' vehicle purchases were conducted as part of their

own ordinary business. Willful blindness, even if it could be shown, would be no substitute for the agreement § 1962(d) demands.

**E. Plaintiff's Summaries of Records Not Timely Produced Do Not Carry Its Burden at Summary Judgment**

Plaintiff's "follow the money" case depends on its schedules of vehicle sales and reimbursement payments (Neri Decl. Exs. J-K), and Plaintiff has not shown those schedules' contents are admissible. Unverified summaries of records that Plaintiff never produced during discovery cannot create a genuine dispute.

1. The Schedules are Rule 1006 Summaries Whose Foundation Plaintiff Has Not Laid

On summary judgment, the question is whether "the contents of a document can be presented in a form that would be admissible at trial." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (citing Fed. R. Civ. P. 56(c)(2)). Exhibits J and K are not themselves the underlying evidence; they are summaries "offered to prove the content of voluminous … writings"—the bank and business records of the sales and payments. Fed. R. Evid. 1006. A Rule 1006 summary is admissible only if the proponent timely "make[s] the underlying originals or duplicates available for examination or copying" by the opposing party, and the underlying materials are themselves admissible. *See id.* Where a party "fails to make available materials underlying a summary exhibit, that summary exhibit is inadmissible." *Id.*

Plaintiff has not satisfied that requirement. It concedes it produced no documents before the discovery cutoff and produced its records only on September 10, 2026, and it supports the schedules with a single conclusory declaration by an officer, Brian Trevisan, reciting a total. (Trevisan Decl. ¶ 8.) It has not identified or put before this Court any authenticated underlying bank records establishing the entries on which its payment-related inferences (the claimed "seventy-nine percent" reimbursement rate, the payment "timing," the "round numbers") depend. On this

record, the schedules' contents are not shown admissible and cannot supply the evidence Plaintiff needs.

2. <u>The Exclusion Framework Plaintiff Invokes Does Not Change the Result</u>

Although Rule 37(c)(1)'s automatic-exclusion sanction is subject to exceptions—the failure to timely disclose records may be excused if "substantially justified or harmless," with the burden on the non-disclosing party, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012)—where exclusion would be case-dispositive, a court must weigh willfulness, *see R & R Sails, Inc.*, 673 F.3d at 1247-48. Here, where Plaintiff's counsel acknowledged, long after the discovery deadline and well before the ultimate production, that Plaintiff's records had not been produced [*see* Dkt. 46-1 ¶ 11], willful non-production is apparent. As Elias Defendants argued in their opposition to Plaintiff's belated motion to reopen discovery, the only plausible explanation for Plaintiff's admitted knowing non-production was that "Plaintiff determined to respond to Elias Defendants' non-production simply by withholding its own document production." [Dkt. 46 at 9.] Exclusion under Rule 37(c)(1) is therefore proper. *See R & R Sails, Inc.*, 673 F.3d at 1247-48.

Even without any exclusion order, it is Plaintiff's burden to come forward with admissible evidence, and unauthenticated summaries of untimely produced records do not meet it. The schedules do not supply the missing knowledge element necessary to prove Plaintiff's claims. However they are treated, they are silent on Elias Defendants' state of mind, and they cannot create a triable issue on knowledge for the reasons stated above.

**F. Plaintiff Is Not Entitled to a Rule 56(d) Continuance**

A party seeking to defer summary judgment under Rule 56(d) must show "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to

oppose summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). It must also have "diligently … pursue[d] discovery" already available to it. *Id.* at 827-28 (citation omitted). Plaintiff's request fails in multiple respects: The discovery it seeks would not preclude summary judgment, the knowledge it actually needs is the object of pure speculation, and Plaintiff did not diligently pursue the discovery it now calls essential.

1. The Knowledge Plaintiff Actually Needs Is the Object of Pure Speculation

The one fact that could matter—Elias Defendants' knowledge—Plaintiff proposes to pursue by deposing them in the hope that cross-examination will impeach their declarations. That is not a Rule 56(d) showing. "[T]he evidence sought must be more than 'the object of pure speculation,'" *Stevens*, 899 F.3d at 678 (citation omitted), and denial is proper where it is clear that the evidence sought "is the object of pure speculation," *State of Cal., on Behalf of California Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779-80 (9th Cir. 1998). Plaintiff proffers no "basis for believing that the information sought actually exists," *Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d at 1129; it merely speculates that testing the declarants will yield an admission of the knowledge they have sworn they lacked. "A request at that level of generality"—a bare assertion that discovery will reveal the requisite "mental state"—"is insufficient for Rule 56(d) purposes." *Stevens*, 899 F.3d at 678-79. Rule 56(d) is not a license to depose an opponent in search of a triable issue that the existing record does not support.

2. Plaintiff Did Not Diligently Pursue the Discovery It Now Calls Essential

A court "does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past." *Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund*, 353 F.3d at 1130; *see Fam. Home & Fin. Ctr., Inc.*, 525 F.3d at 828 (no relief where a party "fails diligently to pursue discovery before

summary judgment," including by failing to file "timely motions to compel and extend discovery") (citation omitted).

That is the case here. As explained at length in Elias Defendants' opposition to Plaintiff's motion to reopen discovery [*see* Dkt. 46], Plaintiff served written discovery but never moved to compel the document production it says it was owed or noticed Elias Defendants' depositions, despite now claiming both are "essential." Nor was Elias Defendants' document production actually a prerequisite to Plaintiff noticing their depositions during the discovery period. Plaintiff's single step, a motion to modify the schedule filed months after the cutoff, does not substitute for the diligence Rule 56(d) requires. And to the extent Plaintiff bases its request on Elias Defendants' written discovery responses, those do not excuse Plaintiff's omission; the remedy for an unmet document request is a motion to compel, which Plaintiff never filed. *See Fam. Home & Fin. Ctr., Inc.*, 525 F.3d at 825; Dkt. 46 at 9 (collecting cases).

## III. CONCLUSION

Because Plaintiff has established no genuine dispute of material fact as to any of its claims against Elias Defendants, each claim against Elias Defendants fails as a matter of law and summary judgment must be granted.

DATED: September 24, 2026 LAW OFFICES OF DALE K. GALIPO

By */s/ Benjamin S. Levine*
Dale K. Galipo
Benjamin S. Levine
*Attorneys for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

**CERTIFICATION OF COMPLIANCE WITH WORD LIMIT (L.R. 11-6.1)**

The undersigned, counsel of record for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc., certifies that this brief contains 6,907 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 24, 2026 LAW OFFICES OF DALE K. GALIPO

By *\/s/ Benjamin S. Levine*
Dale K. Galipo
Benjamin S. Levine
*Attorneys for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

**DECLARATION OF BENJAMIN S. LEVINE PURSUANT TO CIVIL STANDING ORDER § VIII(h)**

I, Benjamin S. Levine, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California, and the Central District of California. I make this declaration pursuant to Section VIII(h) of the Court's Standing Order. I have personal knowledge of the facts contained herein.

2. Generative artificial intelligence was used to assist in preparing portions of the foregoing Reply, and the Response to Statement of Genuine Disputes and Additional Material facts and Evidentiary Objections filed with it.

3. I have reviewed the source material on which those filings rely, and I have verified that the content generated with the assistance of artificial intelligence is accurate and complies with my obligations under Federal Rule of Civil Procedure 11.

I declare under penalty of perjury of the laws of the United States of America, that the foregoing is true and correct. Executed on September 24, 2026, at Woodland Hills, California.

*/s/ Benjamin S. Levine*
Benjamin S. Levine