**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333 / Facsimile: (818) 347-4118
*Attorneys for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WOODSIDE CREDIT, LLC, a California limited liability company,

Plaintiff,

v.

ALEXANDER G. RAMOS, an individual; FADI ELIAS, an individual; JENNIFER POPE, an individual; CLASSIC MOTORS, INC., an Arizona business entity; and DOES 1 through 20, inclusive,

Defendants.

Case No. 8:25-cv-02146-FWS-JDE

*Honorable Fred W. Slaughter*

**DEFENDANTS FADI ELIAS, JENNIFER POPE, AND CLASSIC MOTORS, INC.'S RESPONSE TO PLAINTIFF WOODSIDE CREDIT, LLC'S STATEMENT OF GENUINE DISPUTES AND ADDITIONAL MATERIAL FACTS**

[*Filed concurrently with Elias Defendants' Reply in Support of Motion for Summary Judgment or Adjudication; Objections to Evidence; and (Proposed) Order*]

Date: October 15, 2026
Time: 10:00 a.m.
Courtroom: 10A

Action filed: September 22, 2025

**TO THIS HONORABLE COURT AND PLAINTIFF AND ITS COUNSEL OF RECORD:**

Pursuant to Civil Local Rule 56-3 and the Court's Standing Order, Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc. submit their Response to Plaintiff Woodside Credit, LLC's Statement of Genuine Disputes and Additional Material Facts in support of their Motion for Summary Judgment or Adjudication.

## PART I. RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Elias Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|
| **1.** Defendant Fadi Elias is, and at all relevant times was, the founder, owner, and president of Classic Motor, Inc.<br>*Supporting Evidence:* Elias Decl. ¶ 1; Pope Decl. ¶ 1. | **1.** Undisputed. |
| **2.** Classic Motor, Inc. is a specialty vehicle dealer engaged in the business of buying and selling classic and other collector cars.<br>*Supporting Evidence:* Elias Decl. ¶ 2; Pope Decl. ¶ 2. | **2.** Undisputed. |
| **3.** Defendant Jennifer Pope is Fadi Elias's wife.<br>*Supporting Evidence:* Elias Decl. ¶ 1; Pope Decl. ¶ 1. | **3.** Undisputed. |
| **4.** Jennifer Pope assists with tasks related to the management of Classic Motor, Inc.<br>*Supporting Evidence:* Elias Decl. ¶ 3; Pope Decl. ¶ 3. | **4.** Undisputed. See also AMF 49. |
| **5.** Jennifer Pope is an employee but not an officer of Classic Motor, Inc.<br>*Supporting Evidence:* Elias Decl. ¶ 3; Pope Decl. ¶ 3. | **5.** Undisputed for purposes of this motion. |
| **6.** Classic Motor, through Mr. Elias, worked with Plaintiff for many years prior to 2021, during which time Plaintiff was Classic Motor's preferred lender for vehicle transactions that required financing.<br>*Supporting Evidence:* Elias Decl. ¶ 4. | **6.** Undisputed for purposes of this motion that Classic Motors did business with Woodside before 2021. Which lender Classic Motors |

| | |
|---|---|
| | "preferred" is immaterial. |
| **7.** In 2021, Mr. Elias spoke to Scott Steckel, who was then the loan representative for Plaintiff working with Classic Motor.<br>*Supporting Evidence:* Elias Decl. ¶ 4. | **7.** Undisputed for purposes of this motion. |
| **8.** Mr. Elias expressed interest to Scott Steckel in Classic Motor becoming eligible to purchase vehicles that were the subject of delinquent loans and were consequently repossessed and put up for sale by Plaintiff.<br>*Supporting Evidence:* Elias Decl. ¶ 4. | **8.** Undisputed for purposes of this motion. |
| **9.** Mr. Steckel advised Mr. Elias that Alexander Ramos was the officer for Plaintiff in charge of sales and repossessed vehicles.<br>*Supporting Evidence:* Elias Decl. ¶ 5. | **9.** Undisputed for purposes of this motion. |
| **10.** Mr. Steckel introduced Mr. Elias to Ramos.<br>*Supporting Evidence:* Elias Decl. ¶ 5. | **10.** Undisputed for purposes of this motion. |
| **11.** Mr. Elias and Ms. Pope were informed and understood that Ramos was an executive officer for Plaintiff, specifically its Vice President for Title and Risk Management.<br>*Supporting Evidence:* Elias Decl. ¶ 5; Pope Decl. ¶ 4. | **11.** Undisputed that the Elias Defendants knew Ramos was employed by Woodside and held the title Assistant Vice President, Title & Risk Manager. (AMF 50.) Disputed to the extent the fact implies that Ramos had authority to arrange the transactions described in SUF 14-27. (Cal. Civ. Code §§ 2306, 2334; AMF 32-34.) |
| **Elias Defendants' Reply to Genuine Dispute No. 11:** Elias Defendants' Uncontroverted Fact ("UF") 11 states only what Mr. Elias and Ms. Pope understood—that Ramos was Plaintiff's executive officer, Vice President for | |

| | |
|---|---|
| Title and Risk Management. UF 11 does not assert that Ramos possessed actual authority to arrange the transactions, so Plaintiff's "dispute" regarding Ramos's authority is a non sequitur. Ramos's actual authority, as opposed to what Elias Defendants understood his authority to be, is immaterial. In any event, a principal is liable for the ostensible authority with which it clothes its officer, and an executive's title and position support a third party's reasonable belief in his authority. Cal. Civ. Code §§ 2306, 2334; *Preis v. Am. Indem. Co.*, 220 Cal. App. 3d 752, 761 (1990).<br><br>*Supporting Evidence:* Elias Decl. ¶ 5; Pope Decl. ¶ 4. | |
| **12.** Following Mr. Elias's introduction to Ramos, Ramos began to facilitate the sale of repossessed vehicles to Classic Motor, on behalf of Plaintiff or its partner banks.<br>*Supporting Evidence:* Elias Decl. ¶ 6. | **12.** Undisputed that Ramos handled sales of repossessed vehicles to Classic Motors. Disputed that, in arranging sales on the terms described in SUF 14-27, Ramos acted "on behalf of Plaintiff or its partner banks." The payments to the Elias Defendants were made at Ramos's direction out of funds he diverted from Woodside, and the motion itself describes Ramos's conduct as a "scheme to steal from Plaintiff." (AMF 32-34; Mot. at 2.) See Evidentiary Objection No. 4. |
| **Elias Defendants' Reply to Genuine Dispute No. 12:** UF 12 describes the sales as Ramos represented them and as Elias Defendants understood them—"on behalf of Plaintiff or its partner banks." Whether Ramos was in fact faithful to Plaintiff concerns Ramos's conduct, not Elias Defendants' knowledge or intent. Ramos's actual authority, as opposed to what Elias Defendants understood his authority to be, is immaterial. In any event, a principal is liable | |

| | |
|---|---|
| for the ostensible authority with which it clothes its officer, and an executive's title and position support a third party's reasonable belief in his authority. Cal. Civ. Code §§ 2306, 2334; *Preis v. Am. Indem. Co.*, 220 Cal. App. 3d 752, 761 (1990).<br><br>*Supporting Evidence:* Elias Decl. ¶ 6; Pope Decl. ¶ 5. | |
| **13.** In facilitating the vehicle sales, Ramos would notify Mr. Elias, or Mr. Elias and Ms. Pope, that a particular vehicle Plaintiff had repossessed was being made available for purchase, and would provide them with details including the vehicle's make, model, year, and mileage, as well as a purchase price.<br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | **13.** Undisputed for purposes of this motion that Ramos communicated with Mr. Elias and Ms. Pope about vehicles and prices. The content of those communications is known only to the Elias Defendants and Ramos; the Elias Defendants refused to describe them in discovery and have produced none of them. (AMF 60, 62; Neri Decl. ¶¶ 5-6, 13.) Fed. R. Civ. P. 56(d). |
| **Elias Defendants' Reply to Genuine Dispute No. 13:** Plaintiff's response, aside from the "undisputed" portion, constitutes a discovery grievance, not a basis for any genuine dispute of fact. The Rule 56(d) label adds nothing. The Neri declaration identifies no evidence that the represented facts are untrue. A lack of production of documents does not controvert a party's sworn description of them.<br><br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | |
| **14.** Ramos stated and represented that these purchase prices were intentionally inflated as part of a business determination by Plaintiff.<br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | **14.** Undisputed that the Elias Defendants knew the stated purchase prices were "intentionally inflated." (Elias Decl. |

| | |
|---|---|
| | ¶ 7; Pope Decl. ¶ 6.) Disputed (Credibility/Rule 56(d)). Woodside disputes that Ramos represented the inflated prices to be "a business determination by Plaintiff," and disputes that the Elias Defendants believed any such representation. The "refund" payments were made at Ramos's direction out of funds he diverted from Woodside. (AMF 33.) Mr. Elias and Classic Motors denied a request to admit a statement by Ramos on this subject. (AMF 55.) See Evidentiary Objection Nos. 1, 6. |
| **Elias Defendants' Reply to Genuine Dispute No. 14:** Plaintiff's "dispute" over whether Ramos attributed the inflation to a business determination by Plaintiff, and whether Elias Defendants believed him, rests solely on "credibility," not evidence. Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. The request for admission Plaintiff cites (AMF 55) denied a differently worded statement about the partner banks and does not contradict the declarations.<br><br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | |
| **15.** Ramos stated and represented that, after Classic Motor or Mr. Elias on its behalf made the requested payment, Classic Motor or Mr. Elias on its behalf would | **15.** Disputed (Credibility/Rule 56(d)). The payments |

| | |
|---|---|
| be reimbursed for the amount by which Ramos, on Plaintiff's behalf, determined they had overpaid.<br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | do not correspond to any determination of an "overpayment": they average more than $67,000 per vehicle and total 79 percent of the stated prices on Woodside's schedule, outnumber the purchases forty-eight to twenty-one, are mostly round numbers, and in some instances precede the purchase. (AMF 37-40, 44-46.) They were made at Ramos's direction out of funds he diverted from Woodside. (AMF 33.) See Evidentiary Objection Nos. 1, 6. |
| **Elias Defendants' Reply to Genuine Dispute No. 15:** Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. Plaintiff's claims about the size, number, rounding, and timing of the payments (AMF 37-40, 44-46) are argument; they do not contradict the declarants' account of what Ramos represented. AMF 37-40 and 44-46 rest on Plaintiff's schedules, Exhibits J and K, to which Elias Defendants object. *See* Elias Defendants' Evidentiary Objection Nos. 9-12. Plaintiff's list of circumstantial "inferences" is conjecture, not evidence.<br><br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | |
| **16.** Ramos stated and represented to Mr. Elias and Ms. Pope that the reason for Plaintiff's inflated requested purchase prices was sometimes to resolve Plaintiff's internal accounting issues and other times to attempt to improve Plaintiff's relationships with its partner banks by representing to the banks that the repossessed vehicles were being sold at favorable prices that were | **16.** Undisputed that the Elias Defendants knew that a purpose of the inflated prices was to represent to the Partner Banks that the vehicles were |

| | |
|---|---|
| near to or greater than the balance owed on the delinquent loan.<br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | being sold at higher prices. (Elias Decl. ¶ 7; Pope Decl. ¶ 6; AMF 56.) Disputed (Credibility/Rule 56(d)). Woodside disputes that this was Woodside's purpose or practice (AMF 32-34) and disputes that the Elias Defendants believed it was. In May 2026, Mr. Elias and Classic Motors denied that Ramos told them Woodside wanted the Partner Banks to believe vehicles were selling for higher prices. (AMF 55.) See Evidentiary Objection Nos. 1, 6. |
| **Elias Defendants' Reply to Genuine Dispute No. 16:** Whether this was in fact Plaintiff's purpose or practice, as opposed to whether Elias Defendants understood and believed this to be Plaintiff's purpose or practice based on Ramos's representations, is immaterial. Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. The request for admission Plaintiff cites (AMF 55) was worded differently from UF 16 and does not contradict the declarations.<br><br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | |
| **17.** During all of Ramos's communications with Mr. Elias, or with Mr. Elias and Ms. Pope, Ramos continually and consistently represented that the arrangement for the purchase of vehicles that he proposed, and for the subsequent partial reimbursement of overpayment for the vehicles to Classic Motor, was known to and desired by Plaintiff, and that Ramos was coordinating the transactions in this manner in his | **17.** Disputed (Credibility/Rule 56(d)). The testimony identifies no date or medium of any communication and attaches none. Woodside discovered |

| | |
|---|---|
| capacity and as part of his responsibilities as an executive officer for Plaintiff.<br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | Ramos's scheme in October 2024 and reported it as a theft. (AMF 34.) See Evidentiary Objection Nos. 1, 3, 6. |
| **Elias Defendants' Reply to Genuine Dispute No. 17:** Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. That the declarations do not attach the communications goes to weight, but does not bear on whether a genuine dispute exists, and does not controvert Elias Defendants' sworn statements that Ramos consistently represented the transactions as known to and desired by Plaintiff. Plaintiff's October 2024 discovery of Ramos's theft (AMF 34) concerns Ramos's conduct, not Elias Defendants' contemporaneous understanding.<br><br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | |
| **18.** For a given repossessed vehicle for which Ramos was arranging a sale to Classic Motor, which Ramos represented was on Plaintiff's behalf, after Ramos informed Mr. Elias (or Mr. Elias and Ms. Pope) of the purchase price and the expected reimbursement amount for the intended overpayment, and after Mr. Elias agreed to purchase the vehicle, Mr. Elias, or Ms. Pope at his direction, would issue payment from Classic Motor to an account designated by Ramos.<br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | **18.** Disputed (Credibility/Rule 56(d)). The Elias Defendants have produced no record of any payment, identify no account, and refused to answer interrogatories about their payments and bank accounts. (AMF 60, 62-64.) For four vehicles, no sale proceeds reached Woodside or any Partner Bank. (AMF 52-54.) |
| **Elias Defendants' Reply to Genuine Dispute No. 18:** Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. Plaintiff's references to document production and interrogatories constitute a discovery grievance, not a basis for any genuine dispute of fact. Whether Plaintiff in fact received proceeds from | |

| | |
|---|---|
| certain of the vehicle purchases Elias Defendants made, as directed by Ramos, is a non sequitur and does not create a genuine dispute.<br><br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | |
| **19.** The name of the account Ramos designated included the name "Woodside Credit, LLC," indicating that this was an official account owned and operated by Plaintiff.<br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | **19.** Disputed (Credibility/Rule 56(d)). The declarants do not state the full name of the account and attach no check, wire record, or statement. Ramos controlled a Chase account titled "Ramos-Woodside Credit, LLC," into which he deposited an intercepted check payable to Woodside. (AMF 35.) See Evidentiary Objection No. 2. |
| **Elias Defendants' Reply to Genuine Dispute No. 19:** Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. That the declarations do not state what Plaintiff claims is the full name of the account or attach the checks goes to weight, but does not bear on whether a genuine dispute exists, and does not controvert Elias Defendants' sworn statements. Whether Ramos deposited an intercepted check payable to Plaintiff shows, rather than undermines, his apparent authority to act on behalf of Plaintiff, or at most is an immaterial non sequitur.<br><br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | |
| **20.** After each purchase, Elias Defendants would receive payment for the reimbursement amount from an entity identified as Agent for Montana Woodside Escrow Account.<br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | **20.** Undisputed that the Elias Defendants received forty-eight checks and wires totaling $1,419,803 from the Montana |

| | |
|---|---|
| | agent's account, on checks styled "Agent for Montana Woodside Escrow Account." (AMF 38.) Disputed that the payments came "[a]fter each purchase" or were a "reimbursement amount." (AMF 33, 39-40, 44-46.) |
| **Elias Defendants' Reply to Genuine Dispute No. 20:** Whether each payment followed a purchase or is properly labeled a "reimbursement" is Plaintiff's characterization drawn from its inadmissible schedules and does not contradict the declarants' testimony about how the payments were represented to them. AMF 33, 38, 39-40, and 44-46 rest on Exhibits J and K and the Trevisan declaration, to which Elias Defendants object. *See* Elias Defendants' Evidentiary Objection Nos. 1, 9-12. Plaintiff's list of circumstantial "inferences" is conjecture, not evidence. The claimed number of checks/wires and their amounts are non sequiturs.<br><br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | |
| **21.** Ramos represented to Elias Defendants that Agent for Montana Woodside Escrow Account was a contractor for Plaintiff.<br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | **21.** Disputed (Credibility/Rule 56(d)). The Montana agent was a title agent to which Ramos diverted Woodside's TT&L funds. (AMF 32-33.) See Evidentiary Objection Nos. 1, 6. |
| **Elias Defendants' Reply to Genuine Dispute No. 21:** Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. What the Montana agent in fact was (AMF 32-33) concerns Ramos's scheme, not what Ramos represented to Elias Defendants or what they understood at the time. AMF 32-33 rest on the Trevisan declaration, to which Elias Defendants object. *See* Elias Defendants' Evidentiary Objection No. 1. | |

| | |
|---|---|
| *Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | |
| **22.** The reimbursement payments were typically made out to Classic Motor, though on a small number of occasions they were made out to Mr. Elias, and on one occasion made out to Ms. Pope.<br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | **22.** Undisputed that thirty-nine payments were payable to Classic Motor Inc, eight (totaling $135,247) to Mr. Elias personally, and one ($35,000) to Ms. Pope. (AMF 41.) Disputed that the payments were "reimbursement[s]." (AMF 33, 44-46.) |
| **Elias Defendants' Reply to Genuine Dispute No. 22:** AMF 41 and 44-46 rest on Plaintiff's schedules, Exhibits J and K, to which Elias Defendants object. *See* Elias Defendants' Evidentiary Objection Nos. 9-12. Plaintiff's list of circumstantial "inferences" is conjecture, not evidence. The claimed number of payments and their amounts are non sequiturs.<br><br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | |
| **23.** Mr. Elias and Ms. Pope did not and do not know why some payments were made out to them rather than to Classic Motor, and Ramos never explained this.<br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | **23.** Disputed (Credibility/Rule 56(d)). In May 2026, Ms. Pope stated that, "[b]ased on communications from Alexander Ramos," she "came to understand that Alexander Ramos mistakenly believed that [she] intended to personally retain the vehicle for personal use, and that the check was intended as a refund for overpayment." (AMF 57; Neri Decl. Ex. F |

| | |
|---|---|
| | at 7.) She also denies the check was connected to the vehicle purchased the next day. (AMF 45, 59.) |
| **Elias Defendants' Reply to Genuine Dispute No. 23:** Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. A denial of a vague request for admission based on an inability to answer is not a sworn statement that Ramos said nothing and does not contradict the declarations. Ms. Pope's discovery responses (in which she merely stated what she "came to understand" based on inference, not that Ramos ever directly "explained" the reason for the check to her) and her declaration are consistent—both are that Ramos never gave her a clear explanation for her check.<br><br>*Supporting Evidence:* Pope Decl. ¶ 7. | |
| **24.** After the purchase, Classic Motor would receive title for the vehicle and the vehicle, after arranging for any necessary transportation.<br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | **24.** Undisputed for purposes of this motion as to the twenty-one vehicles listed on Neri Decl. Ex. J. Disputed as to the four additional vehicles the Elias Defendants admit possessing, for which no sale proceeds reached Woodside or any Partner Bank and which the declarations do not address. (AMF 52-54.) |
| **Elias Defendants' Reply to Genuine Dispute No. 24:** Plaintiff's argument about the four additional vehicles (AMF 52-54) concern possession and the absence of sale proceeds, not the fact stated in UF 24—that after each purchase Classic Motor received title and the vehicle. | |

| | |
|---|---|
| *Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | |
| **25.** Classic Motor would then attempt to resell the vehicle after making any necessary repairs or refurbishments.<br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | **25.** Undisputed that the Elias Defendants resold the vehicles, and did so at a profit. (AMF 51.) They refused to disclose their resale prices and profits. (AMF 60.) |
| **Elias Defendants' Reply to Genuine Dispute No. 25:** Plaintiff's references to disclosure of resale prices and profits constitute a discovery grievance, not a basis for any genuine dispute of fact. Whether Elias Defendants in fact resold the vehicles, or did so at a profit, is a non sequitur.<br><br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. | |
| **26.** On approximately two occasions, after Classic Motor purchased vehicles through Plaintiff as arranged by Ramos, Ramos contacted Mr. Elias and requested that Classic Motor re-issue payment for an already-purchased vehicle to assist Plaintiff in resolving an accounting issue, and advised Mr. Elias that Plaintiff would ensure that Classic Motor was then reimbursed for the full amount of the re-issued payment, of which Mr. Elias informed Ms. Pope.<br>*Supporting Evidence:* Elias Decl. ¶ 9; Pope Decl. ¶ 8. | **26.** Undisputed for purposes of this motion that on approximately two occasions Classic Motors paid a second time for a vehicle it had already purchased. (AMF 65.) Disputed (Credibility/Rule 56(d)). Woodside disputes that the second payments were made "to assist Plaintiff in resolving an accounting issue" and that the Elias Defendants believed so. The Elias Defendants identify no vehicle, date, amount, payee, or account, and have produced no record of these payments. |

| | |
|---|---|
| | (AMF 62-64.) See Evidentiary Objection Nos. 3, 6. |
| **Elias Defendants' Reply to Genuine Dispute No. 26:** Plaintiff's dispute over Ramos's stated reason for the re-issued payments is a credibility challenge, and its complaint about missing detail is a discovery grievance. Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. That the declarations do not enumerate the specific details referenced by Plaintiff goes to weight, but does not bear on whether a genuine dispute exists, and does not controvert Elias Defendants' sworn statements.<br><br>*Supporting Evidence:* Elias Decl. ¶ 9; Pope Decl. ¶ 8. | |
| **27.** Mr. Elias obliged, and Classic Motor re-issued the payments and subsequently received reimbursements.<br>*Supporting Evidence:* Elias Decl. ¶ 9; Pope Decl. ¶ 8. | **27.** Undisputed for purposes of this motion that Classic Motors made the second payments and later received the amounts back. See response to SUF 26. |
| **Elias Defendants' Reply to Genuine Dispute No. 27:** See Elias Defendants' Reply to Genuine Dispute No. 26. | |
| **28.** At the time of the transactions, Mr. Elias and Ms. Pope accepted and believed Ramos's representations regarding the nature of the transactions, including that they were known by, on behalf of, and at the behest of Plaintiff; that the account to which Classic Motor directed the purchase payments was owned and operated by Plaintiff, and that these purchase payments were received by Plaintiff; and that the reimbursement payments sent following the vehicle purchases were known by, on behalf of, and at the behest of Plaintiff.<br>*Supporting Evidence:* Elias Decl. ¶ 10; Pope Decl. ¶ 9. | **28.** Disputed (Credibility/Rule 56(d)). A jury could infer that the Elias Defendants knew Ramos was acting for himself and against Woodside from, among other things: (1) their admitted knowledge that the prices were inflated so that higher prices could be represented to the Partner Banks (AMF 56); (2) |

| | |
|---|---|
| | payments averaging more than $67,000 per vehicle, or 79 percent of the stated prices (AMF 37-40); (3) the source of the payments, a Montana title agent with which Ms. Pope had no business relationship, rather than the recipient of the purchase price (AMF 31-33, 47); (4) payments to Mr. Elias and Ms. Pope personally (AMF 41); (5) payments that preceded purchases, outnumbered them, and came in round numbers (AMF 44-46); (6) the "re-issued" payments (AMF 65); (7) four vehicles they possessed for which no proceeds were paid (AMF 52-54); (8) their resale of the vehicles at a profit they refuse to disclose (AMF 51, 60); and (9) the conflicts between their declarations and their discovery responses (AMF 55-59). |

**Elias Defendants' Reply to Genuine Dispute No. 28:** Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence

| | |
|---|---|
| contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. Plaintiff's list of circumstantial "inferences" is conjecture, not evidence. Each enumerated item is either undisputed background, conjecture, is based on evidence to which Elias Defendants have objected, or a discovery grievance. Whether Plaintiff in fact received proceeds from certain of the vehicle purchases Elias Defendants made, as directed by Ramos, is a non sequitur and does not create a genuine dispute. A denial of a vague request for admission based on an inability to answer is not a sworn statement that Ramos said nothing and does not contradict the declarations. Ms. Pope's discovery responses (in which she merely stated what she "came to understand" based on inference, not that Ramos ever directly "explained" the reason for the check to her) and her declaration are consistent—both are that Ramos never gave her a clear explanation for her check. The other referenced discovery responses do not conflict with Elias Defendants' declarations for the reasons explained above and in Elias Defendants' reply brief.<br><br>*Supporting Evidence:* Elias Decl. ¶ 10; Pope Decl. ¶ 9. | |
| **29.** At the time of the transactions, Mr. Elias and Ms. Pope did not know or believe that Ramos was acting independently from Plaintiff in spite of his executive position with Plaintiff, or that any aspect of the transactions had been arranged and facilitated by Ramos without Plaintiff's knowledge and approval.<br>*Supporting Evidence:* Elias Decl. ¶ 10; Pope Decl. ¶ 9. | **29.** Disputed (Credibility/Rule 56(d)). See response to SUF 28. |
| **Elias Defendants' Reply to Genuine Dispute No. 29:** Plaintiff's "credibility" objection does not create a genuine dispute. Plaintiff offers no evidence contradicting Elias Defendants' sworn account; disbelief of that account is not evidence and raises no triable issue. See Elias Defendants' Reply to Genuine Dispute No. 28. | |
| **30.** During the period during which the vehicle transactions were occurring, no employee or officer for Plaintiff contacted Mr. Elias or Ms. Pope regarding the transactions to advise that any aspect thereof lacked Plaintiff's knowledge or approval.<br>*Supporting Evidence:* Elias Decl. ¶ 11; Pope Decl. ¶ 10. | **30.** Undisputed but immaterial. Woodside did not discover Ramos's scheme until October 2024. (AMF 34.) See Evidentiary Objection No. 5. |

## PART II. RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| Plaintiff's Additional Material Facts and Supporting Evidence | Elias Defendants' Response and Supporting Evidence |
|---|---|
| **31.** The loans Woodside originates are owned by Partner Banks; Woodside handles repossession sales for the Partner Banks; and Ramos, as Assistant Vice President, Title & Risk Manager, handled the majority of those sales.<br>*Supporting Evidence:* Trevisan Decl. ¶¶ 3-4; Elias Decl. ¶ 6. | **31.** Undisputed, but immaterial that "[t]he loans Woodside originates are owned by Partner Banks." The fact rests on the Trevisan declaration; *see* Elias Defendants' Evidentiary Objection No. 2. |
| **32.** Ramos directed Woodside TT&L checks to a Montana title agent for borrowers with no Montana connection and directed disbursements from that agent's account.<br>*Supporting Evidence:* Trevisan Decl. ¶ 3. | **32.** Undisputed but immaterial. That Ramos diverted Plaintiff's TT&L funds to a Montana title agent concerns Ramos's own conduct. That disbursements to borrowers were made from that agent's account does not controvert Elias Defendants' sworn statements that Ramos represented to them that hat the source of the reimbursements was legitimate, as a contractor for Plaintiff. Plaintiff's reference to "borrowers with no Montana connection," using the plural and without specific reference to Elias Defendants, indicates that other borrowers were in a similar situation to Elias Defendants, and thus undercuts Plaintiff's claim that Elias Defendants' sworn reliance on Ramos's representations were unjustified or "not credible." The fact rests on the Trevisan declaration; *see* Elias Defendants' Evidentiary Objection No. 2.<br><br>*Supporting Evidence:* Pope Decl. ¶ 7; Elias Decl. ¶ 8. |
| **33.** The Montana agent issued approximately $1,419,803 in "refund" checks and wires to | **33.** Undisputed that Elias Defendants received payments from the Montana agent's account. Immaterial that the funds were "diverted" or |

| | |
|---|---|
| Fadi Elias, Jennifer Pope, and Classic Motors at Ramos's direction, out of funds Ramos diverted from Woodside.<br>*Supporting Evidence:* Trevisan Decl. ¶¶ 3, 8. | issued for a fraudulent purpose by Ramos or at his direction, and disputed to extent it implies this was known to Elias Defendants, which no evidence shows. The fact rests on the Trevisan declaration; *see* Elias Defendants' Evidentiary Objection Nos. 2-4.<br><br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. |
| **34.** Woodside discovered Ramos's scheme in October 2024, terminated his access on October 18, 2024, and reported the theft to law enforcement.<br>*Supporting Evidence:* Trevisan Decl. ¶ 3. | **34.** Undisputed but immaterial. Plaintiff's October 2024 discovery of Ramos's scheme post-dates the transactions and does not bear on Elias Defendants' contemporaneous knowledge or intent. The fact rests on the Trevisan declaration; *see* Elias Defendants' Evidentiary Objection No. 2. |
| **35.** Ramos controlled a Chase Bank account titled "Ramos-Woodside Credit, LLC," into which he deposited, among other things, an insurer's payoff check payable to Woodside that he had intercepted.<br>*Supporting Evidence:* Trevisan Decl. ¶¶ 8, 11. | **35.** Undisputed but immaterial; if anything, the fact supports Plaintiff's motion. That Ramos controlled a Chase account titled "Ramos-Woodside Credit, LLC" corroborates the reasonableness of Elias Defendants' belief that the account Ramos designated, which included the name "Woodside Credit, LLC," was an official account for Plaintiff. In any event, no evidence shows Elias Defendants were aware that the account name included the name "Ramos." The fact rests on the Trevisan declaration; *see* Elias Defendants' Evidentiary Objection Nos. 3-4.<br><br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. |
| **36.** Woodside has paid its Partner Banks $912,979.93 in payoffs and principal reductions on repossession-sale and collateral transactions corrupted by Ramos.<br>*Supporting Evidence:* Trevisan Decl. ¶¶ 4, 6(b). | **36.** Undisputed but immaterial. Plaintiff's remediation payments to its partner banks measure Plaintiff's losses from Ramos's conduct and have no bearing on Elias Defendants' knowledge or intent. The fact rests on the Trevisan declaration; *see* Elias Defendants' Evidentiary Objection No. 2. |

| | |
|---|---|
| **37.** The Elias Defendants admit purchasing approximately twenty-one vehicles from or through Woodside between March 23, 2023 and October 10, 2024, with Ramos as their point of contact. Woodside's schedule lists twenty-one sales at stated prices totaling $1,801,000.<br>*Supporting Evidence:* Neri Decl. Ex. A, RFA Nos. 6, 13; Ex. B, RFA No. 11; Neri Decl. ¶ 10 & Ex. J. | **37.** Undisputed regarding the number of vehicle purchases and the approximate date range. The total amount is drawn from Plaintiff's Exhibit J, to which Elias Defendants object; *see* Elias Defendants' Evidentiary Objection Nos. 5-7. Immaterial in any event; the number and price of the purchases does not establish knowledge or intent. |
| **38.** Woodside's schedule lists forty-eight checks and wires from the Montana agent's account to Classic Motors, Mr. Elias, and Ms. Pope between March 15, 2023 and October 10, 2024, totaling $1,419,803.<br>*Supporting Evidence:* Neri Decl. ¶ 10 & Ex. K; Trevisan Decl. ¶ 8. | **38.** Undisputed that Elias Defendants received payments from the Montana agent account. The count and total amount are drawn from Plaintiff's Exhibit K and the Trevisan declaration, to which Elias Defendants object; *see* Elias Defendants' Evidentiary Objection Nos. 3-6, 8. Immaterial to knowledge or intent. |
| **39.** $1,419,803 is an average of more than $67,000 for each of approximately twenty-one vehicles, and approximately 79 percent of $1,801,000.<br>*Supporting Evidence:* Trevisan Decl. ¶ 8; Neri Decl. Ex. B, RFA No. 11; Exs. J-K. | **39.** Disputed as argumentative; this is Plaintiff's arithmetic characterization of its own inadmissible schedules, not a material fact. The averages rest on Plaintiff's Exhibits J and K and the Trevisan declaration, to which Elias Defendants object; *see* Elias Defendants' Evidentiary Objection Nos. 3-5, 7-8. The ratio of payments to stated prices does not establish that Elias Defendants knew of Ramos's fraud. Immaterial. |
| **40.** The Elias Defendants state that they paid $80,000, $55,000, $7,000, and $61,500 for the four vehicles whose purchase prices they disclosed. | **40.** Undisputed but immaterial to knowledge or intent. |

| | |
|---|---|
| *Supporting Evidence:* Neri Decl. Ex. D at 7-9; Ex. E at 8-9. | |
| **41.** Payments were made payable to Fadi Elias personally and to Jennifer Pope personally. On Woodside's schedule, thirty-nine payments were payable to Classic Motor Inc; eight, totaling $135,247, to Fadi Elias; and one, for $35,000, to Jennifer Pope.<br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7; Neri Decl. Ex. A, RFA No. 14; Ex. C, RFA No. 8; Ex. K. | **41.** Undisputed that some payments were made to Mr. Elias and one to Ms. Pope, but immaterial. The declarations state that Elias Defendants did not know why some payments were made to them personally, and Ramos never explained it; the payee of a payment does not establish knowledge or intent. The specific tallies are drawn from Plaintiff's Exhibit K, to which Elias Defendants object; *see* Elias Defendants' Evidentiary Objection Nos. 5, 8. |
| **42.** Classic Motors received a $30,000 check from the Montana agent dated July 18, 2023, and wire transfers of $200,000 on July 5, 2024, $100,000 on July 22, 2024, and $55,000 on July 25, 2024.<br>*Supporting Evidence:* Neri Decl. Ex. B, RFA Nos. 13-16. | **42.** Undisputed but immaterial; receipt of these payments does not establish knowledge or intent. |
| **43.** The Elias Defendants admit that some of the checks bear the word "Refund" on the memo line.<br>*Supporting Evidence:* Neri Decl. Ex. A, RFA No. 17; Ex. B, RFA No. 18. | **43.** Undisputed but immaterial to knowledge or intent; this is consistent with Elias Defendants' understanding that the payments were reimbursements of overpayments. |
| **44.** An $11,465 check from the Montana agent payable to Fadi Elias is dated March 15, 2023, eight days before Mr. Elias paid $80,000 for a 2019 Bentley Bentayga on or about | **44.** Undisputed except as to "the earliest sale on Woodside's schedule," to which Elias Defendants object; *see* Elias Defendants' Evidentiary Objection Nos. 5, 7-8. Immaterial to knowledge or intent in any event; the timing of a single payment relative to a single purchase does not establish that Elias |

| | |
|---|---|
| March 23, 2023, the earliest sale on Woodside's schedule. *Supporting Evidence:* Neri Decl. Ex. A, RFA Nos. 9, 14; Ex. D at 7; Exs. J-K. | Defendants knew of Ramos's fraud. Rather, the timing is consistent with Ramos having already determined the reimbursement amounts at the times the vehicle purchases were arranged.<br><br>*Supporting Evidence:* Pope Decl. ¶ 7; Elias Decl. ¶ 8. |
| **45.** The $35,000 check payable to Ms. Pope is dated February 8, 2024. Woodside's schedule shows the sale of a 2022 Aston Martin Vantage to Mr. Elias for $136,000 on February 9, 2024, and a further $36,000 check to Classic Motor Inc dated February 14, 2024. *Supporting Evidence:* Neri Decl. Ex. C, RFA No. 8; Ex. A, RFA No. 10; Exs. J-K. | **45.** Disputed that the $35,000 check was connected to the Aston Martin purchase, which Ms. Pope denied. The dates and amounts derive from Plaintiff's Exhibits J and K, to which Elias Defendants object; *see* Elias Defendants' Evidentiary Objection Nos. 5, 7-8. Immaterial and argumentative; juxtaposed dates do not establish knowledge or intent.<br><br>*Supporting Evidence:* Neri Decl., Ex. C, RFA No. 11. |
| **46.** On Woodside's schedules there are forty-eight payments and twenty-one sales, and thirty of the forty-eight payments are in multiples of $5,000, including eight of $35,000, seven of $25,000, and four of $40,000. *Supporting Evidence:* Neri Decl. Exs. J-K. | **46.** Rests entirely on Plaintiff's Exhibits J and K, to which Elias Defendants object; *see* Elias Defendants' Evidentiary Objection Nos. 5, 7-8. Immaterial and argumentative; that payments were round numbers does not establish that Elias Defendants knew of Ramos's fraud. |
| **47.** Before the transactions at issue, Ms. Pope had no independent business relationship with the Montana agent or Amy Fisher. *Supporting Evidence:* Neri Decl. Ex. C, RFA No. 29. | **47.** Undisputed but immaterial; the absence of a prior relationship does not establish knowledge or intent, particularly where Elias Defendants understood the agent to be Plaintiff's contractor, as Ramos had affirmatively represented was the case.<br><br>*Supporting Evidence:* Elias Decl. ¶ 8; Pope Decl. ¶ 7. |

| | |
|---|---|
| **48.** Ms. Pope was aware that Mr. Elias and/or Classic Motors were receiving payments from the Montana agent in connection with the purchase of vehicles.<br>*Supporting Evidence:* Neri Decl. Ex. C, RFA No. 13. | **48.** Undisputed but immaterial; awareness that reimbursements were being received does not establish knowledge of Ramos's fraud. |
| **49.** Ms. Pope communicated directly with Ramos, had signatory authority on bank accounts of Classic Motors and of Mr. Elias, and assisted with "paperwork for vehicle purchases."<br>*Supporting Evidence:* Neri Decl. Ex. C, RFA Nos. 4, 6, 18; Ex. E at 6. | **49.** Undisputed but immaterial; none of these details establish knowledge or intent. |
| **50.** Mr. Elias and Classic Motors knew that Ramos held the title Assistant Vice President, Title & Risk Manager at Woodside, and Ms. Pope knew Ramos was employed by Woodside.<br>*Supporting Evidence:* Neri Decl. Ex. A, RFA No. 19; Ex. B, RFA No. 10; Ex. C, RFA No. 7. | **50.** Undisputed, but this supports Elias Defendants' position that they understood Ramos to be Plaintiff's executive officer; does not establish knowledge of any fraud.<br><br>*Supporting Evidence:* Elias Decl. ¶ 5; Pope Decl. ¶ 4. |
| **51.** The Elias Defendants resold vehicles purchased through Ramos and earned a profit.<br>*Supporting Evidence:* Neri Decl. Ex. A, RFA Nos. 23-24; Ex. B, RFA Nos. 23-24; Ex. C, RFA No. 27. | **51.** Undisputed but immaterial; reselling lawfully purchased vehicles at a profit is ordinary dealer conduct and does not establish knowledge or intent. |
| **52.** The Elias Defendants admit that four additional repossessed vehicles — a 1972 | **52.** Undisputed but immaterial; possession alone does not establish knowledge of, or intentional participation in, Ramos's fraud. |

| | |
|---|---|
| Chevrolet Chevelle, a 2019 Rolls Royce, a 2005 Rolls Royce Wraith, and a 2020 Mercedes G Class — were at some point in their possession, custody, or control.<br>*Supporting Evidence:* Neri Decl. Ex. A, RFA No. 25; Ex. B, RFA No. 25; Ex. C, RFA No. 30. | |
| **53.** Ms. Pope admitted a request describing those four vehicles as vehicles "for which neither Woodside nor its PARTNER BANKS received any sale proceeds." Woodside's schedule shows no sale price for them and original loan balances totaling $661,823.70.<br>*Supporting Evidence:* Neri Decl. Ex. C, RFA No. 30; Ex. J. | **53.** Disputed that Ms. Pope admitted that neither Plaintiff or its partner banks received any sale proceeds from the vehicles, or that such information was within Ms. Pope's knowledge. The referenced Request for Admission asked whether the referenced vehicles "were at some point in the possession, custody, or control" of Ms. Pope, Mr. Elias, or Classic Motors, and in passing characterized these vehicles as vehicles "for which neither Woodside nor its PARTNER BANKS received any sale proceeds." Ms. Pope's admission was qualified by and subject to her stated objections that the Request was vague and ambiguous and compound. Ms. Pope's declaration states, and Plaintiff cannot dispute, that she believed all vehicle transactions were known to and desired by Plaintiff because this is what Ramos, as Plaintiff's executive officer, consistently represented. The figure listed and the absence of sale prices derive from Exhibit J, to which Elias Defendants object; *see* Elias Defendants' Evidentiary Objection Nos. 5, 7. Immaterial in any event; that Plaintiff contends it received no proceeds on those four vehicles concerns Ramos's handling of the transactions, not Elias Defendants' knowledge or intent.<br><br>*Supporting Evidence:* Pope Decl. ¶¶ 6-7, 9. |
| **54.** The Elias and Pope declarations do not address the | **54.** Undisputed that the declarations did not specifically reference these four vehicles, or |

| | |
|---|---|
| four vehicles, and Classic Motors refused to answer the interrogatory asking about their acquisition and disposition. *Supporting Evidence:* Elias Decl. ¶¶ 1-11; Pope Decl. ¶¶ 1-10; Neri Decl. Ex. E at 16. | that Classic Motors declined to answer the referenced interrogatory based on its expressly stated objections, including numerosity objections under Federal Rule 33(a)(1), which Plaintiff never timely challenged. A valid objection is not an unjustified "refus[al]," as the statement implies. Immaterial and argumentative in any event; the point about the interrogatory is a discovery grievance, not evidence of knowledge or intent; moreover, the absence of declaration testimony specifically addressing these four vehicles is not affirmative evidence of knowledge or intent, and Mr. Elias and Ms. Pope declared, and Plaintiff cannot dispute, that they believed all vehicle transactions were known to and desired by Plaintiff because this is what Ramos, as Plaintiff's executive officer, consistently represented.<br><br>*Supporting Evidence:* Neri Decl. Ex. E at 16; Elias Decl. ¶¶ 7-8, 10 ; Pope Decl. ¶¶ 6-7, 9. |
| **55.** In May 2026, Mr. Elias and Classic Motors each denied a request to admit that Ramos told them "that Woodside wanted the PARTNER BANKS to believe that automobiles were selling for higher prices than what they would actually sell for." *Supporting Evidence:* Neri Decl. Ex. A, RFA No. 8; Ex. B, RFA No. 19. | **55.** Disputed to extent it implies Mr. Elias and Classic Motors substantively denied these requests; rather, they objected that the requests were vague and ambiguous as phrased as to "than what they would actually sell for" and as to time and, without waiving and subject to their objections, responded that they could not admit or deny the request as phrased, and on that basis denied.<br><br>*Supporting Evidence:* Neri Decl. Ex. A, RFA No. 8; Ex. B, RFA No. 19. |
| **56.** In their September 2026 declarations, Mr. Elias and Ms. Pope state that Ramos told them the purchase prices were "intentionally inflated," in part "to attempt to improve Woodside Credit's | **56.** Undisputed, but the fact supports Plaintiff's motion: As Elias Defendants declared, based on Ramos's representations to them as Plaintiff's executive officer, Elias Defendants understood the inflated pricing to be Plaintiff's business practice, not a fraud upon Plaintiff. |

| | |
|---|---|
| relationships with its partner banks by representing to the banks that the repossessed vehicles were being sold at favorable prices that were near to or greater than the balance owed on the delinquent loan."<br>*Supporting Evidence:* Elias Decl. ¶ 7; Pope Decl. ¶ 6. | *Supporting Evidence:* Elias Decl. ¶¶ 5, 7; Pope Decl. ¶¶ 4, 6. |
| **57.** In May 2026, Ms. Pope stated that she "did not know what the purpose of this payment was at the time" she received the $35,000 check, and that, "[b]ased on communications from Alexander Ramos," she "came to understand that Alexander Ramos mistakenly believed that [she] intended to personally retain the vehicle for personal use, and that the check was intended as a refund for overpayment."<br>*Supporting Evidence:* Neri Decl. Ex. F at 7. | **57.** Undisputed that this was stated, but disputed to extent it implies any contradiction with Ms. Pope's declaration. The cited interrogatory response expressly refers to what Ms. Pope "came to understand," and does not establish that Ms. Pope in fact knew what the purpose was at the time the check was received or at any other time. *See* Response to Plaintiff's Additional Material Fact No. 58. In any event, not knowing a payment's purpose at the time, and later understanding it to be intended as a refund, does not establish knowledge of fraud or intent to perpetuate same.<br><br>*Supporting Evidence:* Pope Decl. ¶ 7. |
| **58.** In her declaration, Ms. Pope states that she "did not and do[es] not know why some payments were made out to Fadi Elias or to [her] rather than to Classic Motor, and Ramos never explained this."<br>*Supporting Evidence:* Pope Decl. ¶ 7. | **58.** Undisputed that this was stated, but disputed to extent it implies any contradiction with Ms. Pope's interrogatory responses. The cited declaration statement expressly refers to what Ms. Pope "came to understand," and does not establish that Ms. Pope in fact knew what the purpose was at the time the check was received or at any other time. *See* Response to Plaintiff's Additional Material Fact No. 57. In any event, not knowing a payment's purpose at the time, and later understanding it to be intended as a refund, does not establish knowledge of fraud or intent to perpetuate same. |

| | |
|---|---|
| | *Supporting Evidence:* Neri Decl. Ex. F at 7. |
| **59.** Ms. Pope denied that the $35,000 check was connected to the purchase of the 2022 Aston Martin Vantage. *Supporting Evidence:* Neri Decl. Ex. C, RFA No. 11. | **59.** Disputed to extent it implies such denial was unqualified. Ms. Pope's denial was qualified by and subject to her stated objections that the Request was vague and ambiguous and compound, including through its use of the phrase "connected to," and such response expressly provided that it was made "to the extent Responding Party understands the Request." Immaterial in any event; whether a single check was connected to a particular purchase does not establish knowledge or intent.<br><br>*Supporting Evidence:* Neri Decl. Ex. C, RFA No. 11. |
| **60.** The Elias Defendants refused to answer interrogatories asking them to describe their communications with Ramos, what Ramos told them about the reason for each payment, the facts supporting their defenses of fraudulent inducement and misrepresentation by others, their bank accounts, and their resale prices, profits, and any sharing of profits with Ramos. *Supporting Evidence:* Neri Decl. ¶ 5; Ex. D at 9-19; Ex. E at 10-19; Ex. F at 11-19. | **60.** Undisputed that Elias Defendants did not answer these interrogatories, based on their expressly stated objections, including numerosity objections under Federal Rule 33(a)(1), which Plaintiff never timely challenged. A valid objection is not an unjustified "refus[al]," as the statement implies. Immaterial in any event; this point is a discovery grievance, not evidence of knowledge or intent.<br><br>*Supporting Evidence:* Neri Decl. ¶ 5; Ex. D at 9-19; Ex. E at 10-19; Ex. F at 11-19. |
| **61.** None of the Elias Defendants' interrogatory answers is verified. *Supporting Evidence:* Neri Decl. ¶ 4. | **61.** Undisputed but immaterial; this point is a discovery grievance, not evidence of knowledge or intent. To the extent Plaintiff contends the lack of verification is inappropriate, it has itself done the same thing. [Dkt. 46-1 at ¶¶ 6-7.] |
| **62.** The Elias Defendants committed in writing to | **62.** Immaterial; this point is a discovery grievance, detailed at length in the parties' |

| | |
|---|---|
| produce documents in thirty-two categories upon entry of a protective order; the protective order was entered May 18, 2026; and they have produced no documents. *Supporting Evidence:* Neri Decl. ¶ 6; Dkt. 35; Dkt. 37-2 ¶ 7 & Ex. C. | briefing on Plaintiff's motion to reopen discovery [*see* Dkt. 46], not evidence of knowledge or intent. |
| **63.** The Elias Defendants' initial disclosures identify "[p]roof of payments for vehicles and related documents"; none has been produced, and none accompanies the motion. *Supporting Evidence:* Neri Decl. ¶ 7 & Ex. H. | **63.** Immaterial; this point is a discovery grievance, detailed at length in the parties' briefing on Plaintiff's motion to reopen discovery [*see* Dkt. 46], not evidence of knowledge or intent. |
| **64.** The Elias and Pope declarations attach no documents and identify no specific vehicle, payment date, amount, account, or communication. *Supporting Evidence:* Elias Decl. ¶¶ 1-11; Pope Decl. ¶¶ 1-10. | **64.** Undisputed but immaterial and argumentative. The declarations set out the declarants' personal knowledge of the transactions and their state of mind, which is competent summary-judgment evidence; the absence of attachments goes to weight, not admissibility, and does not create a genuine dispute. |
| **65.** On approximately two occasions, Classic Motors "re-issue[d] payment for an already-purchased vehicle" and later received the amount back. *Supporting Evidence:* Elias Decl. ¶ 9; Pope Decl. ¶ 8. | **65.** Undisputed but immaterial; re-issuing a payment at the request of Ramos, who was Plaintiff's executive officer and affirmatively represented that the request was known to and desired by Plaintiff, and later being reimbursed, does not establish knowledge of any fraud. <br><br> *Supporting Evidence:* Elias Decl. ¶ 9; Pope Decl. ¶ 8. |
| **66.** Classic Motors held a California dealer license for | **66.** Undisputed but immaterial; the duration of Classic Motors' dealer license does not bear on knowledge or intent, particularly in the face of |

| | |
|---|---|
| approximately twenty-five years.<br>*Supporting Evidence:* Neri Decl. Ex. E at 3. | repeated representations by Ramos to Mr. Elias and Ms. Pope, as Plaintiff's executive officer, that all of the vehicle transactions were known to, and desired by, Plaintiff.<br><br>*Supporting Evidence:* Elias Decl. ¶ 10; Pope Decl. ¶ 9. |
| **67.** Woodside's January 15, 2026 initial disclosures identified Mr. Trevisan, the Montana agent's bank records, the records of forty-eight checks and wires totaling $1,419,803, the records of twenty-one vehicle purchases totaling $1,801,000, and the schedules attached to the Complaint as Exhibits A and B.<br>*Supporting Evidence:* Neri Decl. ¶ 7 & Ex. G at 2, 4. | **67.** Undisputed, except to extent it implies Plaintiff timely fulfilled its obligations to produce these records during the discovery period in this action, which it did not. [Dkt. 46-1 ¶¶ 4, 6-7; Dkt. 48-1 ¶¶ 2-4.] Immaterial in any event; Plaintiff's own disclosures are not evidence of the claimed underlying facts and do not bear on Elias Defendants' knowledge or intent. |

DATED: September 24, 2026

LAW OFFICES OF DALE K. GALIPO

By */s/ Benjamin S. Levine*
Dale K. Galipo
Benjamin S. Levine
*Attorneys for Defendants Fadi Elias, Jennifer Pope, and Classic Motors, Inc.*