UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-02146-FWS-JDE Date: October 21, 2026

Title: Woodside Credit, LLC v. Fadi Elias *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

Damian Velazquez for Rolls Royce Paschal — Deputy Clerk

N/A — Court Reporter

Attorneys Present for Plaintiff: Not Present

Attorneys Present for Defendants: Not Present

**PROCEEDINGS: ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT RAMOS [38]; DENYING PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER [37]; DENYING ELIAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [47]; AND GRANTING PLAINTIFF'S REQUEST TO ACCEPT LATE-FILED REPLY [61]**

Plaintiff Woodside Credit LLC ("Woodside") brings this case against Defendants Fadi Elias, Jennifer Pope, Alexander G. Ramos, and Classic Motor, Inc. (collectively, "Defendants"). (*See generally* Dkt. 1 ("Complaint").) Before the court are the following motions: (1) Plaintiff's Motion for Default Judgment against Alexander G. Ramos ("Ramos") on Plaintiff's Fourth Cause of Action (Breach of Fiduciary Duty) (Dkt. 38 ("Default Judgment Mot.")); (2) Plaintiff's Motion to Extend Discovery Cut-Off Date (Dkt. 37 ("Discovery Cut-Off Mot.")); and (3) Elias, Pope, and Classic Motor's (collectively, the "Elias Defendants") Motion for Summary Judgment (Dkt. 47 ("D. MSJ")). The parties' positions regarding undisputed facts are set forth in the Elias Defendants' Response to Plaintiff's Statement of Undisputed Facts. (Dkt. 56-1 ("SUF").) The court held oral argument on all three Motions on October 15, 2026. (Dkt. 60.) Based on the state of the record, as applied to the applicable law, the court **DENIES** Default Judgment Mot., the Discovery Cut-Off Mot., and the D. MSJ.

## I. Factual and Procedural Background

Woodside handles "repossession sales" for its Partner Banks. (SUF ¶ 31; Elias Decl. ¶ 6.) Defendant Classic Motor, through its owner Mr. Elias and his wife Mrs. Pope, worked

with Woodside for many years on vehicle transactions that required financing. (SUF ¶ 31; Elias Decl. ¶ 4.) Mr. Ramos served as Assistant Vice President in Woodside's Title & Risk department. (*Id.*) Mr. Ramos directed Woodside checks "to a Montana title agent for borrowers with no Montana connection" and then directed disbursements from that agent's account. (SUF ¶ 32; Trevisan Decl. ¶ 3.) The Elias Defendants "received payments from the Montana agent's account." (SUF ¶ 33; Elias Decl. ¶ 8.) Those payments include, among others, "a $30,000 check from the Montana agent dated July 18, 2023, and wire transfers of $200,000 on July 5, 2024, $100,000 on July 22, 2024, and $55,000 on July 25, 2024." (SUF ¶ 42; Neri Decl. Ex. B, RFA Nos. 13-16.) Woodside discovered Mr. Ramos's "scheme in October 2024, terminated his access on October 18, 2024, and reported the theft to law enforcement." (SUF ¶ 34; Trevisan Decl. ¶ 3.) The parties dispute whether the Elias Defendants had knowledge of Mr. Ramos's scheme. (SUF ¶ 33; Elias Decl. ¶ 8; Pope Decl. ¶ 7.)[1]

[1] Both parties filed numerous evidentiary objections. (Dkt. 43-1.) "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 385 (9th Cir. 2010) ("A district court's ruling on a motion for summary judgment may only be based on admissible evidence."). "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009); *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010); *see Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118 (E.D. Cal. 2006) ("[T]he court will [only] proceed with any necessary rulings on defendants' evidentiary objections."). However, a district court "must [] rule on evidentiary objections that are material to its ruling." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). Accordingly, to the extent the court relies on evidence subject to an objection, the court addresses the objections in relation to the specific evidence below. To the extent the court relies on evidence subject to objections the court does not specifically address, the objections are **OVERRULED**. Objections to evidence on which the court does not specifically rely in this order are **OVERRULED AS MOOT**.

On May 22, 2025, Mr. Ramos was arrested and criminally charged with wire fraud in connection with the above allegations. (Compl. ¶ 55.) Mr. Ramos has been in custody since then. (Neri Decl. ¶ 3.)

Woodside filed this case on September 22, 2025. (*See generally* Complaint.) Woodside asserts seven causes of action including fraud, breach of fiduciary duty, and violations of 18 U.S.C. § 1962 (RICO). (Compl. at 1.) Woodside alleges that Defendants were part of "a conspiracy and fraudulent scheme formed and undertaken by [Mr. Ramos]" to "illegally redirect[] Woodside funds" to bank accounts that Mr. Ramos controlled. (*Id.* ¶¶ 1–3.)

On November 5, 2025, the Elias Defendants filed an answer. (Dkt. 19.) On January 6, 2026, the court issued a Scheduling Order. (Dkt. 26 ("Scheduling Order").) Among other dates and deadlines, the Scheduling Order set a "Non-Expert Discovery Cut-Off" deadline of July 9, 2026. (*Id.* at 1.)

On January 8, 2026, Woodside served Mr. Ramos through personal service at the Santa Ana City Jail. (Dkt. 30; Neri Decl. ¶ 4.) On February 3, 2026, after Mr. Ramos failed to appear, the clerk entered default as to Mr. Ramos (Dkt. 31).

On March 25, 2026, Woodside served its first set of interrogatories, requests for production, and requests for admission on each of the three Elias Defendants. (Discovery Cut-Off Mot. at 9.) On May 1, 2026, the Elias Defendants propounded their first set of requests for production and interrogatories to Woodside. (Dkt. 46 ("Discovery Opp." at 3.) The parties also exchanged written responses to their respective sets of discovery requests. (*Id.*) On May 15, 2026, the Elias Defendants served written responses to the propounded discovery requests. (Discovery Cut-Off Mot. at 9.) Thirty-two of the Elias Defendants' responses to Woodside's document requests stated that the Elias Defendants would produce documents responsive to the requests "upon entry of a protective order." (*Id.*) The Elias Defendants' interrogatory responses were signed only by counsel and were not verified. (*Id.*) Just days later, the court entered a Stipulated Protective Order on May 18, 2026. (Dkt. 35.) On June 15, 2026, Woodside served responses to the Elias Defendants' discovery requests which also stated that Woodside would produce responsive documents "subject to an appropriate protective order."

(Discovery Opp. at 3.) To date, the Elias Defendants have not produced any responsive documents or amended their written discovery responses. (*Id.* at 10.)

The non-expert discovery cutoff quietly passed on July 9, 2026, with neither Woodside nor the Elias Defendants moving to compel discovery responses or requesting relief from the court. (*See* Discovery Cutoff Mot. at 10; Discovery Opp. at 3–4.) On August 24, 2026, nearly two months after the cutoff, Woodside filed the Discovery Cut-Off Motion seeking to reopen discovery and modify the Scheduling Order. (*See generally* Discovery Mot.) That same day, Woodside also filed a Motion for Default Judgment against Mr. Ramos. (Dkt. 38.) Shortly after, on September 3, 2026, the Elias Defendants filed a Motion for Summary Judgment. (Dkt. 47.)

On the same day it filed its Reply in support of the Discovery Cut-Off Motion, September 10, 2026, Woodside produced 297 documents in response to the Elias Defendants' discovery requests. (Dkt. 48 ("Discovery Mot. Reply") at 15–16.)

## II. Woodside's Motion for Default Judgment Against Ramos (Default Judgment Mot.)

Woodside seeks default judgment against Mr. Ramos solely on its breach of fiduciary duty claim against him. (Default Judgment Mot. at 25.) The Elias Defendants did not oppose the Motion. (*See generally* Dkt.; Dkt. 49 ("Default Judgment Reply") at 2.)

Federal Rule of Civil Procedure 55(a) authorizes the court to enter default judgment against a party after the Clerk has entered default. Fed. R. Civ. P. 55(b). Where, as here, default judgment is sought against some but not all defendants, and on some but not all claims against a particular defendant, Federal Rule of Civil Procedure 54(b) provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); *see also Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 3 (1980) ("Federal Rule of Civil Procedure 54(b) allows a district court dealing with multiple claims or multiple parties to direct the entry of final judgment as to fewer than all of the claims or parties; to do so, the court must make an express determination that there is no just reason for delay.").

"Although the court has discretion under Rule 54 depending on the circumstances before it," the Supreme Court has stated that "absurdity might follow" where the court "can lawfully make a final decree against one defendant . . . while the cause was proceeding undetermined against the others.'" *Societe d'Equipments Internationaux Nigeria, Ltd v. Dolarian Cap., Inc.*, 2016 WL 6868023, at *2 (E.D. Cal. Nov. 21, 2016) (quoting *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)). Pursuant to the rule articulated in *Frow*, "where a complaint alleges that defendants are jointly liable" or "similarly situated" and "one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (citing *Frow*, 82 U.S. at 554). In general, the applicability of this rule "turns not on labels such as 'joint' or 'joint and several liability,' but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1008 (N.D. Cal. 2001).

In this case, Woodside specifically alleges that "[e]ach Defendant was a direct, necessary and substantial participant in the conspiracy" to defraud Woodside. (Compl. ¶ 68.) Specifically, Woodside alleges that Mr. Ramos "and [the Elias Defendants] conspired and came to an agreement whereby [the Elias Defendants] would either be the high bidder on a repossessed vehicle that Woodside was selling on behalf of a Partner Bank or the Elias Defendants would offer a price close enough to the balance owed that Ramos was likely able to get the Partner Bank to agree to accept Elias Defendants' offer." (Compl. ¶ 37.) Then, the Elias Defendants "would either wire the funds to Woodside and Woodside would deduct any of the collection costs and wire the balance to the Partner Bank or the Elias Defendants' would wire the funds directly to the bank." (*Id.*) Woodside alleges that Mr. Ramos would "cut a check to the Elias Defendants to fraudulently 'refund' to them a portion or all of what the Elias Defendants paid to purchase the vehicle." (Compl. ¶ 39.) The Elias Defendants "would then sell the vehicle and keep the profits and, upon information and belief, share some of that profit" with Mr. Ramos. (Compl. ¶ 40.) As a result, Woodside seeks identical damages against Mr. Ramos and the Elias Defendants as to its first, third, sixth, and seventh causes of action which assert claims RICO claims and conspiracy to commit fraud. (Compl. ¶¶ 59, 69, 86, 92.)

In light of the factual allegations and legal theories asserted, the court finds it appropriate to delay consideration of the Motion for Default Judgment until after the case resolves against the appearing defendants because several of Woodside's causes of action require uniform liability between Mr. Ramos and the Elias Defendants. *See, e.g., Ameris Bank v. Prompt USA, Inc.*, 2024 WL 3298757, at *3 (C.D. Cal. May 28, 2024) ("[T]he court finds just reason to delay [under *Frow*] because the Complaint's causes of action require uniform liability between Defendant Prompt USA, Inc. and Defendant Tenea."); *Davidson v. Paige*, 2020 WL 7220821, at *3-4 (D. Haw. Nov. 20, 2020) (denying motion for default judgment under *Frow* where plaintiff alleged multiple defendants were jointly or vicariously liable for breach of contract); *United States v. Mobile XL, LLC*, 2017 WL 3427960, at *3 (C.D. Cal. Aug. 8, 2017) ("Courts have applied *Frow* in similar circumstances where a lender has sought a default judgment against borrowers and guarantors, some of whom had not defaulted.") (collecting cases); *Unilin Beheer B.V. v. Tropical Flooring*, 2014 WL 12700909, at *4 (C.D. Cal. Oct. 6, 2014) (applying the *Frow* rule where plaintiffs alleged "each defendant acted in concert with each other, [and] was the agent, affiliate, officer, director, manager, principal, alter-ego, co-conspirator, aider and abettor, and/or employee of the remaining defendants") (citations omitted). Moreover, counsel for Woodside conceded during the hearing that entry of default judgment could wait until after the claims against all defendants are resolved. (Dkt. 60.)

As stated above, the "court's decision whether to enter a default judgment is a discretionary one." *See Aldabe*, 616 F.2d at 1092. The court, in its discretion, finds it appropriate to delay consideration of the Motion at this time. Accordingly, the Default Judgment Mot. is **DENIED WITHOUT PREJUDICE** under Federal Rule of Civil Procedure 54(b).

## III. Woodside's Motion to Modify Scheduling Order (Discovery Cut-Off Mot.)

Woodside seeks an order modifying the scheduling order to extend the discovery cut-off deadline. (Discovery Cut-Off Mot. at 9.) The Elias Defendants oppose the Motion. (Dkt. 46 Discovery Opp.) Woodside filed a Reply (Dkt. 48), and the matter is fully briefed.

The court "has wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). A court's scheduling order "may be modified only for good

cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see* C.D. Cal. L.R. 16-14 ("Any application to modify an order entered pursuant to F.R.Civ.P. 16 shall be made to the judicial officer who entered the order."). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (citation and internal quotation marks omitted). "While a court may take into account any prejudice to the party opposing modification of the scheduling order," *In re W. States*, 715 F.3d at 737, the focus of the Rule 16(b) inquiry "is upon the moving party's reasons for seeking modification," *id.* (quoting *Johnson*, 975 F.2d at 609). If that party "was not diligent, the inquiry should end." *Id*. (quoting *Johnson*, 975 F.2d at 609). "The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

"In addition, when any motion to extend time is made *after* time has expired, Rule 6 requires the parties to address excusable neglect." *Becerra v. Nat'l Recovery Sols., LLC*, 2014 WL 3700210, at *2 (S.D. Cal. July 24, 2014) (citing Fed. R. Civ. P. 6(b)(1)(B) (stating "the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect.")). "To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010).

In this case, the record demonstrates that Woodside has not been diligent. To begin, Woodside did not begin serving the Elias Defendants with discovery until more than four-and-a-half months after the Elias Defendants filed their Answer. Even once Woodside began propounding discovery and receiving responses, there is insufficient indication in the record that Woodside acted diligently. In particular, Woodside does not describe to the court any steps it took regarding pending document productions that Woodside maintains were deficient until

months after the responses were served and a month after the discovery cutoff had passed, when on August 3, 2026, Woodside "sent detailed meet-and-confer letters…demanding the promised production and verifications." (Discovery Cut-Off Mot. at 10.) What is more, the record shows that Woodside did not take any action to schedule the depositions it now argues are critical to its case. Woodside had many months to take the Elias Defendants' and other key witnesses' depositions—indeed, to take any depositions at all—but it failed to do so. While Woodside argues that it was waiting until receiving documents from the Elias Defendants to schedule such depositions, Woodside took no actions to compel the production of those documents or move to extend the discovery cutoff deadline until nearly two months after it had already passed. (Discovery Cut-Off Mot. at 10; Discovery Opp. at 3-4.)

Woodside's attempts to show diligence are unpersuasive. Woodside argues that it was "diligent at every step" by serving its written discovery months ahead of the discovery cutoff, satisfying the Elias Defendants' condition of a protective order within a week, and sending detailed meet and confer letters after the promised documents were not produced. (Mot. at 6.) But Woodside provides no explanation for what diligence it demonstrated in the months long gap between its receipt of allegedly deficient discovery responses on May 15, 2026, and its August 3, 2026, meet and confer letter finally addressing those alleged deficiencies. (*See generally* Discovery Cut-Off Mot.; Discovery Opp. at 4.) Woodside states that it "reasonably sequenced the depositions of Elias, Pope, and Classic Motor to follow document production," (Mot. at 13), but it never noticed any such depositions. (Opp. at 5.) In the entire months long discovery period, the only time Woodside discussed depositions with the Elias Defendants was over an April 23, 2026, phone call in which Plaintiff's counsel "advised that Plaintiff intended to take Defendant Ramos's deposition in jail." (Opp. at 5.) Simply expressing intent to depose a witness does not constitute diligence in obtaining discovery. *See, e.g.*, *Stars & Bars, LLC v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 2527044, at *3 (C.D. Cal. Apr. 14, 2020) ("Nor was Plaintiff diligent in taking depositions. Plaintiff offers no explanation as to why it failed to depose Travelers' witnesses outside of its assertions that Defendants were uncooperative with scheduling."). Rather, Plaintiff filed a RICO fraud and conspiracy case and then did not seek to depose critical witnesses—or any witnesses at all. (*See* Mot. at 4-5.) Where, as here, "the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Johnson*, 975 F.2d at 610.

Moreover, the court observes that Plaintiff seeks to extend the discovery cutoff after that deadline has passed, yet fails entirely to "address excusable neglect." *Becerra*, 2014 WL 3700210, at *2; *see* Fed. R. Civ. P. 6(b)(1)(B) ("[T]he court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect."). Scheduling orders are not a technicality, or "a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610. And enforcing scheduling orders is even more important "[a]s the torrent of civil and criminal cases unleashed in recent years has threatened to inundate the federal courts." *Johnson*, 975 F.2d at 611. Efforts to efficiently resolve cases "will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines." *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005).

For all of these reasons, the Discovery Cut-Off Mot. is **DENIED**.

## IV. Elias Defendants' Motion for Summary Judgment (D. MSJ)

The Elias Defendants move for summary judgment as to all claims against them on the basis that "their purchases of vehicles and associated transactions, arranged and facilitated by Plaintiff's executive officer and agent, Defendant Alexander G. Ramos, were made without any knowledge that Ramos was engaged in any fraud against or breach of fiduciary duty toward Plaintiff, or was otherwise acting without Plaintiff's authority and approval, and because Elias Defendants lacked any intent to aid or assist such fraud or breach." (D. MSJ at 2–3.) Woodside opposes the Motion and the matter is fully briefed.[2] (Dkts. 51 ("MSJ Opp."); 56 ("MSJ Reply").)

[2] Woodside's opposition to this Motion was filed one day late. (Dkt. 51.) The opposition noted this delay and "request[ed] that the court excuse the one-day delay and consider [the] opposition." (Dkt. 51 at 7 n.1.) On October 16, 2026, Woodside filed a formal request pursuant to Rule 6(b)(1)(B) that the court accept the opposition papers as timely and consider them in deciding this Motion. (Dkt. 61.) In its discretion, the court **GRANTS** Woodside's request.

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").

The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The court must draw all reasonable inferences in the non-moving party's favor. *In re Oracle Corp.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence." *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48; *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary judgment process:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d at 387 (citations omitted).

**B. Discussion**

The Elias Defendants argue that all the claims against them "share the common requirement that Elias Defendants knew of Mr. Ramos's alleged scheme to defraud and breach his fiduciary duty toward Plaintiff, and most further require that Elias Defendants intended to cause or facilitate such fraud and/or breach against Plaintiff." (D. MSJ at 1.)

Under California law, the elements of fraud include "knowledge of falsity (or scienter)" and "intent to defraud." *Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP*, 676 F.3d 1354, 1359 (Fed. Cir. 2012) (quoting *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979 (2004)). To impose liability for aiding and abetting fraud or a breach of fiduciary duty, a plaintiff must demonstrate that an individual "had actual knowledge of the underlying wrongful conduct." *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 885 (N.D. Cal. 2011) (citing *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal.App.4th 1138, 1144 (2005)); *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014) ("defendant's actual knowledge of that breach of fiduciary duties" is required to impose liability). The same is required for conspiracy. *See Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) ("[C]onspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose."). Finally, to be liable under civil RICO statute Sections 1962(c) and 1962(d), defendants must share "a common purpose" and knowledge of the unlawful conduct. *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) ("The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'") (internal quotations omitted); *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) ("[A] RICO conspiracy under § 1962(d) requires only that the defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it.") (internal citations omitted).

The Elias Defendants' main argument is that because the "Elias Defendants had no knowledge or intent regarding Ramos's alleged fraud against or breach of fiduciary duty toward Plaintiff, Elias Defendants cannot be held liable and are entitled to summary judgment on all

claims against them." (D. MSJ at 2.) In support of this argument, the Elias Defendants offer declarations from Mr. Elias and Mrs. Pope that state they "did not know or believe that Ramos was acting independently from Woodside Credit in spite of his executive position with Woodside Credit, or that any aspect of the transactions had been arranged and facilitated by Ramos without Woodside Credit's knowledge and approval." (Elias Decl. ¶ 10; Pope Decl. ¶ 9.) In response, Woodside offers the following evidence: (1) the declaration of Woodside's Executive Vice President and Ramos's Supervisor, Brian Trevisan (Dkt. 54); (2) Woodside's initial disclosures (Neri Decl. Ex. G); (3) Woodside's schedules of the vehicle sales (Neri Decl. Ex. J.); (4) schedule of checks and wires from the Montana agent to the Elias Defendants (Neri Decl. Ex. K); and (5) the Elias Defendants' responses to written discovery requests (Neri Decl. Exs. A–F).

The court finds that a genuine issue of material fact exists as to whether the Elias Defendants had actual knowledge of Mr. Ramos's scheme and had the requisite intent to facilitate the alleged fraud and breach of fiduciary duty. For example, the court observes that under the standards of a motion for summary judgment, Woodside's proffered evidence contradicts the Elias Defendants' declarations. The timing, amounts, and nature of vehicle sales and the checks and wires sent to the Elias Defendants from the Montana agent could lead a reasonable jury to conclude that the Elias Defendants were aware of the fraudulent nature of the transactions. While the Elias Defendants argue that "size, source, payees, timing of the payments, repeat payments, and resales" are also "consistent with the arrangement Ramos described" in the Elias Defendants' declarations, the court at this stage of the proceedings "must draw all reasonable inferences in the non-moving party's favor." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 255). Indeed, "a jury could believe [the Elias Defendants'] version of events rather than [Woodside's], but [Woodside's] burden at this stage simply is one of production" and here, Woodside has "produced sufficient evidence which, if credited by the jury, would satisfy [their] burden of establishing a prima facie case." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1114 (9th Cir. 2003).

The Ninth Circuit has noted that it is "frequently impossible for a plaintiff" to produce "direct evidence contradicting someone's contention that he did not know something." *Hernandez*, 343 F.3d at 1114. Where a tortious scheme is alleged, "concurrence and knowledge

'may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.'" *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 785 (1979) (quoting *Chicago Title Ins. Co. v. Great Western Financial Corp.*, 69 Cal.2d 305, 316 (1968)). At this stage of the proceedings, in the context of a motion for summary judgment, when the court must take evidence and draw reasonable inferences in Woodside's favor, *see, e.g.*, *Reed v. Lieurance*, 863 F.3d 1196 (9th Cir. 2017), the court finds that the record permits a jury to determine whether the Elias Defendants had knowledge of Ramos's scheme and intent to facilitate it.

Accordingly, the D. MSJ is **DENIED**.

## V. Disposition

For the reasons stated above, the Default Judgment Mot. is **DENIED**, the Discovery Cut-Off Mot. is **DENIED**, and the D. MSJ is **DENIED**.

The court observes that parties are scheduled for a settlement conference before Magistrate Judge Douglas F. McCormick on **November 19, 2026, at 9:30 a.m**. Indeed, "[g]iven the costs of protracted litigation," including any appeal of any final decision before this court, "it may well be in the parties' best interests to resolve this dispute informally. The Court reminds counsel of their ethical obligation to dedicate themselves to their clients' interests and encourages them to use their best efforts to facilitate a reasonable settlement." *Alcon Ent., LLC v. Automobiles Peugeot SA*, 2020 WL 8365247, at *13 (C.D. Cal. July 7, 2020); *see also Sid Avery & Assocs., Inc. v. Pixels.com, LLC*, 479 F. Supp. 3d 859, 874 (C.D. Cal. 2020) ("The Court encourages counsel on both sides to use their best efforts to resolve this dispute informally and to avoid wasting their clients' resources."). The court **strongly encourages** the parties to participate in the settlement conference **in person**. The parties shall file a status report with the court on or before **November 24, 2026**, describing (1) the nature and extent of the formal settlement discussions, and (2) the parties' positions regarding whether further settlement discussions may be productive.

**IT IS SO ORDERED.**